**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| ASIA GRAVES, an individual<br>Plaintiff,<br><br>v.<br><br>RED ROOF INNS, INC.,<br>CHOICE HOTELS INTERNATIONAL, INC.,<br>WYNDHAM HOTELS & RESORTS, INC.,<br>MARRIOTT INTERNATIONAL, INC.,<br>IHG FRANCHISING LLC, and<br>GAMING AND LEISURE PROPERTIES, INC.,<br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **CIVIL ACTION NO:** |

**COMPLAINT AND JURY TRIAL DEMAND**

NOW COMES the Plaintiff, ASIA GRAVES, by and through the undersigned counsel, and respectfully submits her complaint for damages and makes the following averments.

**INTRODUCTION**

1. For years, commercial sex trafficking ventures have openly operated in and out of hotels throughout this country, and pedophiles and derelicts, working hand-in-hand with hotels, parade their misconduct openly on hotel properties throughout the United States while the hotels and the hospitality industry remain willfully blind to criminal misconduct, at the expense of human life, human rights, and human dignity. The human trafficking industry as it exists in the United States could not function without the complicity of the hospitality industry year after year.

2. The Plaintiff brings this action pursuant to the Trafficking Victims Protection Reauthorization Act (TVPRA), 18 U.S.C. § 1595 against these Defendants who enabled, harbored, held, facilitated, turned a blind eye to, and financially benefited from a venture in which ASIA

GRAVES was trafficked *as a minor* for the purpose of commercial sex, sexually exploited, and brutally victimized in violation of 18 U.S.C. § 1591(a).

3. The Plaintiff also brings this action pursuant to Mass. Gen. Laws ch. 260, § 4C ½, which states, in pertinent part, that "[a]n action of tort alleging that the defendant negligently supervised a person who sexually abused a minor or that the defendant's conduct caused or contributed to the sexual abuse of a minor by another person shall be commenced within the later to expire of: (i) 35 years of the acts alleged to have caused an injury or condition to such minor; or (ii) 7 years of the time the victim discovered or reasonably should have discovered that an emotional or psychological injury or condition was caused by such act; provided, however, that the time limit for commencement of such an action under this section shall be tolled for a child until the child reaches 18 years of age." Mass. Gen. Laws ch. 260, § 4C ½. In this case, the Defendants' conduct contributed to the sexual abuse of the Plaintiff, ASIA GRAVES, when she was a minor. The Plaintiff, ASIA GRAVES, is a resident of the Commonwealth of Massachusetts, and a majority of the sexual abuse ASIA GRAVES suffered as a result of the Defendants' conduct took place in Massachusetts. The Plaintiff, ASIA GRAVES, is currently thirty-seven years old. Wherefore, the Plaintiff's claims fall within the applicable statute of limitations for sexual abuse of a minor.

*The Red Roof Inns, Inc.*

4. Beginning in approximately early 2004 through approximately August of 2005, ASIA GRAVES was trafficked for sex when she was a minor at various hotel entities in both Massachusetts and New Jersey, including The Red Roof Inn + Boston – Logan located at 920 Broadway in Saugus, Massachusetts.

5. At all relevant times, and upon information and belief, the Defendant, Red Roof Inns, Inc., was the brand operator for The Red Roof Inn + Boston – Logan.

6. As a direct and proximate result of Red Roof Inns, Inc.'s consistent refusals to prevent human trafficking on their hotel/motel properties, ASIA GRAVES was sex trafficked, sexually exploited, and victimized repeatedly at The Red Roof Inn + Boston – Logan located at 920 Broadway in Saugus, Massachusetts.

7. Red Roof Inns, Inc. has known for more than a decade that sex trafficking of adults and children repeatedly occurs on the properties they own, operate and manage. Rather than taking timely and effective measures to prevent human trafficking, Red Roof Inns, Inc. has chosen to ignore the open and obvious signs and presence of human trafficking on their properties and in the hotels/motels properties they operate, supervise and/or brand, benefitting from rooms rented for this explicit and apparent purpose.

*Choice Hotels International, Inc.*

8. Beginning in approximately early 2004 through approximately August of 2005, ASIA GRAVES was trafficked for sex when she was a minor at various hotel entities in both Massachusetts and New Jersey, including the Comfort Inn located at 102 Newbury Street in Danvers, Massachusetts and The Clarion Inn located at 101 South Iowa Avenue in Atlantic City, New Jersey.

9. At all relevant times, and upon information and belief, the Defendant, Choice Hotels International, Inc., was the brand operator for the Comfort Inn and The Clarion Inn.

10. As a direct and proximate result of Choice Hotels International, Inc.'s consistent refusals to prevent human trafficking on their hotel/motel properties, ASIA GRAVES was sex trafficked, sexually exploited, and victimized repeatedly at the Comfort Inn located at 102

Newbury Street in Danvers, Massachusetts and The Clarion Inn located at 101 South Iowa Avenue in Atlantic City, New Jersey.

11. Choice Hotels International, Inc. has known for more than a decade that sex trafficking of adults and children repeatedly occurs on the properties they own, operate, and manage. Rather than taking timely and effective measures to prevent human trafficking, Choice Hotels International, Inc. has chosen to ignore the open and obvious signs and presence of human trafficking on their properties and in the hotels/motels properties they operate, supervise and/or brand, benefitting from rooms rented for this explicit and apparent purpose.

*Wyndham Hotels & Resorts, Inc.*

12. Beginning in approximately early 2004 through approximately August of 2005, ASIA GRAVES was trafficked for sex when she was a minor at various hotel entities in both Massachusetts and New Jersey, including the Days Inn located at 1116 Washington Street in Attleboro, Massachusetts and the Howard Johnson by Wyndham – Quincy/Boston located at 845 Hancock Street in Quincy, Massachusetts.

13. At all relevant times, and upon information and belief, the Defendant, Wyndham Hotels & Resorts, Inc., was the brand operator for the Days Inn and Howard Johnson.

14. As a direct and proximate result of Wyndham Hotels & Resorts, Inc.'s consistent refusals to prevent human trafficking on their hotel/motel properties, ASIA GRAVES was sex trafficked, sexually exploited, and victimized repeatedly at the Days Inn located at 1116 Washington Street in Attleboro, Massachusetts and the Howard Johnson by Wyndham – Quincy/Boston located at 845 Hancock Street in Quincy, Massachusetts.

15. Wyndham Hotels & Resorts, Inc. has known for more than a decade that sex trafficking of adults and children repeatedly occurs on the properties they own, operate, and

manage. Rather than taking timely and effective measures to prevent human trafficking, Wyndham Hotels & Resorts, Inc. has chosen to ignore the open and obvious signs and presence of human trafficking on their properties and in the hotels/motels properties they operate, supervise and/or brand, benefitting from rooms rented for this explicit and apparent purpose.

*Marriott International, Inc.*

16. Beginning in approximately early 2004 through approximately August of 2005, ASIA GRAVES was trafficked for sex when she was a minor at various hotel entities in both Massachusetts and New Jersey, including the Fairfield Inn located at 1695 Andover Street in Tewksbury, Massachusetts.

17. At all relevant times, and upon information and belief, the Defendant, Marriott International, Inc., was the brand operator for the Fairfield Inn.

18. As a direct and proximate result of Marriott International, Inc.'s consistent refusals to prevent human trafficking on their hotel/motel properties, ASIA GRAVES was sex trafficked, sexually exploited, and victimized repeatedly at the Fairfield Inn located at 1695 Andover Street in Tewksbury, Massachusetts.

19. Marriott International, Inc. has known for more than a decade that sex trafficking of adults and children repeatedly occurs on the properties they own, operate and manage. Rather than taking timely and effective measures to prevent human trafficking, Marriott International, Inc. has chosen to ignore the open and obvious signs and presence of human trafficking on their properties and in the hotels/motels properties they operate, supervise and/or brand, benefitting from rooms rented for this explicit and apparent purpose.

*IHG Franchising LLC*

20. Beginning in approximately early 2004 through approximately August of 2005, ASIA GRAVES was trafficked for sex when she was a minor at various hotel entities in both Massachusetts and New Jersey, including the Holiday Inn Express located at 69 Boston Street in Boston, Massachusetts.

21. At all relevant times, and upon information and belief, the Defendant, IHG Franchising, LLC, was the brand operator for Holiday Inn Express.

22. As a direct and proximate result of IHG Franchising, LLC's consistent refusals to prevent human trafficking on their hotel/motel properties, ASIA GRAVES was sex trafficked, sexually exploited, and victimized repeatedly at the Holiday Inn Express located at 69 Boston Street in Boston, Massachusetts.

23. IHG Franchising, LLC has known for more than a decade that sex trafficking of adults and children repeatedly occurs on the properties they own, operate, and manage. Rather than taking timely and effective measures to prevent human trafficking, IHG Franchising, LLC has chosen to ignore the open and obvious signs and presence of human trafficking on their properties and in the hotels/motels properties they operate, supervise and/or brand, benefitting from rooms rented for this explicit and apparent purpose.

*Gaming and Leisure Properties, Inc.*

24. Beginning in approximately early 2004 through approximately August of 2005, ASIA GRAVES was trafficked for sex when she was a minor at various hotel entities in both Massachusetts and New Jersey, including The Tropicana Hotel located at 2831 Boardwalk in Atlantic City, New Jersey.

25. At all relevant times, and upon information and belief, the Defendant, Gaming and Leisure Properties, Inc., was the brand operator for The Tropicana Hotel.

26. As a direct and proximate result of Gaming and Leisure Properties, Inc.'s consistent refusals to prevent human trafficking on their hotel/motel properties, ASIA GRAVES was sex trafficked, sexually exploited, and victimized repeatedly at The Tropicana Hotel located at 2831 Boardwalk in located in Atlantic City, New Jersey.

27. Gaming and Leisure Properties, Inc. has known for more than a decade that sex trafficking of adults and children repeatedly occurs on the properties they own, operate and manage. Rather than taking timely and effective measures to prevent human trafficking, Gaming and Leisure Properties, Inc. has chosen to ignore the open and obvious signs and presence of human trafficking on their properties and in the hotels/motels properties they operate, supervise and/or brand, benefitting from rooms rented for this explicit and apparent purpose.

## JURISDICTION & VENUE

28. This Honorable Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution, laws, or treaties of the United States.

29. This Honorable Court also has jurisdiction pursuant to 28 U.S.C. § 1332 because the Plaintiff, ASIA GRAVES, is a citizen of the Commonwealth of Massachusetts; the Defendant corporations are incorporated outside of the Commonwealth of Massachusetts; and the amount in controversy exceeds $75,000.

30. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in the judicial district where this action is brought.

## PARTIES

31. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

32. The Plaintiff, ASIA GRAVES, is an individual over the age of eighteen (18) years old and resides within the jurisdiction of the Commonwealth of Massachusetts. The Plaintiff was sold for sex throughout Massachusetts and New Jersey for approximately twenty (20) months from approximately early 2004 through approximately August 2005, when the Plaintiff was a minor.

33. The Plaintiff, ASIA GRAVES, is a victim of sex trafficking as protected under applicable provisions of the TVPRA.

34. Red Roof Inns, Inc., Choice Hotels International, Inc., Wyndham Hotels & Resorts, Inc., Marriott International, Inc., IHG Franchising, LLC, and Gaming and Leisure Properties, Inc. will be collectively referred to herein as "Defendants."

*Red Roof Inns, Inc.*

35. Defendant, Red Roof Inns, Inc. is a Delaware corporation that at all relevant times maintained, owned, managed, operated, staffed, or any combination of the foregoing, a business known as The Red Roof Inn + Boston – Logan located at 920 Broadway in Saugus, Massachusetts.

36. Defendant, Red Roof Inns, Inc. may be served with service of process by serving its registered agent, Corporation Service Company, 84 State Street, Boston, MA 02109.

37. Defendant, Red Roof Inns, Inc., is a hospitality company that, at the time of the incidents alleged herein, directly and through its franchisee, offered public lodging services at the Red Roof Inn + Boston – Logan.

38. The Plaintiff, ASIA GRAVES, was trafficked for sex as a minor at and through The Red Roof Inn + Boston – Logan.

39. At the time the Plaintiff, ASIA GRAVES, was trafficked for sex at and through The Red Roof Inn + Boston – Logan, the Defendant, Red Roof Inns, Inc., owned and/or operated the property.

40. Through its ownership and/or operation of The Red Roof Inn + Boston – Logan, the Defendant, Red Roof Inns, Inc., knowingly benefited or received something of value from its facilitation of or participation in a venture which it knew or should have known to engage in sex trafficking through the room rentals in which the Plaintiff, ASIA GRAVES, was trafficked.

41. Through its ownership and/or operation of The Red Roof Inn + Boston – Logan, the Defendant, Red Roof Inns, Inc., was wholly and exclusively responsible for the training, practices and procedures regarding signs of sex trafficking, how to prevent it, and how to respond to it once identified.

42. The Defendant, Red Roof Inns, Inc., was on notice during the entire time the Plaintiff was being trafficked that the hotel and hospitality industries are a principal sex trafficking hub, and that traffickers use hotels to sell women and minors, including the Plaintiff, for sex given the anonymity it provides to traffickers as well as customers.

43. At all relevant times, there were open and obvious signs of sex trafficking at hotels owned, operated and branded by The Red Roof Inns, Inc., including but not limited to: cash payments for rooms; frequent foot traffic to and from rooms; signs of sex trafficking in rooms (for example, excessive condoms, lubricant, "do not disturb" signs being constantly hung on doors rented by sex traffickers; women and minors arriving to hotels and being checked in with their traffickers with little to no personal possessions; women and minors arriving with signs of physical abuse, women and minors arriving who appear fearful or anxious; and patrons refusing cleaning services for days.

*Choice Hotels International, Inc.*

44. Defendant, Choice Hotels International, Inc. is a Delaware corporation that at all relevant times maintained, owned, managed, operated, staffed, or any combination of the

foregoing, businesses known as the Comfort Inn located at 102 Newbury Street in Danvers, Massachusetts and The Clarion Inn located at 101 South Iowa Avenue, Atlantic City, New Jersey.

45. Defendant, Choice Hotels International, Inc. may be served with service of process by serving its registered agent, Corporation Service Company, 84 State Street, Boston, MA 02109.

46. Defendant, Choice Hotels International, Inc., is a hospitality company that, at the time of the incidents alleged herein, directly and through its franchisee, offered public lodging services at the Comfort Inn and the Clarion Inn.

47. The Plaintiff, ASIA GRAVES, was trafficked for sex as a minor at and through the Comfort Inn and the Clarion Inn.

48. At the time the Plaintiff, ASIA GRAVES, was trafficked for sex at and through the Comfort Inn and the Clarion Inn, the Defendant, Choice Hotels International, Inc., owned and/or operated the properties.

49. Through its ownership and/or operation of the Comfort Inn and the Clarion Inn, the Defendant, Choice Hotels International, Inc., knowingly benefited or received something of value from its facilitation of or participation in a venture which it knew or should have known to engage in sex trafficking through the room rentals in which the Plaintiff, ASIA GRAVES, was trafficked.

50. Through its ownership and/or operation of the Comfort Inn and the Clarion Inn, the Defendant, Choice Hotels International, Inc., was wholly and exclusively responsible for the training, practices, and procedures regarding signs of sex trafficking, how to prevent it, and how to respond to it once identified.

51. The Defendant, Choice Hotels International, Inc., was on notice during the entire time the Plaintiff was being trafficked that the hotel and hospitality industries are a principal sex

trafficking hub, and that traffickers use hotels to sell women and minors, including the Plaintiff, for sex given the anonymity it provides to traffickers as well as customers.

52. At all relevant times, there were open and obvious signs of sex trafficking at hotels owned, operated and branded by Choice Hotels International, Inc., including but not limited to: cash payments for rooms; frequent foot traffic to and from rooms; signs of sex trafficking in rooms (for example, excessive condoms, lubricant, "do not disturb" signs being constantly hung on doors rented by sex traffickers; women and minors arriving to hotels and being checked in with their traffickers with little to no personal possessions; women and minors arriving with signs of physical abuse, women and minors arriving who appear fearful or anxious; and patrons refusing cleaning services for days.

*Wyndham Hotels & Resorts, Inc.*

53. Defendant, Wyndham Hotels & Resorts, Inc. is a Delaware corporation that at all relevant times maintained, owned, managed, operated, staffed, or any combination of the foregoing, businesses known as the Days Inn located at 1116 Washington Street in Attleboro, Massachusetts and The Howard Johnson by Wyndham located at 845 Hancock Street in Quincy, Massachusetts.

54. Defendant, Wyndham Hotels & Resorts, Inc. may be served with service of process by serving its registered agent, Corporate Creations Network, Inc., 225 Cedar Hill Street #200, Marlborough, MA 01752.

55. Defendant, Wyndham Hotels & Resorts, Inc., is a hospitality company that, at the time of the incidents alleged herein, directly and through its franchisee, offered public lodging services at the Days Inn and the Howard Johnson.

56. The Plaintiff, ASIA GRAVES, was trafficked for sex as a minor at and through the Days Inn and the Howard Johnson.

57. At the time the Plaintiff, ASIA GRAVES, was trafficked for sex at and through the Days Inn and the Howard Johnson, the Defendant, Wyndham Hotels & Resorts, Inc., owned and/or operated the properties.

58. Through its ownership and/or operation of the Days Inn and the Howard Johnson, the Defendant, Wyndham Hotels & Resorts, Inc., knowingly benefited or received something of value from its facilitation of or participation in a venture which it knew or should have known to engage in sex trafficking through the room rentals in which the Plaintiff, ASIA GRAVES, was trafficked.

59. Through its ownership and/or operation of the Days Inn and the Howard Johnson, the Defendant, Wyndham Hotels & Resorts, Inc., was wholly and exclusively responsible for the training, practices, and procedures regarding signs of sex trafficking, how to prevent it, and how to respond to it once identified.

60. The Defendant, Wyndham Hotels & Resorts, Inc., was on notice during the entire time the Plaintiff was being trafficked that the hotel and hospitality industries are a principal sex trafficking hub, and that traffickers use hotels to sell women and minors, including the Plaintiff, for sex given the anonymity it provides to traffickers as well as customers.

61. At all relevant times, there were open and obvious signs of sex trafficking at hotels owned, operated and branded by Wyndham Hotels & Resorts, Inc., including but not limited to: cash payments for rooms; frequent foot traffic to and from rooms; signs of sex trafficking in rooms (for example, excessive condoms, lubricant, “do not disturb” signs being constantly hung on doors rented by sex traffickers; women and minors arriving to hotels and being checked in with their

traffickers with little to no personal possessions; women and minors arriving with signs of physical abuse, women and minors arriving who appear fearful or anxious; and patrons refusing cleaning services for days.

*Marriott International, Inc.*

62. Defendant, Marriott International, Inc. is a Delaware corporation that at all relevant times maintained, owned, managed, operated, staffed, or any combination of the foregoing, a business known as the Fairfield Inn located at 1695 Andover Street in Tewksbury, Massachusetts.

63. Defendant, Marriott International, Inc. may be served with service of process by serving its registered agent C T Corporation System, 155 Federal Street, Suite 700, Boston, MA 02110.

64. Defendant, Marriott International, Inc., is a hospitality company that, at the time of the incidents alleged herein, directly and through its franchisee, offered public lodging services at the Fairfield Inn.

65. The Plaintiff, ASIA GRAVES, was trafficked for sex as a minor at and through the Fairfield Inn.

66. At the time the Plaintiff was trafficked for sex at and through the Fairfield Inn, the Defendant, Marriott International, Inc., owned and/or operated the property.

67. Through its ownership and/or operation of the Fairfield Inn, the Defendant, Marriott International, Inc., knowingly benefited or received something of value from its facilitation of or participation in a venture which it knew or should have known to engage in sex trafficking through the room rentals in which the Plaintiff, ASIA GRAVES, was trafficked.

68. Through its ownership and/or operation of the Fairfield Inn, the Defendant, Marriott International, Inc., was wholly and exclusively responsible for the training, practices, and

procedures regarding signs of sex trafficking, how to prevent it, and how to respond to it once identified.

69. The Defendant, Marriott International, Inc., was on notice during the entire time the Plaintiff was being trafficked that the hotel and hospitality industries are a principal sex trafficking hub, and that traffickers use hotels to sell women and minors, including the Plaintiff, for sex given the anonymity it provides to traffickers as well as customers.

70. At all relevant times, there were open and obvious signs of sex trafficking at hotels owned, operated and branded by Marriott International, Inc., including but not limited to: cash payments for rooms; frequent foot traffic to and from rooms; signs of sex trafficking in rooms (for example, excessive condoms, lubricant, "do not disturb" signs being constantly hung on doors rented by sex traffickers; women and minors arriving to hotels and being checked in with their traffickers with little to no personal possessions; women and minors arriving with signs of physical abuse, women and minors arriving who appear fearful or anxious; and refusing cleaning services for days.

*IHG Franchising, LLC*

71. Defendant, IHG Franchising, LLC is a Foreign Limited Liability Company with a Principal Office located in Atlanta, Georgia that at all relevant times maintained, owned, managed, operated, staffed, or any combination of the foregoing, a business known as Holiday Inn Express located at 69 Boston Street in Boston, Massachusetts.

72. Defendant, IHG Franchising, LLC may be served with service of process by serving its registered agent United Agent Group Inc., 225 Cedar Hill Street #200, Marlborough, MA 01752.

73. Defendant, IHG Franchising, LLC, is a hospitality company that, at the time of the incidents alleged herein, directly and through its franchisee, offered public lodging services at the Holiday Inn Express.

74. The Plaintiff, ASIA GRAVES, was trafficked for sex as a minor at and through the Holiday Inn Express.

75. At the time the Plaintiff was trafficked for sex at and through the Holiday Inn Express, the Defendant, IHG Franchising, LLC, owned and/or operated the property.

76. Through its ownership and/or operation of the Holiday Inn Express, the Defendant, IHG Franchising, LLC, knowingly benefited or received something of value from its facilitation of or participation in a venture which it knew or should have known to engage in sex trafficking through the room rentals in which the Plaintiff, ASIA GRAVES, was trafficked.

77. Through its ownership and/or operation of the Holiday Inn Express, the Defendant, IHG Franchising, LLC, was wholly and exclusively responsible for the training, practices, and procedures regarding signs of sex trafficking, how to prevent it, and how to respond to it once identified.

78. The Defendant, IHG Franchising, LLC, was on notice during the entire time the Plaintiff was being trafficked that the hotel and hospitality industries are a principal sex trafficking hub, and that traffickers use hotels to sell women and minors, including the Plaintiff, for sex given the anonymity it provides to traffickers as well as customers.

79. At all relevant times, there were open and obvious signs of sex trafficking at hotels owned, operated and branded by IHG Franchising, LLC, including but not limited to: cash payments for rooms; frequent foot traffic to and from rooms; signs of sex trafficking in rooms (for example, excessive condoms, lubricant, "do not disturb" signs being constantly hung on doors

rented by sex traffickers; women and minors arriving to hotels and being checked in with their traffickers with little to no personal possessions; women and minors arriving with signs of physical abuse, women and minors arriving who appear fearful or anxious; and patrons refusing cleaning services for days.

*Gaming and Leisure Properties, Inc.*

80. Defendant, Gaming and Leisure Properties, Inc. is a Delaware corporation that at all relevant times maintained, owned, managed, operated, staffed, or any combination of the foregoing, a business known the Tropicana Hotel located at 2831 Boardwalk in Atlantic City, New Jersey.

81. Defendant, Gaming and Leisure Properties, Inc. may be served with service of process by serving its registered agent, Corporation Service Company, 84 State Street, Boston, MA 02109.

82. Defendant, Gaming and Leisure Properties, Inc., is a hospitality company that, at the time of the incidents alleged herein, directly and through its franchisee, offered public lodging services at the Tropicana Hotel.

83. The Plaintiff, ASIA GRAVES, was trafficked for sex as a minor at and through the Tropicana Hotel.

84. At the time the Plaintiff was trafficked for sex at and through the Tropicana Hotel, the Defendant, Gaming and Leisure Properties, Inc., owned and/or operated the property.

85. Through its ownership and/or operation of the Tropicana Hotel, the Defendant, Gaming and Leisure Properties, Inc., knowingly benefited or received something of value from its facilitation of or participation in a venture which it knew or should have known to engage in sex trafficking through the room rentals in which the Plaintiff, ASIA GRAVES, was trafficked.

86. Through its ownership and/or operation of the Tropicana Hotel, the Defendant, Gaming and Leisure Properties, Inc., was wholly and exclusively responsible for the training, practices and procedures regarding signs of sex trafficking, how to prevent it, and how to respond to it once identified.

87. The Defendant, Gaming and Leisure Properties, Inc., was on notice during the entire time the Plaintiff was being trafficked that the hotel and hospitality industry are a principal sex trafficking hub, and that traffickers use hotels to sell women and minors, including the Plaintiff, for sex given the anonymity it provides to traffickers as well as customers.

88. At all relevant times, there were open and obvious signs of sex trafficking at hotels owned, operated and branded by Gaming and Leisure Properties, Inc., including but not limited to: cash payments for rooms; frequent foot traffic to and from rooms; signs of sex trafficking in rooms (for example, excessive condoms, lubricant, "do not disturb" signs being constantly hung on doors rented by sex traffickers; women and minors arriving to hotels and being checked in with their traffickers with little to no personal possessions; women and minors arriving with signs of physical abuse, women and minors arriving who appear fearful or anxious; and patrons refusing cleaning services for days.

## <u>SEX TRAFFICKING UNDER FEDERAL LAW</u>

89. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

90. Originally enacted in 2000 in response to human trafficking, the Trafficking Victims Protection Reauthorization Act ("TVPRA") has been reauthorized multiple times, including in 2003, 2005, 2008, 2013, 2017, 2018, 2019, 2021, and 2023.

91. Sex trafficking is defined by the TVPRA under 22 U.S.C. § 7102 as, "the recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purposes of a commercial sex act and in which the commercial sex act is induced by force, fraud, or coercion." This definition combines the three elements of sex trafficking as a criminal offense: the act, meaning, and purpose.

92. To best understand the mechanism by which sex trafficking ventures are prohibited by federal criminal law, it's best to address these elements in reverse. Sex trafficking is slavery for the *purpose* of commercial sex, a lens on the already existing crimes prohibited by 18 U.S.C. § § 1589 and 1590. The crime of slavery can then be divided into the two (2) elements remaining: the act and the means. The *act* is the "harboring, transporting, providing, or obtaining," of forced labor, codified as a violation of 18 U.S.C. § 1590, while the *means* is labor, "obtained or provided by force, fraud or coercion," and is codified as a violation of 18 U.S.C. § 1589d.

93. Thus, while the complete definition of "sex trafficking" is found in the TVPRA under 22 U.S.C. § 7102, and it is specifically prohibited under 18 U.S.C. § 1591, it is nevertheless a long-recognized and familiar atrocity.

94. Pursuant to 18 U.S.C. § 1591(a), all who knowingly provide *or* obtain commercial sex that was provided or obtained through force, fraud, and coercion are guilty of sex trafficking. This includes, at minimum, *both* the "traffickers" who recruit, harbor, transport, and provide individuals for force commercial sex work and the "Johns" or "buyers" who obtain, solicit, or patronize forced commercial sex work.

95. The TVPRA is a remedial statute and should be liberally construed. It is a cardinal principle of statutory construction that a statute should, on the whole, be construed so that no clause, sentence, or word shall be considered superfluous, void, or insignificant.

96. The requirements for direct (or indirect) liability under § 1595(a) based on a beneficiary theory has been stated as follows: (1) the entity must knowingly benefit, financially or by receiving anything of value; (2) from the participation in a venture; and (3) that the entity knew or should have known engaged in sex trafficking.

97. Receipt of a percentage (or the entirety) of the room rentals from the rooms where Plaintiff was victimized and trafficked is sufficient for establishing a knowing financial benefit as well as licensing, franchising, and other fees paid from room rentals under § 1595(a).

98. Actual knowledge or a common business purpose is not necessary to establish "participation" under § 1595(a); to do so would render the "should have known" language in § 1595 meaningless.

99. Plaintiff need not provide an underlying criminal offense under § 1591 in order to establish liability under the TVPRA.

100. An overt act in furtherance of the venture is not necessary to establish "participation" under § 1595(a).

101. Under the TVPRA, in the absence of a direct association with a sex trafficking venture, it is sufficient to show a continuous business relationship between a trafficker and local hotels through the rental of rooms so that it would appear the trafficker and the hotels have established a pattern of conduct or could have been said to have or have had a tacit agreement.

102. Constructive knowledge akin to a negligence standard is sufficient for establishing what Defendants "should have known" under § 1595(a).

103. Being on notice of the prevalence of commercial sex trafficking generally and at hotels under the Defendants' brands, or operated directly by a brand defendant, are sufficient constructive notice.

104. Being on notice of the prevalence of commercial sex trafficking generally and at hotels, in conjunction with the open and obvious signs of the same, are sufficient for constructive and actual notice.

105. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

106. The role of the hospitality industry in either facilitating or preventing human trafficking has been widely established and known for years.

107. In this regard, End Child Prostitution and Trafficking (ECPAT-USA) launched the Tourism Child-Protection Code of Conduct (the "Code") in the United States in 2004.[1]

108. The Code identifies the following six (6) steps companies can take to prevent child sex trafficking: (1) establish corporate policy and procedures against sexual exploitation of children; (2) train employees in children's rights, the prevention of sexual exploitation and how to report suspected cases; (3) include a clause in further partner contracts stating a common repudiation and zero tolerance policy of sexual exploitation of children; (4) provide information to travelers on children's rights, the prevention of sexual exploitation of children and how to report suspected cases; (5) support, collaborate and engage stakeholders in the prevention of sexual exploitation of children; and (6) report annually on the company's implementation of Code-related activities.

109. During a speech in New York City in September 2012, President Obama stated that human trafficking "ought to concern every person, because it is a debasement of our common humanity. It ought to concern every community, because it tears at our social fabric. It ought to

[1] https://static1.squarespace.com/static/594970e91b631b3571be12e2/t/59c9b6bfb07869cc5d792b8c/1506391761747/NoVacany_Report.pdf

concern every business, because it distorts markets. It ought to concern every nation, because it endangers public health and fuels violence and organized crime."[2]

110. Despite these efforts by the UN, the White House, and non-governmental organizations to promote policies and procedures to prevent human trafficking, a 2012 report nevertheless revealed that sixty-three percent (63%) of human trafficking incidents occur in hotels.[3] At the time the referenced report issued, the hospitality industry had been on notice of the prevalence of human trafficking for the entirety of the twenty-first century, but had done little to nothing to prevent the ongoing occurrences of human trafficking in hotels in the preceding twelve (12) years.

111. In 2014, ninety-two percent (92%) of the calls the National Human Trafficking Hotline received from hotels reported sex trafficking and an additional two percent (2%) of the calls it received reported some combination of sex trafficking and labor trafficking.[4]

112. Statistics released in 2014 by the International Labor Organization ("ILO") showed that approximately 4.5 million people were victims of forced sexual exploitation globally and that the violation of their human rights yielded an estimated annual profit of $99 billion dollars for sex traffickers worldwide.[5] Put another way, the numbers showed that a sex trafficker's annual profit *per victim* was approximately $22,000.00.[6]

113. A scholarly article published in 2015, estimated that pimps could earn $25,000.00 to $33,000.00 *per week* selling sex in the Atlanta, Georgia area.[7] This volume of and profit from

---

[2] President Barack Obama, Remarks to the Clinton Global Initiative (Sept. 25, 2012), *available at* https://obamawhitehouse.archives.gov/the-press-office/2012/09/25/remarks-president-clinton-global-initiative.
[3] Sarkisian, M., *Adopting The Code: Human Trafficking And The Hospitality Industry*, 15 CHR 15 (2015), at 3, *available at* https://scholarship.sha.cornell.edu/cgi/viewcontent.cgi?article=1222&context=chrpubs.
[4] *Id.*
[5] International Labour Office, *Profits and Poverty: The Economics of Forced Labour* (2014), at 13, *available at* https://www.ilo.org/wcmsp5/groups/public/---ed_norm/---declaration/documents/publication/wcms_243391.pdf.
[6] *Id.* at 15.
[7] Sarkisian, *supra* n.4, at 4.

sex trafficking also aligned with internet advertising for the sex trafficking industry occurring in roughly the same time period. For example, in 2015, one advertisement in the Atlanta section of the www.backpage.com website triggered 181 clicks, and calls or texts from twenty-seven (27) men expressing interest - in a span of just ninety (90) minutes.[8]

114. In December 2015, President Obama appointed eleven (11) survivors of human trafficking to the inaugural United States Advisory Council on Human Trafficking to advise and make recommendations on federal anti-trafficking policies to the President's Interagency Task Force to Monitor and Combat Trafficking in Persons.[9]

115. The United States Department of Justice ("DOJ") brought 248 sex trafficking prosecutions in Fiscal Year 2015 and secured convictions against 291 sex traffickers.[10] In the previous year, DOJ convicted a total of 184 human traffickers (inclusive of labor trafficking) and in the subsequent year, DOJ convicted a total 439 human traffickers (inclusive of labor trafficking).[11]

116. Despite these efforts of governmental and non-governmental organizations to combat human trafficking, the hospitality industry as a whole, including Defendants, continued to lag behind in its efforts to prevent human trafficking, and instead, have been complicit in it. A 2015 study showed that forty-five percent (45%) of children who suffered sexual exploitation report that the sexual exploitation took place in a hotel.[12]

---

[8] *Id*. at 5.
[9] U.S. Dep't of State, *2016 Trafficking in Persons Report* (2016), at 41, *available at* https://www.state.gov/documents/organization/258876.pdf.
[10] *Id.* at 389.
[11] Human Rights First, *Fact Sheet 2017* (2017), *available at* http://www.humanrightsfirst.org/sites/default/files/TraffickingbytheNumbers.pdf.
[12] Sarkisian, *supra* n.4.

117. Even estimates by attorneys *for* the hospitality industry indicate that eight (8) out of ten (10) arrests for human trafficking occur in or around hotels.[13] The 2016 Trafficking in Persons Report issued by the United States Department of State also confirmed that human trafficking occurs in the hospitality industry in the United States.[14]

118. Between 2007 and March 2015, more than 1,400 human trafficking cases have been reported to the National Human Trafficking Resource Center.[15]

119. The complicity of the hospitality industry is essential to the perpetuation of human trafficking, allowing traffickers to remain transient, collect profits, and evade detection. Sex trafficking ventures move from place to place so that they are less visible to law enforcement. Similarly, sex traffickers also want to keep their victims moving from place to place to isolate them from any possible means of escape or rescue. Traffickers are well aware of the seclusion and anonymity attendant with booking rooms with hotel chains - they know it is unlikely that they will be disturbed.

120. Due to the hospitality industries failure to embrace anti-trafficking policies and practices, children and other vulnerable persons are trafficked for sex in hotels throughout the United States.

121. Hotel employees are uniquely situated to identify and report suspicious activity on hotel property. From check-in to check-out there are numerous indicators that traffickers and the adults and children who are victimized by sex trafficking exhibit during their stay at a hotel

[13] Rich Keating, *Human Trafficking: What It Is And How It Impacts The Hospitality Industry*, Presentation Delivered At AHIA Sprint Conference 2013, Washington, D.C., *available at* http://www.ahiattorneys.org/aws/AHIA/asset_manager/get_file/92983 (last visited Mar. 1, 2019).
[14] U.S. Dep't of State, *supra* n.10, at 387.
[15] Polaris, *Human Trafficking and the Hotel Industry* (2015), *available at* https://polarisproject.org/resources/human-trafficking-and-hotel-industry.

property. With proper training and other reasonable security measures, hotel owners and operators could prevent the trafficking of persons on their properties.

122. A successful trafficking protocol should start with a hotel's front desk staff. A hotel's front desk is first in line to spot warning signs of human trafficking, they should be trained to identify it and required to contact law enforcement when they suspect it. A successful trafficking protocol also requires hotels make available throughout the facility, information for victims of human trafficking on how to seek help.

123. Signs of sex trafficking at a hotel may include:

a) an excess of condoms in rooms,

b) individuals carrying or flashing large amounts of cash, renting two (2) rooms next door to each other,

c) declining room service for several consecutive days,

d) significant foot traffic in and out of rooms,

e) men traveling with multiple women who appear unrelated,

f) guests checking in with little or no luggage,

g) guests using multiple cell phones and credit cards,

h) multiple requests for towels,

i) hotel guests who prevent another individual from speaking for themselves,

j) hotel guests unable to verify what city they came from,

k) hotel guests who are distrustful of security, and may be acting as if they are being watched,

l) hotel guests not in possession of their own identification,

m) "Friends" or "relatives" of a guest visiting room who are unable to provide their name or other identifying information,

n) excessive noise from guests or guest rooms,

o) or a guest controlling another's identification documents.

124. The Department of Homeland Security ("DHS") identifies several warning signs that indicate the presence of human trafficking at hotels. According to DHS, housekeeping, room service, maintenance, concierge, bellman, front desk, food and beverage, security, and valet staff at hotels all can and should be vigilant in observing indicia of human trafficking on the hotel premises such as:

a) persons who show signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior;

b) persons who lack freedom of movement or are constantly monitored;

c) persons who have no control over or possession of money or ID;

d) persons who dress inappropriately for their age or have lower quality clothing compared to others in their party;

e) requests for room or housekeeping services (additional towels, new linens, etc.), but denial of hotel staff entry into the room;

f) the presence of multiple computers, cell phones, pagers, credit card swipers, or other technology in the room;

g) extended stay with few or no personal possessions in the room;

h) excessive amounts of sex paraphernalia in rooms (condoms, lubricant, lotion);

i) the same person reserves multiple rooms;

j) a room is rented hourly, less than a day, or for an atypical extended stay;

k) attempts to sell items to or beg from patrons or staff;

l) cars in the parking lot regularly parked backward, so the license plates are not visible;

m) loitering and solicitation of male patrons;

n) waiting at a table or bar and picked up by a male (trafficker or customer);

o) persons asking staff or patrons for food or money; and

p) persons taking cash or receipts left on tables.[16]

125. Hotel staff who have undergone training are more aware of human trafficking and can at best prevent it from happening or at worst, are more willing to report it when it happens, than hotel staff who have not been trained.

126. Hotels and hotel brands can and should adopt policies and procedures related to human trafficking and make anti human trafficking resources readily available to employees.

127. Hotels and hotel brands can and should mandate that all staff working at all hotel properties complete anti human trafficking training.

128. Hotels and hotel brands can and should encourage staff to report suspected incidents of human trafficking when observed on hotel properties to law enforcement.

129. Hotels and hotel brands can and should develop and maintain relationships with law enforcement regarding appropriate and timely responses to suspected incidents of human trafficking on hotel properties.

130. Hotels and hotel brands can and should post anti human trafficking awareness and informational materials in common areas and guest rooms to help eliminate human trafficking.

---

[16] U.S. Dep't of Homeland Security, *Human Trafficking and the Hotel Industry*, https://www.dhs.gov/blue-campaign/hospitalityindustry (last visited Feb. 25, 2019).

131. Similarly, hotels and hotel brands can and should develop and maintain relationships with non-profit service providers in the field regarding appropriate human trafficking prevention training for hotel staff.

132. The indicia of human trafficking and effective preventative measures are widely known and available to the hospitality industry and hotels and hotel brands that do not identify and report evidence of human trafficking on hotel properties do so in spite of the knowledge of that preventative training and resources are available, but they simply elect not to engage in preventative policies and practices.

133. The motivation for this ongoing willful blindness and ongoing failure to act within the hospitality industry is plain and simple—limitless corporate greed. Hotels and hotel brands, knowing both the obvious dangers and the remedial safety precautions associated with human trafficking, nevertheless ignored both the signs of and solutions to human trafficking out of an unfettered fealty to their profit margins and a corresponding complete disregard for the value of human life.

**SPECIFIC ALLEGATIONS AGAINST EACH DEFENDANT**

134. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

135. The Plaintiff met her first trafficker, Darryll Tavares, in approximately early 2004, when the Plaintiff was a minor.

136. Tavares feigned befriending the Plaintiff and manipulated her by promising her money and providing her with food and shelter.

137. Unfortunately, and unbeknownst to the Plaintiff, his plan was to traffic her at and through hotels in Massachusetts and New Jersey over a period of approximately twenty (20) months.

*The Sex Trafficking of Asia Graves at the Red Roof Inn + Boston – Logan/Red Roof Inns, Inc.*

138. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

139. ASIA GRAVES was forced into the commercial sex industry beginning at the Red Roof Inn located at 920 Broadway in Saugus, MA (hereinafter the "Red Roof Inn").

140. Shortly after Tavares brought ASIA GRAVES to the Red Roof Inn, Tavares told Ms. Graves that she was his "property".

141. Shortly after Tavares brought ASIA GRAVES to the Red Roof Inn, Tavares refused to let her leave the hotel, and he beat her into submission.

142. During this first assault at the Red Roof Inn, ASIA GRAVES screamed, but no staff member or employee of the hotel came to assist her.

143. While at the Red Roof Inn, man by the name "Jack", who owned what is assumed to be an illegal escort service, came to the Red Roof Inn at Tavares' request.

144. "Jack" came to the Red Roof Inn and took naked pictures of ASIA GRAVES (a minor) and posted them on a website. The purpose of this was to solicit ASIA GRAVES for sexual services.

145. As a result of the website postings, adult males inquired about ASIA GRAVES' services.

146. These adult males regularly entered and exited the Red Roof Inn at all hours of the day and night for the purpose of having sex with minor, ASIA GRAVES.

147. At the Red Roof Inn, the trafficking of ASIA GRAVES was in plain sight of hotel staff.

148. During the time ASIA GRAVES was trafficked at the Red Roof Inn, hotel staff knew or should have known that ASIA GRAVES was being sold for sex.

149. At the Red Roof Inn, hotel staff regularly witnessed ASIA GRAVES walking around the premises wearing a halter bra, boy short underwear and high heels.

150. At the Red Roof Inn, hotel staff regularly witnessed ASIA GRAVES waiting for Johns in the hotel lobby.

151. At the Red Roof Inn, hotel staff regularly witnessed ASIA GRAVES solicit new customers in the hotel lobby.

152. At the Red Roof Inn, hotel front desk staff often supplied ASIA GRAVES with condoms.

153. At the Red Roof Inn, hotel staff regularly witnessed ASIA GRAVES lead several different men, sometimes two at a time, back to her room throughout all hours of the day and evening.

154. During the time ASIA GRAVES was trafficked at the Red Roof Inn, hotel staff knew or should have known that ASIA GRAVES was not having sex with these men on her own free will.

155. At the Red Roof Inn, hotel staff witnessed Tavares accompany ASIA GRAVES throughout the hotel the majority of the time.

156. At the Red Roof Inn, Tavares wore a large necklace that read “PIMP” in clear and plain sight of hotel staff.

157. At the Red Roof Inn, ASIA GRAVES frequently requested an abnormal amount of linen, refused room service until after she left the hotel, and left large amounts of condom packets in the room's trash cans.

158. One day at the Red Roof Inn, Tavares held ASIA GRAVES down, took a potato peeler to her cheek, and sliced a large piece of skin off as ASIA GRAMES screamed and cried in pain.

159. No staff member nor employee of the Red Roof Inn investigated ASIA GRAVES' screams.

160. One evening at the Red Roof Inn, Tavares accused ASIA GRAVES of hiding money. Tavares then forced ASIA GRAVES to strip naked in the hotel room and he examined every her body.

161. When Tavares was satisfied that ASIA GRAVES was not holding money on or in her body, he dragged her into the bathroom where he punched her in the back of her head and stomach, choked her, and screamed in her face that she was "not leaving".

162. Tavares then forced ASIA GRAVES to perform oral sex on him.

163. While ASIA GRAVES was performing oral sex on Tavares, another trafficker (who was a friend of Tavares) entered the bathroom.

164. Tavares picked up a hairbrush and proceeded to repeatedly vaginally and anally rape ASIA GRAVES with the handle of the hairbrush, while the two men laughed and ASIA GRAVES screamed.

165. No staff member nor employee of the Red Roof Inn investigated Ms. Graves' screams.

166. On several occasions, Red Roof Inn staff, primarily the front desk, accepted "tips" and "hush money" from ASIA GRAVES' traffickers to keep quiet about the trafficking of Plaintiff and to look the other way.

167. Throughout her time being trafficked for sex at the Red Roof Inn, ASIA GRAVES was subjected to repeated instances of rape, physical abuse, verbal abuse, exploitation, psychological torment, kidnapping, and imprisonment.

168. On several occasions, Red Roof Inn staff provided ASIA GRAVES' traffickers access to the same room, or rooms similarly far away from other customers and more isolated from the public, to make their trafficking of ASIA GRAVES easier and to conceal it from others.

169. On several occasions, Red Roof Inn staff witnessed piles of condoms out in the open in the room(s) where ASIA GRAVES, a minor, was staying.

170. On several occasions, Red Roof Inn staff witnessed Johns enter and exit the hotel premises after ASIA GRAVES was forced to have sex with them.

171. ASIA GRAVES was trafficked for sex an estimated dozens of times per day at the Red Roof Inn.

172. At no point did any staff member from the Red Roof Inn take any action to investigate whether ASIA GRAVES was safe.

173. Despite obvious signs of human trafficking and indicators of commercial sex activity (numerous men entering and exiting the hotel room, renting and staying in the same room at a far end/corner of the hotel, a teenage girl walking the hotel premises wearing little more than a bra and underwear, piles of condom thrown about the room where the Plaintiff was staying, as well as cash payments) the Defendant failed to protect the Plaintiff from foreseeable harm and failed to prevent her continued victimization. Rather, the Defendant knowingly continued to profit

from the sex trafficking of the Plaintiff by harboring and/or otherwise facilitating the sex trafficking venture based out of their hotel.

174. Had the Defendant not harbored known and suspected traffickers in exchange for financial gain, Plaintiff's traffickers could not have successfully arranged for her to be continually sold for sex at Defendant's branded hotels.

175. Prior to, during, and following the incidents described herein, the Defendant had actual and/or constructive knowledge of the rampant criminal activity occurring at their branded hotels, including trafficking, drug dealing, and general safety concerns. The Defendant chose to prioritize profits over people and elected not to take any action to curtail sex trafficking at their branded hotels.

176. The Plaintiff has suffered substantial physical, sexual, emotional, and economic injuries as a result of being trafficked at Defendant's hotel. The Plaintiff continues to live in fear of her traffickers as well as their families and affiliates.

*The Sex Trafficking of Asia Graves at the Clarion Inn/*
*Choice Hotels International, Inc.*

177. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

178. ASIA GRAVES was repeatedly trafficked for sex at various hotels throughout Massachusetts and New Jersey, including but not limited to the Clarion Inn located at 101 South Iowa Avenue in Atlantic City, New Jersey.

179. At all relevant times, and upon information and belief, the Defendant, Choice Hotels International, Inc., was the brand operator for the Clarion Inn.

180. After being trafficked for sex at the Red Roof Inn for some time, ASIA GRAVES was abandoned by Tavares in the middle of a street in Andover, Massachusetts.

181. ASIA GRAVES had no money and no means to afford transportation.

182. ASIA GRAVES contacted someone she thought she could trust by the name Eddie Jones.

183. Eddie Jones paid for a bus ticket for ASIA GRAVES to visit him in Atlantic City, New Jersey.

184. Shortly after arrival in Atlantic City, Jones began trafficking ASIA GRAVES for sex at the Clarion Inn located at 101 South Iowa Avenue in Atlantic City, New Jersey (hereinafter the "Clarion Inn").

185. Upon information and belief, the Clarion Inn in Atlantic City was and continues to be a haven for traffickers.

186. The Clarion Inn in Atlantic City is located close to the Black Horse Pike, also known as "the track", a common area known for prostitution and human trafficking.

187. Jones trafficked ASIA GRAVES through the Clarion Inn for the purpose of sex in return for money.

188. At the Clarion Inn, Jones forced ASIA GRAVES to answer calls from men who were seeking her services after seeing her photos on websites.

189. Jones also forced ASIA GRAVES to solicit men on the Black Horse Pike.

190. Jones forced ASIA GRAVES to take men back to the Clarion Inn to perform sexual acts after soliciting them on the Black Horse Pike.

191. While being trafficked for sex at and through the Clarion Inn, ASIA GRAVES' traffickers forced her compliance by physically and verbally abusing the Plaintiff, threatening her, and by controlling and withholding money from the Plaintiff, resulting in her not being able to purchase food to eat, to pay for transportation, or pay for suitable housing.

192. While being trafficked for sex at and through the Clarion Inn, ASIA GRAVES was subjected to repeated instances of rape, physical abuse, verbal abuse, exploitation, psychological torment, kidnapping, and imprisonment.

193. On many occasions, Clarion Inn staff, primarily the front desk, accepted "tips" and "hush money" from ASIA GRAVES' traffickers to keep quiet about the trafficking of ASIA GRAVES.

194. On many occasions, Clarion Inn staff and employees provided ASIA GRAVES' traffickers access to the same room, or rooms similarly far away from other customers and more isolated from the public, to make their trafficking of ASIA GRAVES easier and to conceal it from others.

195. On many occasions, Clarion Inn staff and employees observed and witnessed ASIA GRAVES, a minor, wearing little more than a bra and underwear on their premises.

196. On many occasions, Clarion Inn staff and employees observed and witnessed piles of condoms out in the open in the room(s) where ASIA GRAVES, a minor, was staying.

197. Ms. Graves was trafficked for sex an estimated dozens of times per day over a two week period in Atlantic City.

198. At no point did any staff member from the Clarion Inn take any action to investigate whether ASIA GRAVES was safe.

199. Despite obvious signs of human trafficking and indicators of commercial sex activity (numerous men entering and exiting the hotel room, renting and staying in the same room at a far end/corner of the hotel, a teenage girl walking the hotel premises wearing little more than a bra and underwear, piles of condom thrown about the room where Ms. Graves was staying, as well as cash payments) the Defendant failed to protect the Plaintiff from foreseeable harm and

failed to prevent her continued victimization. Rather, the Defendant knowingly continued to profit from the sex trafficking of the Plaintiff by harboring and/or otherwise facilitating the sex trafficking venture based out of their hotel.

200. Had the Defendant not harbored known and suspected traffickers in exchange for financial gain, Ms. Graves' traffickers could not have successfully arranged for her to be continually sold for sex at Defendant's branded hotels.

201. Prior to, during, and following the incidents described herein, the Defendant had actual and/or constructive knowledge of the rampant criminal activity occurring at their branded hotels, including trafficking, drug dealing, and general safety concerns. The Defendant chose to prioritize profits over people and elected not to take any action to curtail sex trafficking at their branded hotels.

202. The Plaintiff has suffered substantial physical, sexual, emotional, and economic injuries as a result of being trafficked at Defendant's hotel. The Plaintiff continues to live in fear of her traffickers as well as their families and affiliates.

*The Sex Trafficking of Asia Graves at the Comfort Inn/*
*Choice Hotels International, Inc.*

203. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

204. ASIA GRAVES was repeatedly trafficked for sex at various hotels throughout Massachusetts and New Jersey, including but not limited to the Comfort Inn located at 102 Newbury Street in Danvers, Massachusetts (hereinafter the "Comfort Inn").

205. At all relevant times, and upon information and belief, the Defendant, Choice Hotels International, Inc., was the brand operator for the Comfort Inn.

206. Tavares brought ASIA GRAVES to the Comfort Inn located at 102 Newbury Street in Danvers, MA, where ASIA GRAVES was repeatedly sold for sex.

207. From the outset, it was obvious to ASIA GRAVES that Tavares was well known by the staff at the Comfort Inn.

208. Tavares flirted with the female staff member at the front desk of the Comfort Inn and specifically asked to rent two rooms side by side that were not on the bottom floor.

209. Tavares made these requests to Comfort Inn staff to avoid detection and also to have a quick escape route to the parking lot.

210. Upon information and belief, the Comfort Inn in Danvers, Massachusetts was a hotel known for trafficking.

211. While being trafficked for sex at the Comfort Inn, ASIA GRAVES witnessed many other women being trafficked there by various other traffickers.

212. ASIA GRAVES was not the only minor that Tavares trafficked at the Comfort Inn.

213. During the time ASIA GRAVES was being trafficked for sex at the Comfort Inn, Tavares brought another underage female from Maine to the Comfort Inn for the purpose of trafficking her for sex.

214. During their time at the Comfort Inn, ASIA GRAVES and the other young women were forced to have sex with men all night and into the day.

215. Comfort Inn staff knew or should have known that ASIA GRAVES and other minors were being trafficked for sex through their hotel.

216. While being trafficked for sex at and through the Comfort Inn, ASIA GRAVES' traffickers forced her compliance by physically and verbally abusing ASIA GRAVES, threatening

her, and by controlling and withholding money from her, resulting in her not being able to purchase food to eat, to pay for transportation, or pay for suitable housing.

217. While being trafficked for sex at and through the Comfort Inn, ASIA GRAVES was subjected to repeated instances of rape, physical abuse, verbal abuse, exploitation, psychological torment, kidnapping, and imprisonment.

218. One many occasions, Comfort Inn staff, primarily the front desk, accepted “tips” and “hush money” from ASIA GRAVES’ traffickers to keep quiet about the trafficking of ASIA GRAVES and to look the other way.

219. On many occasions, Comfort Inn staff provided ASIA GRAVES’ traffickers access to the same room, or rooms similarly far away from other customers and more isolated from the public, to make their trafficking of ASIA GRAVES easier and to conceal it from others.

220. On many occasions, Comfort Inn staff witnessed ASIA GRAVES, a minor, wearing little more than a bra and underwear on their premises.

221. On many occasions, Comfort Inn staff witnessed piles of condoms out in the open in the room(s) where ASIA GRAVES, a minor, was staying.

222. On many occasions, Comfort Inn staff witnessed Johns enter and exit hotel premises after ASIA GRAVES was forced to have sex with them.

223. ASIA GRAVES was trafficked for sex an estimated dozens of times per day at the Comfort Inn.

224. At no point did any staff member from the Comfort Inn take any action to investigate whether ASIA GRAVES was safe.

225. Despite obvious signs of human trafficking and indicators of commercial sex activity (numerous men entering and exiting the hotel room, renting and staying in the same room

at a far end/corner of the hotel, a teenage girl walking the hotel premises wearing little more than a bra and underwear, piles of condom thrown about the room where the Plaintiff was staying, as well as cash payments) the Defendant failed to protect the Plaintiff from foreseeable harm and failed to prevent her continued victimization. Rather, the Defendant knowingly continued to profit from the sex trafficking of the Plaintiff by harboring and/or otherwise facilitating the sex trafficking venture based out of their hotel.

226. Had the Defendant not harbored known and suspected traffickers in exchange for financial gain, Plaintiff's traffickers could not have successfully arranged for her to be continually sold for sex at Defendant's branded hotels.

227. Prior to, during, and following the incidents described herein, the Defendant had actual and/or constructive knowledge of the rampant criminal activity occurring at their branded hotels, including trafficking, drug dealing, and general safety concerns. The Defendant chose to prioritize profits over people and elected not to take any action to curtail sex trafficking at their branded hotels.

228. The Plaintiff has suffered substantial physical, sexual, emotional, and economic injuries as a result of being trafficked at Defendant's hotel. The Plaintiff continues to live in fear of her traffickers as well as their families and affiliates.

*The Sex Trafficking of Asia Graves at the Days Inn/*
*Wyndham Hotels & Resorts, Inc.*

229. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

230. ASIA GRAVES was repeatedly trafficked for sex at various hotels throughout Massachusetts and New Jersey, including but not limited to the Days Inn located at 1116 Washington Street in Attleboro, Massachusetts (hereinafter the "Days Inn").

231. At all relevant times, and upon information and belief, the Defendant, Wyndham Hotels & Resorts, Inc., was the brand operator for the Days Inn.

232. Upon information and belief, Tavares brought ASIA GRAVES to the Days Inn in Attleboro because it was well known that the hotel regularly rented to individuals who intended to use the rooms to commit crimes, including sex trafficking.

233. At the Days Inn, ASIA GRAVES was repeatedly sold for sex to men who inquired for her services.

234. During the time ASIA GRAVES was trafficked at the Days Inn, hotel staff regularly witnessed her meeting the men who paid for her services in common areas of the hotel.

235. During the time ASIA GRAVES was trafficked at the Days Inn, hotel staff regularly witnessed Tavares wearing a necklace that read the word, "PIMP".

236. During the time ASIA GRAVES was trafficked at the Days Inn, Tavares requested (and was assigned) rooms that were out of view, facing the street, and close to egresses.

237. During the time ASIA GRAVES was trafficked at the Days Inn, ASIA GRAVES and Tavares requested an abnormal amount of linen.

238. During the time ASIA GRAVES was trafficked at the Days Inn, ASIA GRAVES and Tavares refused room service until they left the room.

239. During the time ASIA GRAVES was trafficked at the Days Inn, Tavares often paid for their rooms in cash.

240. One many occasions, Days Inn staff, primarily the front desk, accepted "tips" and "hush money" from ASIA GRAVES' traffickers to keep quiet about the trafficking of ASIA GRAVES and to look the other way.

241. While being trafficked for sex at and through the Days Inn, ASIA GRAVES' traffickers forced her compliance by physically and verbally abusing her, threatening her, and by controlling and withholding money from her, resulting in her not being able to purchase food to eat, to pay for transportation, or pay for suitable housing.

242. While being trafficked for sex at and through the Days Inn, ASIA GRAVES was subjected to repeated instances of rape, physical abuse, verbal abuse, exploitation, psychological torment, kidnapping, and imprisonment.

243. On many occasions, Days Inn staff witnessed ASIA GRAVES, a minor, wearing little more than a bra and underwear on their premises.

244. On many occasions, Days Inn staff witnessed piles of condoms out in the open in the room(s) where ASIA GRAVES, a minor, was staying.

245. On many occasions, Days Inn staff witnessed Johns enter and exit the hotel premises after ASIA GRAVES was forced to have sex with them.

246. Despite obvious signs of human trafficking and indicators of commercial sex activity (numerous men entering and exiting the hotel room, renting and staying in the same room at a far end/corner of the hotel, a teenage girl walking the hotel premises wearing little more than a bra and underwear, piles of condom thrown about the room where the Plaintiff was staying, as well as cash payments) the Defendant failed to protect the Plaintiff from foreseeable harm and failed to prevent her continued victimization. Rather, the Defendant knowingly continued to profit from the sex trafficking of the Plaintiff by harboring and/or otherwise facilitating the sex trafficking venture based out of their hotel.

247. Had the Defendant not harbored known and suspected traffickers in exchange for financial gain, Plaintiff's traffickers could not have successfully arranged for her to be continually sold for sex at Defendant's branded hotels.

248. Prior to, during, and following the incidents described herein, the Defendant had actual and/or constructive knowledge of the rampant criminal activity occurring at their branded hotels, including trafficking, drug dealing, and general safety concerns. The Defendant chose to prioritize profits over people and elected not to take any action to curtail sex trafficking at their branded hotels.

249. The Plaintiff has suffered substantial physical, sexual, emotional, and economic injuries as a result of being trafficked at Defendant's hotel. The Plaintiff continues to live in fear of her traffickers as well as their families and affiliates.

*The Sex Trafficking of Asia Graves at the Howard Johnson by Wyndham – Quincy Boston/Wyndham Hotels & Resorts, Inc.*

250. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

251. ASIA GRAVES was repeatedly trafficked for sex at various hotels throughout Massachusetts and New Jersey, including but not limited to the Howard Johnson by Wyndham – Quincy/Boston located at 845 Hancock Street in Quincy, Massachusetts (hereinafter "Howard Johnson").

252. At all relevant times, and upon information and belief, the Defendant, Wyndham Hotels & Resorts, Inc., was the brand operator for Howard Johnson.

253. At the Howard Johnson, ASIA GRAVES was repeatedly sold for sex to men who inquired for her services on Backpage and other websites.

254. Like the other hotels/motels, the Howard Johnson was chosen by ASIA GRAVES' traffickers specifically due to its notorious reputation for harboring criminals and permitting criminal activity.

255. On many occasions, Howard Johnson staff provided ASIA GRAVES' traffickers access to the same room, or rooms similarly far away from other customers and more isolated from the public, to make their trafficking of ASIA GRAVES easier and to conceal it from others.

256. On many occasions, Howard Johnson staff witnessed ASIA GRAVES, a minor, wearing little more than a bra and underwear on their premises.

257. On many occasions, Howard Johnson staff witnessed piles of condoms out in the open in the room(s) where ASIA GRAVES, a minor, was staying.

258. On many occasions, Howard Johnson staff witnessed Johns enter and exit the hotel premises after ASIA GRAVES was forced to have sex with them.

259. Ms. Graves estimates that she was trafficked for sex an estimated dozens of times per day at the Howard Johnson.

260. One many occasions, Howard Johnson staff, primarily the front desk, accepted "tips" and "hush money" from ASIA GRAVES' traffickers to keep quiet about the trafficking of ASIA GRAVES and to look the other way.

261. While being trafficked for sex at and through the Howard Johnson, ASIA GRAVES' traffickers forced her compliance by physically and verbally abusing her, threatening her, and by controlling and withholding money from her, resulting in her not being able to purchase food to eat, to pay for transportation, or pay for suitable housing.

262. While being trafficked for sex at and through the Howard Johnson, ASIA GRAVES was subjected to repeated instances of rape, physical abuse, verbal abuse, exploitation, psychological torment, kidnapping, and imprisonment.

263. Despite obvious signs of human trafficking and indicators of commercial sex activity (numerous men entering and exiting the hotel room, renting and staying in the same room at a far end/corner of the hotel, a teenage girl walking the hotel premises wearing little more than a bra and underwear, piles of condom thrown about the room where the Plaintiff was staying, as well as cash payments) the Defendant failed to protect the Plaintiff from foreseeable harm and failed to prevent her continued victimization. Rather, the Defendant knowingly continued to profit from the sex trafficking of the Plaintiff by harboring and/or otherwise facilitating the sex trafficking venture based out of their hotel.

264. Had the Defendant not harbored known and suspected traffickers in exchange for financial gain, Plaintiff's traffickers could not have successfully arranged for her to be continually sold for sex at Defendant's branded hotels.

265. Prior to, during, and following the incidents described herein, the Defendant had actual and/or constructive knowledge of the rampant criminal activity occurring at their branded hotels, including trafficking, drug dealing, and general safety concerns. The Defendant chose to prioritize profits over people and elected not to take any action to curtail sex trafficking at their branded hotels.

266. The Plaintiff has suffered substantial physical, sexual, emotional, and economic injuries as a result of being trafficked at Defendant's hotel. The Plaintiff continues to live in fear of her traffickers as well as their families and affiliates.

*The Sex Trafficking of Asia Graves at the Fairfield Inn/ Marriott International, Inc.*

267. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

268. ASIA GRAVES was repeatedly trafficked for sex at various hotels throughout Massachusetts and New Jersey, including but not limited to the Fairfield Inn located at 1695 Andover Street in Tewksbury, Massachusetts (hereinafter the “Fairfield Inn”).

269. At all relevant times, and upon information and belief, the Defendant, Marriott International, Inc., was the brand operator for the Fairfield Inn.

270. At the Fairfield Inn, ASIA GRAVES was repeatedly sold for sex to men who inquired for her services on Backpage and other websites.

271. At the Fairfield Inn, ASIA GRAVES was forced to have sex with several men during all hours of the day and night.

272. At all relevant times, and upon information and belief, the Fairfield Inn in Tewksbury had a reputation for harboring criminals and criminal activity, including human trafficking.

273. During the years before, during and after ASIA GRAVES was trafficked at the Fairfield Inn, Tewksbury Police reported to the establishment on dozens of occasions to investigate an array of crimes.

274. During the time ASIA GRAVES was trafficked at the Fairfield Inn, hotel staff witnessed Tavares wearing a large necklace that said “PIMP”.

275. ASIA GRAVES was trafficked for sex an estimated dozens of times per day at the Fairfield Inn.

276. On many occasions, Fairfield Inn staff provided ASIA GRAVES' traffickers access to the same room, or rooms similarly far away from other customers and more isolated from the public, to make their trafficking of ASIA GRAVES easier and to conceal it from others.

277. On many occasions, Fairfield Inn staff witnessed ASIA GRAVES, a minor, wearing little more than a bra and underwear on their premises.

278. On many occasions, Fairfield Inn staff witnessed piles of condoms out in the open in the room(s) where ASIA GRAVES, a minor, was staying.

279. On many occasions, Fairfield Inn staff witnessed Johns enter and exit the hotel premises after ASIA GRAVES was forced to have sex with them.

280. One many occasions, Fairfield Inn staff, primarily the front desk, accepted "tips" and "hush money" from ASIA GRAVES' traffickers to keep quiet about the trafficking of ASIA GRAVES and to look the other way.

281. While being trafficked for sex at and through the Fairfield Inn, ASIA GRAVES' traffickers forced her compliance by physically and verbally abusing her, threatening her, and by controlling and withholding money from her, resulting in her not being able to purchase food to eat, to pay for transportation, or pay for suitable housing.

282. While being trafficked for sex at and through the Fairfield Inn, ASIA GRAVES was subjected to repeated instances of rape, physical abuse, verbal abuse, exploitation, psychological torment, kidnapping, and imprisonment.

283. Despite obvious signs of human trafficking and indicators of commercial sex activity (numerous men entering and exiting the hotel room, renting and staying in the same room at a far end/corner of the hotel, a teenage girl walking the hotel premises wearing little more than a bra and underwear, piles of condom thrown about the room where the Plaintiff was staying, as

well as cash payments) the Defendant failed to protect the Plaintiff from foreseeable harm and failed to prevent her continued victimization. Rather, the Defendant knowingly continued to profit from the sex trafficking of the Plaintiff by harboring and/or otherwise facilitating the sex trafficking venture based out of their hotel.

284. Had the Defendant not harbored known and suspected traffickers in exchange for financial gain, Plaintiff's traffickers could not have successfully arranged for her to be continually sold for sex at Defendant's branded hotels.

285. Prior to, during, and following the incidents described herein, the Defendant had actual and/or constructive knowledge of the rampant criminal activity occurring at their branded hotels, including trafficking, drug dealing, and general safety concerns. The Defendant chose to prioritize profits over people and elected not to take any action to curtail sex trafficking at their branded hotels.

286. The Plaintiff has suffered substantial physical, sexual, emotional, and economic injuries as a result of being trafficked at Defendant's hotel. The Plaintiff continues to live in fear of her traffickers as well as their families and affiliates.

*The Sex Trafficking of Asia Graves at the Holiday Inn Express/*
*IHG Franchising LLC.*

287. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

288. ASIA GRAVES was repeatedly trafficked for sex at various hotels throughout Massachusetts and New Jersey, including but not limited to the Holiday Inn Express located at 69 Boston Street in Boston, Massachusetts (hereinafter the "Holiday Inn Express").

289. At all relevant times, and upon information and belief, the Defendant, IHG Franchising, LLC, was the brand operator for Holiday Inn Express.

290. On many occasions, Holiday Inn Express staff witnessed Eddie Jones, a known trafficker, accompanying young, scantily dressed women in the lobby of the hotel, including ASIA GRAVES.

291. Holiday Inn Express staff and employees knowingly financially benefited from the sex trafficking of ASIA GRAVES.

292. Holiday Inn Express front desk staff helped to facilitate "dates" for ASIA GRAVES on a regular basis and would even be given a percentage for each "date".

293. On numerous occasions, Holiday Inn Express staff witnessed ASIA GRAVES solicit men in the lobby and in other areas of the hotel.

294. On numerous occasions, Holiday Inn Express staff inquired about ASIA GRAVES' "rates".

295. On numerous occasions, Holiday Inn Express staff witnessed ASIA GRAVES leaving the hotel premises with other young girls while the entire group was dressed in provocative clothing.

296. On one occasion, ASIA GRAVES was approached by an older female Holiday Inn Express staff member. Instead of inquiring about ASIA GRAVES' safety, this Holiday Inn Express staff member asked ASIA GRAVES what she charged for sex, because one of the maintenance men who also worked for the Holiday Inn Express was "interested in her services".

297. On at least one occasion, a maintenance man from the Holiday Inn Express approached ASIA GRAVES and offered her $140.00 for sex.

298. On many occasions, ASIA GRAVES was sold for sex and sexually assaulted throughout the day and night over the course of weeks at the Holiday Inn Express.

299. On many occasions, Holiday Inn Express staff witnessed ASIA GRAVES be screamed at, beaten, and degraded by Jones.

300. On one occasion, Holiday Inn Express staff witnessed ASIA GRAVE walking around the hotel in nothing but a towel, as Jones had kicked her out of the room after an argument.

301. On that occasion, ASIA GRAVES asked the Holiday Inn Express staff to use the phone because she was in danger, and they refused.

302. On another occasion at the Holiday Inn Express, Jones became angry that ASIA GRAVES was using her own cell phone to call someone other than a person looking to pay for sex.

303. Jones stomped on ASIA GRAVES' face and jaw with his Timberland boots, breaking several of her teeth.

304. ASIA GRAVES screamed in pain during this assault.

305. Despite the fact that she was screaming in pain, no Holiday Inn Express staff member came to ASIA GRAVES' aid.

306. Staff and employees of the Holiday Inn Express witnessed ASIA GRAVES walk past them with a red, swollen face wearing nothing but a pair of underwear, a tee shirt and a pair of flip flops.

307. On many occasions, Holiday Inn Express staff provided ASIA GRAVES' traffickers access to the same room, or rooms similarly far away from other customers and more isolated from the public, to make their trafficking of ASIA GRAVES easier and to conceal it from others.

308. On many occasions, Holiday Inn Express staff witnessed ASIA GRAVES, a minor, wearing little more than a bra and underwear on their premises.

309. On many occasions, Holiday Inn Express staff witnessed piles of condoms out in the open in the room(s) where ASIA GRAVES, a minor, was staying.

310. On many occasions, Holiday Inn Express staff witnessed Johns enter and exit the hotel premises after Ms. Graves was forced to have sex with them.

311. One many occasions, Holiday Inn Express staff, primarily the front desk, accepted "tips" and "hush money" from ASIA GRAVES' traffickers to keep quiet about the trafficking of ASIA GRAVES and to look the other way.

312. While being trafficked for sex at and through the Holiday Inn Express, ASIA GRAVES' traffickers forced her compliance by physically and verbally abusing her, threatening her, and by controlling and withholding money from her, resulting in her not being able to purchase food to eat, to pay for transportation, or pay for suitable housing.

313. While being trafficked for sex at and through the Holiday Inn Express, ASIA GRAVES was subjected to repeated instances of rape, physical abuse, verbal abuse, exploitation, psychological torment, kidnapping, and imprisonment.

314. Despite obvious signs of human trafficking and indicators of commercial sex activity (numerous men entering and exiting the hotel room, renting and staying in the same room at a far end/corner of the hotel, a teenage girl walking the hotel premises wearing little more than a bra and underwear, piles of condom thrown about the room where the Plaintiff was staying, as well as cash payments) the Defendant failed to protect the Plaintiff from foreseeable harm and failed to prevent her continued victimization. Rather, the Defendant knowingly continued to profit from the sex trafficking of the Plaintiff by harboring and/or otherwise facilitating the sex trafficking venture based out of their hotel.

315. Had the Defendant not harbored known and suspected traffickers in exchange for financial gain, Plaintiff's traffickers could not have successfully arranged for her to be continually sold for sex at Defendant's branded hotels.

316. Prior to, during, and following the incidents described herein, the Defendant had actual and/or constructive knowledge of the rampant criminal activity occurring at their branded hotels, including trafficking, drug dealing, and general safety concerns. The Defendant chose to prioritize profits over people and elected not to take any action to curtail sex trafficking at their branded hotels.

317. The Plaintiff has suffered substantial physical, sexual, emotional, and economic injuries as a result of being trafficked at Defendant's hotel. The Plaintiff continues to live in fear of her traffickers as well as their families and affiliates.

*The Sex Trafficking of Asia Graves at the Tropicana Hotel/*
*Gaming and Leisure Properties, Inc.*

318. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

319. Ms. Graves was repeatedly trafficked for sex at various hotels throughout Massachusetts and New Jersey, including but not limited to the Tropicana Hotel located at 2831 Boardwalk in Atlantic City, New Jersey (hereinafter the "Tropicana Hotel").

320. At all relevant times, and upon information and belief, the Defendant, Gaming and Leisure Properties, Inc., was the brand operator for the Tropicana Hotel.

321. At the Tropicana Hotel, ASIA GRAVES was repeatedly sold for sex to men who inquired for her services from the casino(es), the track on Black Horse Pike, or on Backpage and other websites.

322. At the Tropicana Hotel, ASIA GRAVES was forced to have sex with several men during all hours of the day and night.

323. On many occasions, Tropicana Hotel staff provided ASIA GRAVES' traffickers access to the same room, or rooms similarly far away from other customers and more isolated from the public, to make their trafficking of ASIA GRAVES easier and to conceal it from others.

324. On many occasions, Tropicana Hotel staff witnessed ASIA GRAVES, a minor, wearing little more than a bra and underwear on their premises.

325. On many occasions, Tropicana Hotel staff witnessed piles of condoms out in the open in the room(s) where ASIA GRAVES, a minor, was staying.

326. On many occasions, Tropicana Hotel staff witnessed Johns enter and exit the hotel premises after ASIA GRAVES was forced to have sex with them.

327. One many occasions, Tropicana Hotel staff, primarily the front desk, accepted "tips" and "hush money" from ASIA GRAVES' traffickers to keep quiet about the trafficking of ASIA GRAVES and to look the other way.

328. While being trafficked for sex at and through the Tropicana Hotel, ASIA GRAVES' traffickers forced her compliance by physically and verbally abusing her, threatening her, and by controlling and withholding money from her, resulting in her not being able to purchase food to eat, to pay for transportation, or pay for suitable housing.

329. While being trafficked for sex at and through the Tropicana Hotel, ASIA GRAVES was subjected to repeated instances of rape, physical abuse, verbal abuse, exploitation, psychological torment, kidnapping, and imprisonment.

330. Despite obvious signs of human trafficking and indicators of commercial sex activity (numerous men entering and exiting the hotel room, renting and staying in the same room

at a far end/corner of the hotel, a teenage girl walking the hotel premises wearing little more than a bra and underwear, piles of condom thrown about the room where the Plaintiff was staying, as well as cash payments) the Defendant failed to protect the Plaintiff from foreseeable harm and failed to prevent her continued victimization. Rather, the Defendant knowingly continued to profit from the sex trafficking of the Plaintiff by harboring and/or otherwise facilitating the sex trafficking venture based out of their hotel.

331. Had the Defendant not harbored known and suspected traffickers in exchange for financial gain, Plaintiff's traffickers could not have successfully arranged for her to be continually sold for sex at Defendant's branded hotels.

332. Prior to, during, and following the incidents described herein, the Defendant had actual and/or constructive knowledge of the rampant criminal activity occurring at their branded hotels, including trafficking, drug dealing, and general safety concerns. The Defendant chose to prioritize profits over people and elected not to take any action to curtail sex trafficking at their branded hotels.

333. The Plaintiff has suffered substantial physical, sexual, emotional, and economic injuries as a result of being trafficked at Defendant's hotel. The Plaintiff continues to live in fear of her traffickers as well as their families and affiliates.

## THE DEFENDANT HOTEL BRANDS WERE (AND CONTINUE TO BE) WILLFULLY BLIND TO HUMAN TRAFFICKING AT ITS PROPERITES

### *Red Roof Inns, Inc.'s Willful Blindness to Human Trafficking at its Properties*

334. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

335. Upon information and belief, for years the Red Roof Inns, Inc. has been on notice of repeated incidences of sex trafficking occurring on its properties, yet the brand has failed to take

action to prevent sex trafficking and still persists in failing to take necessary action to prevent sex trafficking on its properties.

336. The Red Roof chain operates in nearly every state, with more than 580 properties in the U.S., Brazil and Japan across four brands: Red Roof Inn®, Red Roof PLUS+®, The Red Collection®, and HomeTowne Studios by Red Roof™. The properties are located primarily in the Midwest, Southern and Eastern United States. In 2018, Red Roof Inn received USA Today's Best Budget Hotel Brand Readers' Choice Award for the second year in a row.

337. Founded in 1973, Red Roof Inn represents that it is an award-winning leader in the lodging industry with franchises, corporate managed and corporate owned properties, recognized for creating the innovative Upscale Economy segment serving millions of guests each year.

338. As a hotel/motel owner/operator, Red Roof Inn develops and controls the training and policies for its branded properties, including the Red Roof Inn + Boston – Logan property.

339. Upon information and belief, for years Red Roof Inn has been on notice of repeated incidences of sex trafficking occurring on its properties, yet the chain has failed to take action to prevent sex trafficking and still persists in failing to take necessary action to prevent sex trafficking on its properties.

340. Red Roof Inn has demonstrated willful blindness to, or actual complicit involvement in, the rampant culture of sex trafficking which tragically occurs on its property and properties throughout the country. This same entrenched, pervasive willful blindness to, or complicit involvement in, sex trafficking facilitated the sex trafficking of the Plaintiff at a Red Roof Inn in Saugus, MA on repeated occasions.

*Choice Hotels International, Inc.'s Willful Blindness to Human Trafficking at its Properties*

341. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

342. Upon information and belief, for years Choice Hotels International, Inc. has been on notice of repeated incidences of sex trafficking occurring on its properties, yet the brand has failed to take action to prevent sex trafficking and still persists in failing to take necessary action to prevent sex trafficking on its properties.

343. As a hotel/motel owner/operator, Choice Hotels International, Inc. develops and controls the training and policies for its branded properties, including the Clarion Inn located at 101 South Iowa Avenue in Atlantic City, New Jersey as well as the Comfort Inn located at 102 Newbury Street in Danvers, Massachusetts.

344. For years Choice Hotels International, Inc. has been on notice of repeated incidences of sex trafficking occurring on its properties, yet the chain has failed to take action to prevent sex trafficking and still persists in failing to take necessary action to prevent sex trafficking on its properties.

345. Choice Hotels International, Inc. has demonstrated willful blindness to, or actual complicit involvement in, the rampant culture of sex trafficking which tragically occurs on its property and properties throughout the country. This same entrenched, pervasive willful blindness to, or complicit involvement in, sex trafficking facilitated the sex trafficking of the Plaintiff at the Clarion Inn located at 101 South Iowa Avenue in Atlantic City, New Jersey as well as the Comfort Inn located at 102 Newbury Street in Danvers, Massachusetts on repeated occasions.

*Wyndham Hotels & Resorts, Inc.'s Willful Blindness to Human Trafficking at its Properties*

346. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

347. Upon information and belief, for years Wyndham Hotels & Resorts, Inc. has been on notice of repeated incidences of sex trafficking occurring on its properties, yet the brand has failed to take action to prevent sex trafficking and still persists in failing to take necessary action to prevent sex trafficking on its properties.

348. As a hotel/motel owner/operator, Wyndham Hotels & Resorts, Inc. develops and controls the training and policies for its branded properties, including the Days Inn located at 1116 Washington Street in Attleboro, Massachusetts as well as the Howard Johnson by Wyndham – Quincy/Boston located at 845 Hancock Street in Quincy, Massachusetts.

349. Upon information and belief, for years Wyndham Hotels & Resorts, Inc. has been on notice of repeated incidences of sex trafficking occurring on its properties, yet the chain has failed to take action to prevent sex trafficking and still persists in failing to take necessary action to prevent sex trafficking on its properties.

350. Wyndham Hotels & Resorts, Inc. has demonstrated willful blindness to, or actual complicit involvement in, the rampant culture of sex trafficking which tragically occurs on its property and properties throughout the country. This same entrenched, pervasive willful blindness to, or complicit involvement in, sex trafficking facilitated the sex trafficking of the Plaintiff at the Days Inn located at 1116 Washington Street in Attleboro, Massachusetts as well as the Howard Johnson by Wyndham – Quincy/Boston located at 845 Hancock Street in Quincy, Massachusetts on repeated occasions.

*Marriott International, Inc.'s Willful Blindness to Human Trafficking at its Properties*

351. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

352. Upon information and belief, for years Marriott International, Inc. has been on notice of repeated incidences of sex trafficking occurring on its properties, yet the brand has failed to take action to prevent sex trafficking and still persists in failing to take necessary action to prevent sex trafficking on its properties.

353. As a hotel/motel owner/operator, Marriott International, Inc. develops and controls the training and policies for its branded properties, including the Fairfield Inn located at 1695 Andover Street in Tewksbury, Massachusetts.

354. For years Marriott International, Inc. has been on notice of repeated incidences of sex trafficking occurring on its properties, yet the chain has failed to take action to prevent sex trafficking and still persists in failing to take necessary action to prevent sex trafficking on its properties.

355. Marriott International, Inc. has demonstrated willful blindness to, or actual complicit involvement in, the rampant culture of sex trafficking which tragically occurs on its property and properties throughout the country. This same entrenched, pervasive willful blindness to, or complicit involvement in, sex trafficking facilitated the sex trafficking of the Plaintiff at the Fairfield Inn located at 1695 Andover Street in Tewksbury, Massachusetts on repeated occasions.

*IHG Franchising LLC's Willful Blindness to*
*Human Trafficking at its Properties*

356. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

357. Upon information and belief, for years IHG Franchising LLC has been on notice of repeated incidences of sex trafficking occurring on its properties, yet the brand has failed to take action to prevent sex trafficking and still persists in failing to take necessary action to prevent sex trafficking on its properties.

358. As a hotel/motel owner/operator, IHG Franchising LLC develops and controls the training and policies for its branded properties, including the Holiday Inn Express located at 69 Boston Street in Boston, Massachusetts.

359. For years IHG Franchising LLC has been on notice of repeated incidences of sex trafficking occurring on its properties, yet the chain has failed to take action to prevent sex trafficking and still persists in failing to take necessary action to prevent sex trafficking on its properties.

360. IHG Franchising LLC has demonstrated willful blindness to, or actual complicit involvement in, the rampant culture of sex trafficking which tragically occurs on its property and properties throughout the country. This same entrenched, pervasive willful blindness to, or complicit involvement in, sex trafficking facilitated the sex trafficking of the Plaintiff at the Holiday Inn Express located at 69 Boston Street in Boston, Massachusetts on repeated occasions.

*Gaming and Leisure Properties, Inc.'s Willful Blindness to Human Trafficking at its Properties*

361. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

362. Upon information and belief, for years Gaming and Leisure Properties, Inc. has been on notice of repeated incidences of sex trafficking occurring on its properties, yet the brand has failed to take action to prevent sex trafficking and still persists in failing to take necessary action to prevent sex trafficking on its properties.

363. As a hotel/motel owner/operator, Gaming and Leisure Properties, Inc. develops and controls the training and policies for its branded properties, including the Tropicana Hotel located at 2831 Boardwalk in Atlantic City, New Jersey.

364. For years Gaming and Leisure Properties, Inc. has been on notice of repeated incidences of sex trafficking occurring on its properties, yet the chain has failed to take action to prevent sex trafficking and still persists in failing to take necessary action to prevent sex trafficking on its properties.

365. Gaming and Leisure Properties, Inc. has demonstrated willful blindness to, or actual complicit involvement in, the rampant culture of sex trafficking which tragically occurs on its property and properties throughout the country. This same entrenched, pervasive willful blindness to, or complicit involvement in, sex trafficking facilitated the sex trafficking of the Plaintiff at the Tropicana Hotel located at 2831 Boardwalk in Atlantic City, New Jersey on repeated occasions.

## **CAUSES OF ACTION**

### **COUNT ONE**
### **VIOLATION OF THE TVPRA, 18 U.S.C §1595**
### **(Against the Defendant, Red Roof Inns, Inc.)**

366. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

367. The Plaintiff is a survivor of sex trafficking within the meaning of 18 U.S.C. § 1591 and is entitled to bring a civil action under 18 U.S.C. § 1595 against any individual or entity whose violations of the TVPRA proximately caused the Plaintiff to sustain physical and psychological injuries.

368. The Defendant, Red Roof Inns, Inc., knowingly benefited financially from participating in illegal sex trafficking ventures in violation of the TVPRA, 18 U.S.C. § 1591(a)(2), by, *inter alia*, engaging in acts and omissions that are intended to support, facilitate, and further traffickers' transportation and sale of victims for commercial sexual exploitation. Defendant, Red Roof Inns, Inc., knew that their repeated failures to address known risks of human trafficking on

their hotel properties would increase the overall volume of illegal commercial sex at their hotel properties. Defendant, Red Roof Inns, Inc., knowingly benefited from facilitating the trafficking of persons on their hotel properties.

369. Defendant, Red Roof Inns, Inc., knowingly benefited financially from the presence of traffickers at their hotel properties by consistently renting rooms to traffickers who repeatedly sold the Plaintiff for sex at Defendant's hotel properties and accordingly, participated in the trafficking ventures that exploited her by the various means described herein.

370. The Plaintiff has suffered substantial sexual, physical, emotional, psychological and economic injuries, and other damages as a result of being trafficked at Defendant's hotel properties. She continues to live in fear of her traffickers.

**COUNT TWO**
**NEGLIGENCE**
**(Against the Defendant, Red Roof Inns, Inc.)**

371. The Plaintiff adopts and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

372. The Defendant, Red Roof Inns, Inc., had a duty to use reasonable care to select, train, supervise, and retain its employees working at the hotels on their properties, including but not limited to, proper training and or supervision relating to the observation, investigation, and reporting of signs of guest misconduct, including, but not limited to, human trafficking and sexual exploitation.

373. The Defendant, Red Roof Inns, Inc., had a duty to use reasonable care to ensure the safety and security of guests at their hotels, including the Plaintiff.

374. At the time of the incidents alleged herein, the Defendant, Red Roof Inns, Inc., employed staff to operate their hotels and properties, including, but not limited to, front desk

clerks, night auditors, housekeeping staff, and/or maintenance workers. Throughout this time period, as outlined above, the Defendant, Red Roof Inns, Inc., and/or their actual and/or apparent agents, servants, and/or employees, repeatedly failed to observe and/or report signs of guest misconduct at their hotels and/or properties, including, but not limited to, signs of human trafficking and/or sexual exploitation taking place on the premises. Furthermore, upon information and belief, the Defendant, Red Roof Inns, Inc., and/or its actual and/or apparent agents, servants, and/or employees', repeatedly failed to warn their customers, including the Plaintiff, of said trafficking.

375. Additionally, prior to the incidents alleged herein, the Defendant, Red Roof Inns, Inc., failed to properly train their employees regarding security and the detection of guest misconduct in their hotels and on their properties, including, but not limited to, signs of human trafficking and sexual exploitation.

376. The Defendant, Red Roof Inns, Inc., breached this duty of care by acts, omissions, and commissions including, but not limited to:

a. Failure to adequately train, supervise, and retain employees to ensure proper monitoring of surveillance cameras at their hotels and properties for signs of human trafficking and/or sexual exploitation.

b. Failure to adequately train, supervise, and retain employees to ensure proper monitoring of the number of guests in each room of their hotels, and non-guest visitors in their hotels or on their properties.

c. Failure to provide and/or train adequate security in their hotels and/or on their properties with the knowledge that said premises had a history of trafficking.

d. Failure to adequately train, supervise, and retain employees, to ensure proper monitoring of their hotels for signs of dangerous conditions including, but not limited to, human trafficking, sexual exploitation, and rape, by ignoring the following conditions:

   i. The repeated refusal of maid service;
   ii. The number and frequency of visitors entering and exiting the hotel and/or property;
   iii. Guests present in any particular room in excess of the rooms capacity;
   iv. Signs of the repeated verbal abuse, physical abuse, restraint and/or confinement of an individual by another;
   v. Signs of control over an individual and/or an individual's personal property by another, including, but not limited to, identification documents;
   vi. Signs of deprivation including, but not limited to, diminished personal hygiene, lack of luggage, malnourishment, submissiveness, and inappropriate attire;
   vii. The repeated acceptance of "hush money" by employees, paid to not disclose Plaintiff's sex trafficking; and
   viii. The repeated renting of specific rooms in the hotel and/or presence on the property.

e. Failure to adequately train, supervise, and retain employees, to ensure proper monitoring of their hotels and their properties for signs of suspicious behavior on the premises, which would have alerted the Defendant, Red Roof Inns, Inc., to

the sex trafficking of the Plaintiff, including, but not limited to loud noises and signs and sounds of distress coming from rooms and areas in the hotel and/or on the property, the odor of drugs emanating from rooms and areas in the hotel and/or on the property, discarded drug paraphernalia, non-guests entering and exiting rooms in the hotel and/or on the property, the repeated renting of specific rooms in the hotel and/or presence on the property, and the apparent purchasing of sex acts in the hotel and/or on the property;

f. Failure to adequately train, supervise, and retain its actual and/or apparent agents, servants and/or employees, including, but not limited to, training to ensure the investigation of suspicious behavior at their hotel and/or properties which would have alerted the Defendant, Red Roof Inns, Inc., to the sex trafficking of the Plaintiff;

g. Failure to adequately train, supervise, and retain its actual and/or apparent agents, servants and/or employees, including, but not limited to, training to ensure proper reporting to law enforcement of signs of guest misconduct at their hotels and/or on their properties, including, but not limited to human trafficking and sexual exploitation;

h. Failure to adequately train, supervise, and retain its actual and/or apparent agents, servants and/or employees, including, but not limited to, training to ensure a timely response and investigation into guest complaints regarding suspicious behavior at their hotels and/or on their properties, which would have resulted in their discovery of the sex trafficking of the Plaintiff;

i. Failure to provide adequate security and take reasonable steps to protect the Plaintiff;

j. Accepting "hush money" and allowing the Plaintiff's traffickers to have isolated rooms to conceal the trafficking of the Plaintiff; and

k. Being otherwise careless and negligent.

377. As a direct and proximate result of the aforementioned negligent acts, omissions, and/or commissions by the Defendant, Red Roof Inns, Inc., the Plaintiff was repeatedly and consistently assaulted both physically and sexually, verbally abused, held against her will, regularly exploited, and was otherwise irreparably injured, both physically and psychologically. Said acts were repeatedly perpetrated at the Defendant, Red Roof Inns, Inc.'s hotels and properties and the Defendant failed to prevent against such horrible acts. The imminent harm described above, as well as the Plaintiff's injuries, were a foreseeable and preventable result of the Defendant, Red Roof Inns, Inc.'s negligence and their failure to adequately train and supervise their employees and to provide adequate security and take reasonable steps to protect the Plaintiff.

378. The Plaintiff has suffered, and/or will continue to suffer, from injuries, including, but not limited to, past and future conscious physical pain and mental anguish, past and future pain and suffering, and economic loss, past, present and future, as a direct and proximate result of the Defendant, Red Roof Inns, Inc.'s failure to adequately train, supervise, and retain their employees to adequately recognize and investigate indicia of guest misconduct. The Defendant, Red Roof Inns, Inc.'s failure to adequately train, supervise, and retain their employees facilitated such an environment of disorder and violence that the injuries sustained by the Plaintiff was foreseeable and imminent, especially given the multiple police incidents and reviews on-line.

379. Additionally, the Plaintiff has suffered, and continues to suffer, from damages, including but not limited to, a lifetime loss of earnings, a diminution in earning capacity and/or medical expenses past and future, including the expenses that in reasonable probability will be incurred in the future, as a direct and proximate cause of the Defendant, Red Roof Inns, Inc.'s, and/or their actual and/or apparent agents, servants, and/or employees', negligent acts, omissions, and/or commissions.

380. Furthermore, the Plaintiff has suffered, and continues to suffer, from injuries, including but not limited to, a loss of expected enjoyment of life and a permanent alteration of reasonable pre-injury life expectations.

381. The Plaintiff avers that all damages, past, present, and future, were a direct and proximate result of the negligent acts, omissions, and/or commissions of the Defendant and/or its actual and/or apparent agents, servants, and/or employees', without any negligence or want of due care on the part of the Plaintiff contributing thereto.

**COUNT THREE**
**NEGLIGENCE - PREMISES LIABILITY**
**(Against the Defendant, Red Roof Inns, Inc.)**

382. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

383. The Defendant, Red Roof Inns, Inc., and their actual and/or apparent agents, servants and/or employees, owed to the Plaintiff a duty to use reasonable and ordinary care to keep their hotels and properties safe, and to protect the Plaintiff from injury caused by an unreasonable risk of danger in their hotel and/or on their property.

384. Upon information and belief, prior to and during the incidents alleged herein, as outlined above, the Defendant, Red Roof Inns, Inc., had actual and/or constructive notice of a

dangerous condition in their hotels and on their properties, including but not limited to, human trafficking and sexual exploitation of the Plaintiff.

385. In addition to the Defendant, Red Roof Inns, Inc.'s actual and /or constructive notice, especially given the multiple arrests at each Defendant's property and on-line reviews associated with Defendant, the Defendant's negligent acts, omissions, and/or commissions created a dangerous condition at their hotel and on their property, to wit, a hotel and property with inadequate security that fostered an environment which encouraged human trafficking and sexual exploitation.

386. The Defendant, Red Roof Inns, Inc., breached this duty of care by acts, omissions, and commissions including, but not limited to:

a. Failure to properly monitor surveillance cameras in the hotel and/or on the property for signs of human trafficking and/or sexual exploitation in the hotel and/or on the property;

b. Failure to properly monitor the number of guests in the rooms of the hotel and/or on the property;

c. Failure to provide adequate security in the hotel and/or on the property with the knowledge that said premises had a history of sex trafficking;

d. Failure to properly monitor the hotel and/or property for signs of dangerous conditions, including, but not limited to, human trafficking, false imprisonment, rape, and sexual exploitation, by ignoring the following conditions:

    i. The repeated refusal of maid service;

    ii. The number and frequency of visitors entering and exiting the hotel and/or property;

iii. The number of guests present in any particular room as compared to the room's capacity;

iv. Signs of the repeated verbal abuse, physical abuse, restraint and/or confinement of an individual by another;

v. Signs of control over an individual and/or an individual's personal property by another, including, but not limited to, identification documents;

vi. Signs of deprivation including, but not limited to, diminished personal hygiene, lack of luggage, malnourishment, submissiveness, and inappropriate attire; and

vii. The repeated renting of specific rooms in their hotels in isolated areas to assist in concealing the trafficking of Plaintiff.

e. Failure to properly monitor and investigate the hotel and property for signs of suspicious behavior on the premises. Behavior, which would have alerted the Defendant, Red Roof Inns, Inc., to the sex trafficking of the Plaintiff to which the Plaintiff was a victim. Behavior including, but not limited to, loud noises and sounds of distress coming from rooms and areas in the hotel and/or property, the odor of drugs emanating from rooms and areas in the hotel and/or property, discarded drug paraphernalia, non-guests entering and exiting rooms in the hotel and/or property, the repeated renting of specific rooms in the hotel and/ or on the property, and the apparent purchasing of sex acts in the hotel and/or on the property.

f. Failure to properly advise law enforcement of suspicious behavior on the premises which would have alerted the Defendant, Red Roof Inns, Inc., to the sex trafficking of the Plaintiff to which she was a victim. Behavior, including, but not limited to, loud noises and sounds of distress coming from rooms and areas in the hotel and/or property, the odor of drugs emanating from rooms and areas in the hotel and/or property, discarded drug paraphernalia, non-guests entering and exiting rooms in the hotel and/or property, the repeated renting of specific rooms in the hotel and/or presence on the property, and the apparent purchasing of sex acts in the hotel and/or on the property.

g. Failure to adequately respond to, and investigate, guest complaints regarding suspicious behavior at the hotel and/or on the property, which would have resulted in the discovery of sex trafficking of the Plaintiff to which she was a victim;

h. Failure to adequately respond to and investigate each of the above articulated issues, which would have stopped the ongoing victimization of the Plaintiff;

i. Accepting "hush money" and allowing the Plaintiff's traffickers to have isolated rooms to conceal the trafficking of the Plaintiff; and

j. Being otherwise careless and negligent.

387. As a direct and proximate result of the aforementioned negligent acts, omissions, and/or commissions by the Defendant, Red Roof Inns, Inc., the Plaintiff was kidnapped, repeatedly and consistently assaulted both physically and sexually, verbally abused, held against her will, regularly exploited, and were otherwise irreparably injured, both physically and psychologically. Said acts were repeatedly perpetrated at the Defendant, Red Roof Inns, Inc.'s hotels and properties and the Defendant had actual or constructive knowledge that these acts, as well as other similar

criminal acts, were taking place, and that a dangerous condition existed on the premises, and the Defendant had sufficient time to remove the dangerous condition, investigate the suspicious activity, and/or alert law enforcement of the suspicious activity. The imminent harm described above, as well as the Plaintiff's injuries, were a foreseeable and preventable result of the Defendant, Red Roof Inns, Inc.'s negligence.

388. The Plaintiff has suffered, and/or will continue to suffer, from injuries, including but not limited to, past and future conscious physical pain and mental anguish, past and future pain and suffering, and economic loss, past, present and future, as a direct and proximate result of the Defendant, and/or its actual and/or apparent agents, servants, and/or employees', negligent acts, omissions, and/or commissions. By ignoring indicia of guest misconduct, the Defendant, Red Roof Inns, Inc., facilitated such an environment of disorder and violence that the injuries sustained by the Plaintiff.

389. Additionally, the Plaintiff has suffered, and continues to suffer, from damages, including but not limited to, a lifetime loss of earnings, a diminution in earning capacity and/or medical expenses past and future, including the expenses that in reasonable probability will be incurred in the future, as a direct and proximate cause of the Defendant's, and/or its actual and/or apparent agents, servants, and/or employees', negligent acts, omissions, and/or commissions.

390. Furthermore, the Plaintiff has suffered, and continues to suffer, from injuries, including but not limited to, a loss of expected enjoyment of life and a permanent alteration of reasonable pre-injury life expectations.

391. The Plaintiff avers that all damages, past, present, and future, were a direct and proximate result of the negligent acts, omissions, and/or commissions of the Defendant, Red Roof

Inns, Inc., and/or its actual and/or apparent agents, servants, and/or employees, without any negligence or want of due care on the part of the Plaintiff contributing thereto.

**COUNT FOUR**
**VICARIOUS LIABILITY**
**(Against the Defendant, Red Roof Inns, Inc.)**

392. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

393. At all relevant times, the Defendant, Red Roof Inns, Inc., supervised and/or operated the Red Roof Inn + Boston – Logan, where the Plaintiff was trafficked for sex.

394. At all relevant times, the Defendant, Red Roof Inns, Inc., was aware that human trafficking was occurring at its local hotels, including but not limited to the Red Roof Inn + Boston – Logan.

395. The Defendant, Red Roof Inns, Inc., failed to develop effective policies and/or failed to implement and enforce effective policies, policies which would have protected the Plaintiff from being trafficked for sex.

396. Despite having actual and/or constructive knowledge of the extensive prostitution and sex trafficking that occurs at its hotels, including the Red Roof Inn + Boston – Logan, Red Roof Inns, Inc. has repeatedly failed to prevent or adequately address commercial sex trafficking at its hotels, and particularly the trafficking of the Plaintiff.

397. Upon information and belief, the Defendant, Red Roof Inns, Inc., exercises actual control over its franchisees and subsidiaries, including the Red Roof Inn + Boston – Logan, through control over brand standards.

398. Upon information and belief, the Defendant, Red Roof Inns, Inc., exerts dominion and control over its franchises and has control over the day-to-day operations in a number of areas, beyond that which is necessary to maintain brand standards.

399. Upon information and belief, the Defendant, Red Roof Inns, Inc., has control over the existence of the franchisor-franchisee relationship and has the ability to terminate the franchisee.

400. At all relevant times, the Red Roof Inn + Boston – Logan, where the Plaintiff was trafficked, was the actual and apparent agent of Red Roof Inns, Inc., and together they offer, or offered, public lodging services in the hotel. The agency relationship was created through the Defendant, Red Roof Inns, Inc.'s exercise of an ongoing and systematic right of control over its branded hotels.

401. The Defendant, Red Roof Inns, Inc., accepted profits from the Plaintiff's traffickers even though the signs of her trafficking were open and obvious.

402. The Defendant, Red Roof Inns, Inc., knew or should have known that such profits were derived from sex traffickers' illegal and tortious activities.

## COUNT FIVE
## UNJUST ENRICHMENT
## (Against the Defendant, Red Roof Inns, Inc.)

403. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

404. As a result of the trafficking and sexual exploitation of the Plaintiff, the Defendant, Red Roof Inns, Inc., unjustly financially benefitted, and enriched themselves at the Plaintiff's expense by their acts, omissions, and commissions including, but not limited to:

a. Profit from renting rooms to those looking to sexually exploit the Plaintiff;

b. Increased profit margins due to lower operation costs by refusing to implement proper training of Defendant, Red Roof Inns, Inc.'s employees and managers regarding the identification of human trafficking and sexual exploitation;

c. Increased profit margins due to lower operation costs by refusing to install proper security devices in the lobby, hallways, and parking lots of the Defendant, Red Roof Inns, Inc.'s hotels and properties that would help (a) deter human trafficking and sexual exploitation and (b) be used to identify the occurrence of human trafficking and sexual exploitation and alert the proper authorities and/or intervene in an appropriate way;

d. Increased profit margins due to lower operating costs by failing and/or refusing to install adequate lighting and security cameras to monitor ingress and egress of human traffickers and visitors looking to purchase sex at the Defendant, Red Roof Inns, Inc.'s hotels and properties;

e. Increased profit margins due to lower operating costs by failing and/or refusing to hire qualified security officers who would actively combat human trafficking and sexual exploitation;

f. Increased profit margins due to lower operating costs by failing and/or refusing to implement proper security measures to prevent and identify human trafficking and sexual exploitation at the Defendant, Red Roof Inns, Inc.'s hotels and property;

g. Increased profit margins as a result of the continued customer loyalty of traffickers and buyers of commercial sex. These traffickers and buyers sought to exploit individuals, like the Plaintiff, due to the Defendant, Red Roof Inns, Inc.'s

lack of measures against sexual exploitation and human trafficking. This customer loyalty led to continued alcohol, food, and room sales;

h. Benefit of avoiding interference by law enforcement officials and spending the time to address and properly solve any incidence or pattern of human trafficking or sexual exploitation at the Defendant, Red Roof Inns, Inc.'s hotel or property. This prevented the Defendant from having to spend the time and money to fill out all proper and necessary law enforcement reports and information, respond to proper and necessary subpoena requests, and cooperate with any inquiry and needs of the prosecution; and

i. Increased profit margins by knowingly catering to the needs of a criminal subculture that is looking for locations that will not actively enforce laws against human trafficking and sexual exploitation or take active security measures to prevent human trafficking or sexual exploitation on their property.

405. These benefits were conferred onto the Defendant, with their knowledge of the trafficking and/or sexual exploitation of the Plaintiff and others like her. The Defendant, Red Roof Inns, Inc., accepted and retained these benefits under circumstances that make it inequitable for them to retain them without paying their value.

406. The Plaintiff avers that all damages, past, present, and future, were a direct and proximate result of the negligent acts, omissions, and/or commissions of the Defendant, Red Roof Inns, Inc., and/or its actual and/or apparent agents, servants, and/or employees, without any negligence or want of due care on the part of the Plaintiff contributing thereto.

**COUNT SIX**
**VIOLATION OF THE TVPRA, 18 U.S.C §1595**
**(Against the Defendant, Choice Hotels International, Inc.)**

407. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

408. The Plaintiff is a survivor of sex trafficking within the meaning of 18 U.S.C. § 1591 and is entitled to bring a civil action under 18 U.S.C. § 1595 against any individual or entity whose violations of the TVPRA proximately caused the Plaintiff to sustain physical and psychological injuries.

409. The Defendant, Choice Hotels International, Inc., knowingly benefited financially from participating in illegal sex trafficking ventures in violation of the TVPRA, 18 U.S.C. § 1591(a)(2), by, *inter alia*, engaging in acts and omissions that are intended to support, facilitate, and further traffickers' transportation and sale of victims for commercial sexual exploitation. Defendant, Choice Hotels International, Inc., knew that their repeated failures to address known risks of human trafficking on their hotel properties would increase the overall volume of illegal commercial sex at their hotel properties. Defendant, Choice Hotels International, Inc., knowingly benefited from facilitating the trafficking of persons on their hotel properties.

410. Defendant, Choice Hotels International, Inc., knowingly benefited financially from the presence of traffickers at their hotel properties by consistently renting rooms to traffickers who repeatedly sold the Plaintiff for sex at Defendant's hotel properties and accordingly, participated in the trafficking ventures that exploited her by the various means described herein.

411. The Plaintiff has suffered substantial sexual, physical, emotional, psychological and economic injuries, and other damages as a result of being trafficked at Defendant's hotel properties. She continues to live in fear of her traffickers.

**COUNT SEVEN**
**NEGLIGENCE**
**(Against the Defendant, Choice Hotels International, Inc.)**

412. The Plaintiff adopts and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

413. The Defendant, Choice Hotels International, Inc., had a duty to use reasonable care to select, train, supervise, and retain its employees working at the hotels on their properties, including but not limited to, proper training and or supervision relating to the observation, investigation, and reporting of signs of guest misconduct, including, but not limited to, human trafficking and sexual exploitation.

414. The Defendant, Choice Hotels International, Inc., had a duty to use reasonable care to ensure the safety and security of guests at their hotels, including the Plaintiff.

415. At the time of the incidents alleged herein, the Defendant, Choice Hotels International, Inc., employed staff to operate their hotels and properties, including, but not limited to, front desk clerks, night auditors, housekeeping staff, and/or maintenance workers. Throughout this time period, as outlined above, the Defendant, Choice Hotels International, Inc., and/or their actual and/or apparent agents, servants, and/or employees, repeatedly failed to observe and/or report signs of guest misconduct at their hotels and/or properties, including, but not limited to, signs of human trafficking and/or sexual exploitation taking place on the premises. Furthermore, upon information and belief, the Defendant, Choice Hotels International, Inc., and/or its actual and/or apparent agents, servants, and/or employees', repeatedly failed to warn their customers, including the Plaintiff, of said trafficking.

416. Additionally, prior to the incidents alleged herein, the Defendant, Choice Hotels International, Inc., failed to properly train their employees regarding security and the detection of

guest misconduct in their hotels and on their properties, including, but not limited to, signs of human trafficking and sexual exploitation.

417. The Defendant, Choice Hotels International, Inc., breached this duty of care by acts, omissions, and commissions including, but not limited to:

a. Failure to adequately train, supervise, and retain employees to ensure proper monitoring of surveillance cameras at their hotels and properties for signs of human trafficking and/or sexual exploitation;

b. Failure to adequately train, supervise, and retain employees to ensure proper monitoring of the number of guests in each room of their hotels, and non-guest visitors in their hotels or on their properties;

c. Failure to provide and/or train adequate security in their hotels and/or on their properties with the knowledge that said premises had a history of trafficking;

d. Failure to adequately train, supervise, and retain employees, to ensure proper monitoring of their hotels for signs of dangerous conditions including, but not limited to, human trafficking, sexual exploitation, and rape, by ignoring the following conditions:

    i. The repeated refusal of maid service;

    ii. The number and frequency of visitors entering and exiting the hotel and/or property;

    iii. Guests present in any particular room in excess of the rooms capacity;

    iv. Signs of the repeated verbal abuse, physical abuse, restraint and/or confinement of an individual by another;

v. Signs of control over an individual and/or an individual's personal property by another, including, but not limited to, identification documents;

vi. Signs of deprivation including, but not limited to, diminished personal hygiene, lack of luggage, malnourishment, submissiveness, and inappropriate attire;

vii. The repeated acceptance of "hush money" by employees, paid to not disclose Plaintiff's sex trafficking; and

viii. The repeated renting of specific rooms in the hotel and/or presence on the property.

e. Failure to adequately train, supervise, and retain employees, to ensure proper monitoring of their hotels and their properties for signs of suspicious behavior on the premises, which would have alerted the Defendant, Choice Hotels International, Inc., to the sex trafficking of the Plaintiff, including, but not limited to loud noises and signs and sounds of distress coming from rooms and areas in the hotel and/or on the property, the odor of drugs emanating from rooms and areas in the hotel and/or on the property, discarded drug paraphernalia, non-guests entering and exiting rooms in the hotel and/or on the property, the repeated renting of specific rooms in the hotel and/or presence on the property, and the apparent purchasing of sex acts in the hotel and/or on the property;

f. Failure to adequately train, supervise, and retain its actual and/or apparent agents, servants and/or employees, including, but not limited to, training to ensure the investigation of suspicious behavior at their hotel and/or properties which would

have alerted the Defendant, Choice Hotels International, Inc., to the sex trafficking of the Plaintiff;

g. Failure to adequately train, supervise, and retain its actual and/or apparent agents, servants and/or employees, including, but not limited to, training to ensure proper reporting to law enforcement of signs of guest misconduct at their hotels and/or on their properties, including, but not limited to human trafficking and sexual exploitation;

h. Failure to adequately train, supervise, and retain its actual and/or apparent agents, servants and/or employees, including, but not limited to, training to ensure a timely response and investigation into guest complaints regarding suspicious behavior at their hotels and/or on their properties, which would have resulted in their discovery of the sex trafficking of the Plaintiff;

i. Failure to provide adequate security and take reasonable steps to protect the Plaintiff;

j. Accepting "hush money" and allowing the Plaintiff's traffickers to have isolated rooms to conceal the trafficking of the Plaintiff; and

k. Being otherwise careless and negligent.

418. As a direct and proximate result of the aforementioned negligent acts, omissions, and/or commissions by the Defendant, Choice Hotels International, Inc., the Plaintiff was repeatedly and consistently assaulted both physically and sexually, verbally abused, held against her will, regularly exploited, and was otherwise irreparably injured, both physically and psychologically. Said acts were repeatedly perpetrated at the Defendant, Choice Hotels International, Inc.'s hotels and properties and the Defendant failed to prevent against such horrible

acts. The imminent harm described above, as well as the Plaintiff's injuries, were a foreseeable and preventable result of the Defendant, Choice Hotels International, Inc.'s negligence and their failure to adequately train and supervise their employees and to provide adequate security and take reasonable steps to protect the Plaintiff.

419. The Plaintiff has suffered, and/or will continue to suffer, from injuries, including, but not limited to, past and future conscious physical pain and mental anguish, past and future pain and suffering, and economic loss, past, present and future, as a direct and proximate result of the Defendant, Choice Hotels International, Inc.'s failure to adequately train, supervise, and retain their employees to adequately recognize and investigate indicia of guest misconduct. The Defendant, Choice Hotels International, Inc.'s failure to adequately train, supervise, and retain their employees facilitated such an environment of disorder and violence that the injuries sustained by the Plaintiff was foreseeable and imminent, especially given the multiple police incidents and reviews on-line.

420. Additionally, the Plaintiff has suffered, and continues to suffer, from damages, including but not limited to, a lifetime loss of earnings, a diminution in earning capacity and/or medical expenses past and future, including the expenses that in reasonable probability will be incurred in the future, as a direct and proximate cause of the Defendant, Choice Hotels International, Inc.'s, and/or their actual and/or apparent agents, servants, and/or employees', negligent acts, omissions, and/or commissions.

421. Furthermore, the Plaintiff has suffered, and continues to suffer, from injuries, including but not limited to, a loss of expected enjoyment of life and a permanent alteration of reasonable pre-injury life expectations.

422. The Plaintiff avers that all damages, past, present, and future, were a direct and proximate result of the negligent acts, omissions, and/or commissions of the Defendant and/or its actual and/or apparent agents, servants, and/or employees', without any negligence or want of due care on the part of the Plaintiff contributing thereto.

**COUNT EIGHT**
**NEGLIGENCE - PREMISES LIABILITY**
**(Against the Defendant, Choice Hotels International, Inc.)**

423. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

424. The Defendant, Choice Hotels International, Inc., and their actual and/or apparent agents, servants and/or employees, owed to the Plaintiff a duty to use reasonable and ordinary care to keep their hotels and properties safe, and to protect the Plaintiff from injury caused by an unreasonable risk of danger in their hotel and/or on their property.

425. Upon information and belief, prior to and during the incidents alleged herein, as outlined above, the Defendant, Choice Hotels International, Inc., had actual and/or constructive notice of a dangerous condition in their hotels and on their properties, including but not limited to, human trafficking and sexual exploitation of the Plaintiff.

426. In addition to the Defendant, Choice Hotels International, Inc.'s actual and /or constructive notice, especially given the multiple arrests at each Defendant's property and on-line reviews associated with Defendant, the Defendant's negligent acts, omissions, and/or commissions created a dangerous condition at their hotel and on their property, to wit, a hotel and property with inadequate security that fostered an environment which encouraged human trafficking and sexual exploitation.

427. The Defendant, Choice Hotels International, Inc., breached this duty of care by acts, omissions, and commissions including, but not limited to:

a. Failure to properly monitor surveillance cameras in the hotel and/or on the property for signs of human trafficking and/or sexual exploitation in the hotel and/or on the property;

b. Failure to properly monitor the number of guests in the rooms of the hotel and/or on the property;

c. Failure to provide adequate security in the hotel and/or on the property with the knowledge that said premises had a history of sex trafficking;

d. Failure to properly monitor the hotel and/or property for signs of dangerous conditions, including, but not limited to, human trafficking, false imprisonment, rape, and sexual exploitation, by ignoring the following conditions:

i. The repeated refusal of maid service;

ii. The number and frequency of visitors entering and exiting the hotel and/or property;

iii. The number of guests present in any particular room as compared to the room's capacity;

iv. Signs of the repeated verbal abuse, physical abuse, restraint and/or confinement of an individual by another;

v. Signs of control over an individual and/or an individual's personal property by another, including, but not limited to, identification documents;

vi. Signs of deprivation including, but not limited to, diminished personal hygiene, lack of luggage, malnourishment, submissiveness, and inappropriate attire; and

vii. The repeated renting of specific rooms in their hotels in isolated areas to assist in concealing the trafficking of Plaintiff.

e. Failure to properly monitor and investigate the hotel and property for signs of suspicious behavior on the premises. Behavior, which would have alerted the Defendant, Choice Hotels International, Inc., to the sex trafficking of the Plaintiff to which the Plaintiff was a victim. Behavior including, but not limited to, loud noises and sounds of distress coming from rooms and areas in the hotel and/or property, the odor of drugs emanating from rooms and areas in the hotel and/or property, discarded drug paraphernalia, non-guests entering and exiting rooms in the hotel and/or property, the repeated renting of specific rooms in the hotel and/ or on the property, and the apparent purchasing of sex acts in the hotel and/or on the property;

f. Failure to properly advise law enforcement of suspicious behavior on the premises which would have alerted the Defendant, Choice Hotels International, Inc., to the sex trafficking of the Plaintiff to which she was a victim. Behavior, including, but not limited to, loud noises and sounds of distress coming from rooms and areas in the hotel and/or property, the odor of drugs emanating from rooms and areas in the hotel and/or property, discarded drug paraphernalia, non-guests entering and exiting rooms in the hotel and/or property, the repeated renting of specific rooms

in the hotel and/or presence on the property, and the apparent purchasing of sex acts in the hotel and/or on the property;

g. Failure to adequately respond to, and investigate, guest complaints regarding suspicious behavior at the hotel and/or on the property, which would have resulted in the discovery of sex trafficking of the Plaintiff to which she was a victim;

h. Failure to adequately respond to and investigate each of the above articulated issues, which would have stopped the ongoing victimization of the Plaintiff;

i. Accepting "hush money" and allowing the Plaintiff's traffickers to have isolated rooms to conceal the trafficking of the Plaintiff; and

j. Being otherwise careless and negligent.

428. As a direct and proximate result of the aforementioned negligent acts, omissions, and/or commissions by the Defendant, Choice Hotels International, Inc., the Plaintiff was kidnapped, repeatedly and consistently assaulted both physically and sexually, verbally abused, held against her will, regularly exploited, and were otherwise irreparably injured, both physically and psychologically. Said acts were repeatedly perpetrated at the Defendant, Choice Hotels International, Inc.'s hotels and properties and the Defendant had actual or constructive knowledge that these acts, as well as other similar criminal acts, were taking place, and that a dangerous condition existed on the premises, and the Defendant had sufficient time to remove the dangerous condition, investigate the suspicious activity, and/or alert law enforcement of the suspicious activity. The imminent harm described above, as well as the Plaintiff's injuries, were a foreseeable and preventable result of the Defendant, Red Roof Inns, Inc.'s negligence.

429. The Plaintiff has suffered, and/or will continue to suffer, from injuries, including but not limited to, past and future conscious physical pain and mental anguish, past and future pain

and suffering, and economic loss, past, present and future, as a direct and proximate result of the Defendant, and/or its actual and/or apparent agents, servants, and/or employees', negligent acts, omissions, and/or commissions. By ignoring indicia of guest misconduct, the Defendant, Choice Hotels International, Inc., facilitated such an environment of disorder and violence that the injuries sustained by the Plaintiff.

430. Additionally, the Plaintiff has suffered, and continues to suffer, from damages, including but not limited to, a lifetime loss of earnings, a diminution in earning capacity and/or medical expenses past and future, including the expenses that in reasonable probability will be incurred in the future, as a direct and proximate cause of the Defendant's, and/or its actual and/or apparent agents, servants, and/or employees', negligent acts, omissions, and/or commissions.

431. Furthermore, the Plaintiff has suffered, and continues to suffer, from injuries, including but not limited to, a loss of expected enjoyment of life and a permanent alteration of reasonable pre-injury life expectations.

432. The Plaintiff avers that all damages, past, present, and future, were a direct and proximate result of the negligent acts, omissions, and/or commissions of the Defendant, Choice Hotels International, Inc., and/or its actual and/or apparent agents, servants, and/or employees, without any negligence or want of due care on the part of the Plaintiff contributing thereto.

**COUNT NINE**
**VICARIOUS LIABILITY**
**(Against the Defendant, Choice Hotels International, Inc.)**

433. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

434. At all relevant times, the Defendant, Choice Hotels International, Inc., supervised and/or operated the Clarion Inn located at 101 South Iowa Avenue in Atlantic City, New Jersey as

well as the Comfort Inn located at 102 Newbury Street in Danvers, Massachusetts, which are two hotels where the Plaintiff was trafficked for sex.

435. At all relevant times, the Defendant, Choice Hotels International, Inc., was aware that human trafficking was occurring at its local hotels, including but not limited to the Clarion Inn located at 101 South Iowa Avenue in Atlantic City, New Jersey as well as the Comfort Inn located at 102 Newbury Street in Danvers, Massachusetts, two hotels where the Plaintiff was trafficked for sex.

436. The Defendant, Choice Hotels International, Inc., failed to develop effective policies and/or failed to implement and enforce effective policies, policies which would have protected the Plaintiff from being trafficked for sex.

437. Despite having actual and/or constructive knowledge of the extensive prostitution and sex trafficking that occurs at its hotels, including the Clarion Inn located at 101 South Iowa Avenue in Atlantic City, New Jersey as well as the Comfort Inn located at 102 Newbury Street in Danvers, Massachusetts, two hotels where the Plaintiff was trafficked for sex, Choice Hotels International, Inc. has repeatedly failed to prevent or adequately address commercial sex trafficking at its hotels, and particularly the trafficking of the Plaintiff.

438. Upon information and belief, the Defendant, Choice Hotels International, Inc., exercises actual control over its franchisees and subsidiaries, including the Clarion Inn located at 101 South Iowa Avenue in Atlantic City, New Jersey as well as the Comfort Inn located at 102 Newbury Street in Danvers, Massachusetts, two hotels where the Plaintiff was trafficked for sex, through control over brand standards.

439. Upon information and belief, the Defendant, Choice Hotels International, Inc., exerts dominion and control over its franchises and has control over the day-to-day operations in a number of areas, beyond that which is necessary to maintain brand standards.

440. Upon information and belief, the Defendant, Choice Hotels International, Inc., has control over the existence of the franchisor-franchisee relationship and has the ability to terminate the franchisee.

441. At all relevant times, the Clarion Inn located at 101 South Iowa Avenue in Atlantic City, New Jersey as well as the Comfort Inn located at 102 Newbury Street in Danvers, Massachusetts, two hotels where the Plaintiff was trafficked, were the actual and apparent agent of Choice Hotels International, Inc., and together they offer, or offered, public lodging services in the hotels. The agency relationship was created through the Defendant, Choice Hotels International, Inc.'s exercise of an ongoing and systematic right of control over its branded hotels.

442. The Defendant, Choice Hotels International, Inc., accepted profits from the Plaintiff's traffickers even though the signs of her trafficking were open and obvious.

443. The Defendant, Choice Hotels International, Inc., knew or should have known that such profits were derived from sex traffickers' illegal and tortious activities.

## COUNT TEN
## UNJUST ENRICHMENT
## (Against the Defendant, Choice Hotels International, Inc.)

444. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

445. As a result of the trafficking and sexual exploitation of the Plaintiff, the Defendant, Choice Hotels International, Inc., unjustly financially benefitted, and enriched themselves at the Plaintiff's expense by their acts, omissions, and commissions including, but not limited to:

a. Profit from renting rooms to those looking to sexually exploit the Plaintiff;

b. Increased profit margins due to lower operation costs by refusing to implement proper training of Defendant, Choice Hotels International, Inc.'s employees and managers regarding the identification of human trafficking and sexual exploitation;

c. Increased profit margins due to lower operation costs by refusing to install proper security devices in the lobby, hallways, and parking lots of the Defendant, Choice Hotels International, Inc.'s hotels and properties that would help (a) deter human trafficking and sexual exploitation and (b) be used to identify the occurrence of human trafficking and sexual exploitation and alert the proper authorities and/or intervene in an appropriate way;

d. Increased profit margins due to lower operating costs by failing and/or refusing to install adequate lighting and security cameras to monitor ingress and egress of human traffickers and visitors looking to purchase sex at the Defendant, Choice Hotels International, Inc.'s hotels and properties;

e. Increased profit margins due to lower operating costs by failing and/or refusing to hire qualified security officers who would actively combat human trafficking and sexual exploitation;

f. Increased profit margins due to lower operating costs by failing and/or refusing to implement proper security measures to prevent and identify human trafficking and sexual exploitation at the Defendant, Choice Hotels International, Inc.'s hotels and property;

g. Increased profit margins as a result of the continued customer loyalty of traffickers and buyers of commercial sex. These traffickers and buyers sought to exploit individuals, like the Plaintiff, due to the Defendant, Choice Hotels International, Inc.'s lack of measures against sexual exploitation and human trafficking. This customer loyalty led to continued alcohol, food, and room sales;

h. Benefit of avoiding interference by law enforcement officials and spending the time to address and properly solve any incidence or pattern of human trafficking or sexual exploitation at the Defendant, Choice Hotels International, Inc.'s hotel or property. This prevented the Defendant from having to spend the time and money to fill out all proper and necessary law enforcement reports and information, respond to proper and necessary subpoena requests, and cooperate with any inquiry and needs of the prosecution; and

i. Increased profit margins by knowingly catering to the needs of a criminal subculture that is looking for locations that will not actively enforce laws against human trafficking and sexual exploitation or take active security measures to prevent human trafficking or sexual exploitation on their property.

446. These benefits were conferred onto the Defendant, with their knowledge of the trafficking and/or sexual exploitation of the Plaintiff and others like her. The Defendant, Choice Hotels International, Inc., accepted and retained these benefits under circumstances that make it inequitable for them to retain them without paying their value.

447. The Plaintiff avers that all damages, past, present, and future, were a direct and proximate result of the negligent acts, omissions, and/or commissions of the Defendant, Choice

Hotels International, Inc., and/or its actual and/or apparent agents, servants, and/or employees, without any negligence or want of due care on the part of the Plaintiff contributing thereto.

**COUNT ELEVEN**
**VIOLATION OF THE TVPRA, 18 U.S.C §1595**
**(Against the Defendant, Wyndham Hotels & Resorts, Inc.)**

448. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

449. The Plaintiff is a survivor of sex trafficking within the meaning of 18 U.S.C. § 1591 and is entitled to bring a civil action under 18 U.S.C. § 1595 against any individual or entity whose violations of the TVPRA proximately caused the Plaintiff to sustain physical and psychological injuries.

450. The Defendant, Wyndham Hotels & Resorts, Inc., knowingly benefited financially from participating in illegal sex trafficking ventures in violation of the TVPRA, 18 U.S.C. § 1591(a)(2), by, *inter alia*, engaging in acts and omissions that are intended to support, facilitate, and further traffickers' transportation and sale of victims for commercial sexual exploitation. Defendant, Wyndham Hotels & Resorts, Inc., knew that their repeated failures to address known risks of human trafficking on their hotel properties would increase the overall volume of illegal commercial sex at their hotel properties. Defendant, Wyndham Hotels & Resorts, Inc., knowingly benefited from facilitating the trafficking of persons on their hotel properties.

451. Defendant, Wyndham Hotels & Resorts, Inc., knowingly benefited financially from the presence of traffickers at their hotel properties by consistently renting rooms to traffickers who repeatedly sold the Plaintiff for sex at Defendant's hotel properties and accordingly, participated in the trafficking ventures that exploited her by the various means described herein.

452. The Plaintiff has suffered substantial sexual, physical, emotional, psychological and economic injuries, and other damages as a result of being trafficked at Defendant's hotel properties. She continues to live in fear of her traffickers.

**COUNT TWELVE**
**NEGLIGENCE**
**(Against the Defendant, Wyndham Hotels & Resorts, Inc.)**

453. The Plaintiff adopts and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

454. The Defendant, Wyndham Hotels & Resorts, Inc., had a duty to use reasonable care to select, train, supervise, and retain its employees working at the hotels on their properties, including but not limited to, proper training and or supervision relating to the observation, investigation, and reporting of signs of guest misconduct, including, but not limited to, human trafficking and sexual exploitation.

455. The Defendant, Wyndham Hotels & Resorts, Inc., had a duty to use reasonable care to ensure the safety and security of guests at their hotels, including the Plaintiff.

456. At the time of the incidents alleged herein, the Defendant, Wyndham Hotels & Resorts, Inc., employed staff to operate their hotels and properties, including, but not limited to, front desk clerks, night auditors, housekeeping staff, and/or maintenance workers. Throughout this time period, as outlined above, the Defendant, Wyndham Hotels & Resorts, Inc., and/or their actual and/or apparent agents, servants, and/or employees, repeatedly failed to observe and/or report signs of guest misconduct at their hotels and/or properties, including, but not limited to, signs of human trafficking and/or sexual exploitation taking place on the premises. Furthermore, upon information and belief, the Defendant, Wyndham Hotels & Resorts, Inc., and/or its actual and/or apparent

agents, servants, and/or employees', repeatedly failed to warn their customers, including the Plaintiff, of said trafficking.

457. Additionally, prior to the incidents alleged herein, the Defendant, Wyndham Hotels & Resorts, Inc., failed to properly train their employees regarding security and the detection of guest misconduct in their hotels and on their properties, including, but not limited to, signs of human trafficking and sexual exploitation.

458. The Defendant, Wyndham Hotels & Resorts, Inc., breached this duty of care by acts, omissions, and commissions including, but not limited to:

a. Failure to adequately train, supervise, and retain employees to ensure proper monitoring of surveillance cameras at their hotels and properties for signs of human trafficking and/or sexual exploitation;

b. Failure to adequately train, supervise, and retain employees to ensure proper monitoring of the number of guests in each room of their hotels, and non-guest visitors in their hotels or on their properties;

c. Failure to provide and/or train adequate security in their hotels and/or on their properties with the knowledge that said premises had a history of trafficking;

d. Failure to adequately train, supervise, and retain employees, to ensure proper monitoring of their hotels for signs of dangerous conditions including, but not limited to, human trafficking, sexual exploitation, and rape, by ignoring the following conditions:

    i. The repeated refusal of maid service;

    ii. The number and frequency of visitors entering and exiting the hotel and/or property;

iii. Guests present in any particular room in excess of the rooms capacity;

iv. Signs of the repeated verbal abuse, physical abuse, restraint and/or confinement of an individual by another;

v. Signs of control over an individual and/or an individual's personal property by another, including, but not limited to, identification documents;

vi. Signs of deprivation including, but not limited to, diminished personal hygiene, lack of luggage, malnourishment, submissiveness, and inappropriate attire;

vii. The repeated acceptance of "hush money" by employees, paid to not disclose Plaintiff's sex trafficking; and

viii. The repeated renting of specific rooms in the hotel and/or presence on the property.

e. Failure to adequately train, supervise, and retain employees, to ensure proper monitoring of their hotels and their properties for signs of suspicious behavior on the premises, which would have alerted the Defendant, Wyndham Hotels & Resorts, Inc., to the sex trafficking of the Plaintiff, including, but not limited to loud noises and signs and sounds of distress coming from rooms and areas in the hotel and/or on the property, the odor of drugs emanating from rooms and areas in the hotel and/or on the property, discarded drug paraphernalia, non-guests entering and exiting rooms in the hotel and/or on the property, the repeated renting of specific rooms in the hotel and/or

presence on the property, and the apparent purchasing of sex acts in the hotel and/or on the property;

f. Failure to adequately train, supervise, and retain its actual and/or apparent agents, servants and/or employees, including, but not limited to, training to ensure the investigation of suspicious behavior at their hotel and/or properties which would have alerted the Defendant, Wyndham Hotels & Resorts, Inc., to the sex trafficking of the Plaintiff;

g. Failure to adequately train, supervise, and retain its actual and/or apparent agents, servants and/or employees, including, but not limited to, training to ensure proper reporting to law enforcement of signs of guest misconduct at their hotels and/or on their properties, including, but not limited to human trafficking and sexual exploitation;

h. Failure to adequately train, supervise, and retain its actual and/or apparent agents, servants and/or employees, including, but not limited to, training to ensure a timely response and investigation into guest complaints regarding suspicious behavior at their hotels and/or on their properties, which would have resulted in their discovery of the sex trafficking of the Plaintiff;

i. Failure to provide adequate security and take reasonable steps to protect the Plaintiff;

j. Accepting "hush money" and allowing the Plaintiff's traffickers to have isolated rooms to conceal the trafficking of the Plaintiff; and

k. Being otherwise careless and negligent.

459. As a direct and proximate result of the aforementioned negligent acts, omissions, and/or commissions by the Defendant, Wyndham Hotels & Resorts, Inc., the Plaintiff was repeatedly and consistently assaulted both physically and sexually, verbally abused, held against her will, regularly exploited, and was otherwise irreparably injured, both physically and psychologically. Said acts were repeatedly perpetrated at the Defendant, Wyndham Hotels & Resorts, Inc.'s hotels and properties and the Defendant failed to prevent against such horrible acts. The imminent harm described above, as well as the Plaintiff's injuries, were a foreseeable and preventable result of the Defendant, Wyndham Hotels & Resorts, Inc.'s negligence and their failure to adequately train and supervise their employees and to provide adequate security and take reasonable steps to protect the Plaintiff.

460. The Plaintiff has suffered, and/or will continue to suffer, from injuries, including, but not limited to, past and future conscious physical pain and mental anguish, past and future pain and suffering, and economic loss, past, present and future, as a direct and proximate result of the Defendant, Wyndham Hotels & Resorts, Inc.'s failure to adequately train, supervise, and retain their employees to adequately recognize and investigate indicia of guest misconduct. The Defendant, Wyndham Hotels & Resorts, Inc.'s failure to adequately train, supervise, and retain their employees facilitated such an environment of disorder and violence that the injuries sustained by the Plaintiff was foreseeable and imminent, especially given the multiple police incidents and reviews on-line.

461. Additionally, the Plaintiff has suffered, and continues to suffer, from damages, including but not limited to, a lifetime loss of earnings, a diminution in earning capacity and/or medical expenses past and future, including the expenses that in reasonable probability will be incurred in the future, as a direct and proximate cause of the Defendant, Wyndham Hotels &

Resorts, Inc.'s, and/or their actual and/or apparent agents, servants, and/or employees', negligent acts, omissions, and/or commissions.

462. Furthermore, the Plaintiff has suffered, and continues to suffer, from injuries, including but not limited to, a loss of expected enjoyment of life and a permanent alteration of reasonable pre-injury life expectations.

463. The Plaintiff avers that all damages, past, present, and future, were a direct and proximate result of the negligent acts, omissions, and/or commissions of the Defendant and/or its actual and/or apparent agents, servants, and/or employees', without any negligence or want of due care on the part of the Plaintiff contributing thereto.

**COUNT THIRTEEN**
**NEGLIGENCE - PREMISES LIABILITY**
**(Against the Defendant, Wyndham Hotels & Resorts, Inc.)**

464. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

465. The Defendant, Wyndham Hotels & Resorts, Inc., and their actual and/or apparent agents, servants and/or employees, owed to the Plaintiff a duty to use reasonable and ordinary care to keep their hotels and properties safe, and to protect the Plaintiff from injury caused by an unreasonable risk of danger in their hotel and/or on their property.

466. Upon information and belief, prior to and during the incidents alleged herein, as outlined above, the Defendant, Wyndham Hotels & Resorts, Inc., had actual and/or constructive notice of a dangerous condition in their hotels and on their properties, including but not limited to, human trafficking and sexual exploitation of the Plaintiff.

467. In addition to the Defendant, Wyndham Hotels & Resorts, Inc.'s actual and /or constructive notice, especially given the multiple arrests at each Defendant's property and on-line

reviews associated with Defendant, the Defendant's negligent acts, omissions, and/or commissions created a dangerous condition at their hotel and on their property, to wit, a hotel and property with inadequate security that fostered an environment which encouraged human trafficking and sexual exploitation.

468. The Defendant, Wyndham Hotels & Resorts, Inc., breached this duty of care by acts, omissions, and commissions including, but not limited to:

a. Failure to properly monitor surveillance cameras in the hotel and/or on the property for signs of human trafficking and/or sexual exploitation in the hotel and/or on the property;

b. Failure to properly monitor the number of guests in the rooms of the hotel and/or on the property;

c. Failure to provide adequate security in the hotel and/or on the property with the knowledge that said premises had a history of sex trafficking;

d. Failure to properly monitor the hotel and/or property for signs of dangerous conditions, including, but not limited to, human trafficking, false imprisonment, rape, and sexual exploitation, by ignoring the following conditions:

    i. The repeated refusal of maid service;

    ii. The number and frequency of visitors entering and exiting the hotel and/or property;

    iii. The number of guests present in any particular room as compared to the room's capacity;

iv. Signs of the repeated verbal abuse, physical abuse, restraint and/or confinement of an individual by another;

v. Signs of control over an individual and/or an individual's personal property by another, including, but not limited to, identification documents;

vi. Signs of deprivation including, but not limited to, diminished personal hygiene, lack of luggage, malnourishment, submissiveness, and inappropriate attire; and

vii. The repeated renting of specific rooms in their hotels in isolated areas to assist in concealing the trafficking of Plaintiff.

e. Failure to properly monitor and investigate the hotel and property for signs of suspicious behavior on the premises. Behavior, which would have alerted the Defendant, Wyndham Hotels & Resorts, Inc., to the sex trafficking of the Plaintiff to which the Plaintiff was a victim. Behavior including, but not limited to, loud noises and sounds of distress coming from rooms and areas in the hotel and/or property, the odor of drugs emanating from rooms and areas in the hotel and/or property, discarded drug paraphernalia, non-guests entering and exiting rooms in the hotel and/or property, the repeated renting of specific rooms in the hotel and/ or on the property, and the apparent purchasing of sex acts in the hotel and/or on the property;

f. Failure to properly advise law enforcement of suspicious behavior on the premises which would have alerted the Defendant, Wyndham Hotels & Resorts, Inc., to the sex trafficking of the Plaintiff to which she was a victim. Behavior, including, but

not limited to, loud noises and sounds of distress coming from rooms and areas in the hotel and/or property, the odor of drugs emanating from rooms and areas in the hotel and/or property, discarded drug paraphernalia, non-guests entering and exiting rooms in the hotel and/or property, the repeated renting of specific rooms in the hotel and/or presence on the property, and the apparent purchasing of sex acts in the hotel and/or on the property;

g. Failure to adequately respond to, and investigate, guest complaints regarding suspicious behavior at the hotel and/or on the property, which would have resulted in the discovery of sex trafficking of the Plaintiff to which she was a victim;

h. Failure to adequately respond to and investigate each of the above articulated issues, which would have stopped the ongoing victimization of the Plaintiff;

i. Accepting "hush money" and allowing the Plaintiff's traffickers to have isolated rooms to conceal the trafficking of the Plaintiff; and

j. Being otherwise careless and negligent.

469. As a direct and proximate result of the aforementioned negligent acts, omissions, and/or commissions by the Defendant, Wyndham Hotels & Resorts, Inc., the Plaintiff was kidnapped, repeatedly and consistently assaulted both physically and sexually, verbally abused, held against her will, regularly exploited, and were otherwise irreparably injured, both physically and psychologically. Said acts were repeatedly perpetrated at the Defendant, Wyndham Hotels & Resorts, Inc.'s hotels and properties and the Defendant had actual or constructive knowledge that these acts, as well as other similar criminal acts, were taking place, and that a dangerous condition existed on the premises, and the Defendant had sufficient time to remove the dangerous condition, investigate the suspicious activity, and/or alert law enforcement of the suspicious activity. The

imminent harm described above, as well as the Plaintiff's injuries, were a foreseeable and preventable result of the Defendant, Wyndham Hotels & Resorts, Inc.'s negligence.

470. The Plaintiff has suffered, and/or will continue to suffer, from injuries, including but not limited to, past and future conscious physical pain and mental anguish, past and future pain and suffering, and economic loss, past, present and future, as a direct and proximate result of the Defendant, and/or its actual and/or apparent agents, servants, and/or employees', negligent acts, omissions, and/or commissions. By ignoring indicia of guest misconduct, the Defendant, Wyndham Hotels & Resorts, Inc., facilitated such an environment of disorder and violence that the injuries sustained by the Plaintiff.

471. Additionally, the Plaintiff has suffered, and continues to suffer, from damages, including but not limited to, a lifetime loss of earnings, a diminution in earning capacity and/or medical expenses past and future, including the expenses that in reasonable probability will be incurred in the future, as a direct and proximate cause of the Defendant's, and/or its actual and/or apparent agents, servants, and/or employees', negligent acts, omissions, and/or commissions.

472. Furthermore, the Plaintiff has suffered, and continues to suffer, from injuries, including but not limited to, a loss of expected enjoyment of life and a permanent alteration of reasonable pre-injury life expectations.

473. The Plaintiff avers that all damages, past, present, and future, were a direct and proximate result of the negligent acts, omissions, and/or commissions of the Defendant, Wyndham Hotels & Resorts, Inc., and/or its actual and/or apparent agents, servants, and/or employees, without any negligence or want of due care on the part of the Plaintiff contributing thereto.

**COUNT FOURTEEN**
**VICARIOUS LIABILITY**
**(Against the Defendant, Wyndham Hotels & Resorts, Inc.)**

474. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

475. At all relevant times, the Defendant, Wyndham Hotels & Resorts, Inc., supervised and/or operated the Days Inn located at 1116 Washington Street in Attleboro, Massachusetts as well as the Howard Johnson by Wyndham – Quincy/Boston located at 845 Hancock Street in Quincy, Massachusetts, two hotels where the Plaintiff was trafficked for sex.

476. At all relevant times, the Defendant, Wyndham Hotels & Resorts, Inc., was aware that human trafficking was occurring at its local hotels, including but not limited to the Days Inn located at 1116 Washington Street in Attleboro, Massachusetts as well as the Howard Johnson by Wyndham – Quincy/Boston located at 845 Hancock Street in Quincy, Massachusetts, two hotels where the Plaintiff was trafficked for sex.

477. The Defendant, Wyndham Hotels & Resorts, Inc., failed to develop effective policies and/or failed to implement and enforce effective policies, policies which would have protected the Plaintiff from being trafficked for sex.

478. Despite having actual and/or constructive knowledge of the extensive prostitution and sex trafficking that occurs at its hotels, including the Days Inn located at 1116 Washington Street in Attleboro, Massachusetts as well as the Howard Johnson by Wyndham – Quincy/Boston located at 845 Hancock Street in Quincy, Massachusetts, two hotels where the Plaintiff was trafficked for sex, Wyndham Hotels & Resorts, Inc. has repeatedly failed to prevent or adequately address commercial sex trafficking at its hotels, and particularly the trafficking of the Plaintiff.

479. Upon information and belief, the Defendant, Wyndham Hotels & Resorts, Inc., exercises actual control over its franchisees and subsidiaries, including the Days Inn located at 1116 Washington Street in Attleboro, Massachusetts as well as the Howard Johnson by Wyndham

– Quincy/Boston located at 845 Hancock Street in Quincy, Massachusetts, two hotels where the Plaintiff was trafficked for sex, through control over brand standards.

480. Upon information and belief, the Defendant, Wyndham Hotels & Resorts, Inc., exerts dominion and control over its franchises and has control over the day-to-day operations in a number of areas, beyond that which is necessary to maintain brand standards.

481. Upon information and belief, the Defendant, Wyndham Hotels & Resorts, Inc., has control over the existence of the franchisor-franchisee relationship and has the ability to terminate the franchisee.

482. At all relevant times, the Days Inn located at 1116 Washington Street in Attleboro, Massachusetts as well as the Howard Johnson by Wyndham – Quincy/Boston located at 845 Hancock Street in Quincy, Massachusetts, two hotels where the Plaintiff was trafficked was the actual and apparent agent of Wyndham Hotels & Resorts, Inc., and together they offer, or offered, public lodging services in the hotel. The agency relationship was created through the Defendant, Wyndham Hotels & Resorts, Inc.'s exercise of an ongoing and systematic right of control over its branded hotels.

483. The Defendant, Wyndham Hotels & Resorts, Inc., accepted profits from the Plaintiff's traffickers even though the signs of her trafficking were open and obvious.

484. The Defendant, Wyndham Hotels & Resorts, Inc., knew or should have known that such profits were derived from sex traffickers' illegal and tortious activities.

**COUNT FIFTEEN**
**UNJUST ENRICHMENT**
**(Against the Defendant, Wyndham Hotels & Resorts, Inc.)**

485. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

486. As a result of the trafficking and sexual exploitation of the Plaintiff, the Defendant, Wyndham Hotels & Resorts, Inc., unjustly financially benefitted, and enriched themselves at the Plaintiff's expense by their acts, omissions, and commissions including, but not limited to:

a. Profit from renting rooms to those looking to sexually exploit the Plaintiff;

b. Increased profit margins due to lower operation costs by refusing to implement proper training of Defendant, Wyndham Hotels & Resorts, Inc.'s employees and managers regarding the identification of human trafficking and sexual exploitation;

c. Increased profit margins due to lower operation costs by refusing to install proper security devices in the lobby, hallways, and parking lots of the Defendant, Wyndham Hotels & Resorts, Inc.'s hotels and properties that would help (a) deter human trafficking and sexual exploitation and (b) be used to identify the occurrence of human trafficking and sexual exploitation and alert the proper authorities and/or intervene in an appropriate way;

d. Increased profit margins due to lower operating costs by failing and/or refusing to install adequate lighting and security cameras to monitor ingress and egress of human traffickers and visitors looking to purchase sex at the Defendant, Wyndham Hotels & Resorts, Inc.'s hotels and properties;

e. Increased profit margins due to lower operating costs by failing and/or refusing to hire qualified security officers who would actively combat human trafficking and sexual exploitation;

f. Increased profit margins due to lower operating costs by failing and/or refusing to implement proper security measures to prevent and identify human trafficking

and sexual exploitation at the Defendant, Wyndham Hotels & Resorts, Inc.'s hotels and property;

g. Increased profit margins as a result of the continued customer loyalty of traffickers and buyers of commercial sex. These traffickers and buyers sought to exploit individuals, like the Plaintiff, due to the Defendant, Wyndham Hotels & Resorts, Inc.'s lack of measures against sexual exploitation and human trafficking. This customer loyalty led to continued alcohol, food, and room sales;

h. Benefit of avoiding interference by law enforcement officials and spending the time to address and properly solve any incidence or pattern of human trafficking or sexual exploitation at the Defendant, Wyndham Hotels & Resorts, Inc.'s hotel or property. This prevented the Defendant from having to spend the time and money to fill out all proper and necessary law enforcement reports and information, respond to proper and necessary subpoena requests, and cooperate with any inquiry and needs of the prosecution; and

i. Increased profit margins by knowingly catering to the needs of a criminal subculture that is looking for locations that will not actively enforce laws against human trafficking and sexual exploitation or take active security measures to prevent human trafficking or sexual exploitation on their property.

487. These benefits were conferred onto the Defendant, with their knowledge of the trafficking and/or sexual exploitation of the Plaintiff and others like her. The Defendant, Wyndham Hotels & Resorts, Inc., accepted and retained these benefits under circumstances that make it inequitable for them to retain them without paying their value.

488. The Plaintiff avers that all damages, past, present, and future, were a direct and proximate result of the negligent acts, omissions, and/or commissions of the Defendant, Wyndham Hotels & Resorts, Inc., and/or its actual and/or apparent agents, servants, and/or employees, without any negligence or want of due care on the part of the Plaintiff contributing thereto.

489. The Defendant, Wyndham Hotels & Resorts, Inc., knowingly benefited financially from participating in illegal sex trafficking ventures in violation of the TVPRA, 18 U.S.C. § 1591(a)(2), by, *inter alia*, engaging in acts and omissions that are intended to support, facilitate, and further traffickers' transportation and sale of victims for commercial sexual exploitation. Defendant, Wyndham Hotels & Resorts, Inc., knew that their repeated failures to address known risks of human trafficking on their hotel properties would increase the overall volume of illegal commercial sex at their hotel properties. Defendant, Wyndham Hotels & Resorts, Inc., knowingly benefited from facilitating the trafficking of persons on their hotel properties.

490. Defendant, Wyndham Hotels & Resorts, Inc., knowingly benefited financially from the presence of traffickers at their hotel properties by consistently renting rooms to traffickers who repeatedly sold the Plaintiff for sex at Defendant's hotel properties and accordingly, participated in the trafficking ventures that exploited her by the various means described herein.

491. The Plaintiff has suffered substantial sexual, physical, emotional, psychological and economic injuries, and other damages as a result of being trafficked at Defendant's hotel properties. She continues to live in fear of her traffickers.

**COUNT SIXTEEN**
**VIOLATION OF THE TVPRA, 18 U.S.C §1595**
**(Against the Defendant, Marriott International, Inc.)**

492. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

493. The Plaintiff is a survivor of sex trafficking within the meaning of 18 U.S.C. § 1591 and is entitled to bring a civil action under 18 U.S.C. § 1595 against any individual or entity whose violations of the TVPRA proximately caused the Plaintiff to sustain physical and psychological injuries.

494. The Defendant, Marriott International, Inc., knowingly benefited financially from participating in illegal sex trafficking ventures in violation of the TVPRA, 18 U.S.C. § 1591(a)(2), by, *inter alia*, engaging in acts and omissions that are intended to support, facilitate, and further traffickers' transportation and sale of victims for commercial sexual exploitation. Defendant, Marriott International, Inc., knew that their repeated failures to address known risks of human trafficking on their hotel properties would increase the overall volume of illegal commercial sex at their hotel properties. Defendant, Marriott International, Inc., knowingly benefited from facilitating the trafficking of persons on their hotel properties.

495. Defendant, Marriott International, Inc., knowingly benefited financially from the presence of traffickers at their hotel properties by consistently renting rooms to traffickers who repeatedly sold the Plaintiff for sex at Defendant's hotel properties and accordingly, participated in the trafficking ventures that exploited her by the various means described herein.

496. The Plaintiff has suffered substantial sexual, physical, emotional, psychological and economic injuries, and other damages as a result of being trafficked at Defendant's hotel properties. She continues to live in fear of her traffickers.

**COUNT SEVENTEEN**
**NEGLIGENCE**
**(Against the Defendant, Marriott International, Inc.)**

497. The Plaintiff adopts and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

498. The Defendant, Marriott International, Inc., had a duty to use reasonable care to select, train, supervise, and retain its employees working at the hotels on their properties, including but not limited to, proper training and or supervision relating to the observation, investigation, and reporting of signs of guest misconduct, including, but not limited to, human trafficking and sexual exploitation.

499. The Defendant, Marriott International, Inc., had a duty to use reasonable care to ensure the safety and security of guests at their hotels, including the Plaintiff.

500. At the time of the incidents alleged herein, the Defendant, Marriott International, Inc., employed staff to operate their hotels and properties, including, but not limited to, front desk clerks, night auditors, housekeeping staff, and/or maintenance workers. Throughout this time period, as outlined above, the Defendant, Marriott International, Inc., and/or their actual and/or apparent agents, servants, and/or employees, repeatedly failed to observe and/or report signs of guest misconduct at their hotels and/or properties, including, but not limited to, signs of human trafficking and/or sexual exploitation taking place on the premises. Furthermore, upon information and belief, the Defendant, Marriott International, Inc., and/or its actual and/or apparent agents, servants, and/or employees', repeatedly failed to warn their customers, including the Plaintiff, of said trafficking.

501. Additionally, prior to the incidents alleged herein, the Defendant, Marriott International, Inc., failed to properly train their employees regarding security and the detection of guest misconduct in their hotels and on their properties, including, but not limited to, signs of human trafficking and sexual exploitation.

502. The Defendant, Marriott International, Inc., breached this duty of care by acts, omissions, and commissions including, but not limited to:

a. Failure to adequately train, supervise, and retain employees to ensure proper monitoring of surveillance cameras at their hotels and properties for signs of human trafficking and/or sexual exploitation;

b. Failure to adequately train, supervise, and retain employees to ensure proper monitoring of the number of guests in each room of their hotels, and non-guest visitors in their hotels or on their properties;

c. Failure to provide and/or train adequate security in their hotels and/or on their properties with the knowledge that said premises had a history of trafficking;

d. Failure to adequately train, supervise, and retain employees, to ensure proper monitoring of their hotels for signs of dangerous conditions including, but not limited to, human trafficking, sexual exploitation, and rape, by ignoring the following conditions:

   i. The repeated refusal of maid service;

   ii. The number and frequency of visitors entering and exiting the hotel and/or property;

   iii. Guests present in any particular room in excess of the rooms capacity;

   iv. Signs of the repeated verbal abuse, physical abuse, restraint and/or confinement of an individual by another;

   v. Signs of control over an individual and/or an individual’s personal property by another, including, but not limited to, identification documents;

vi. Signs of deprivation including, but not limited to, diminished personal hygiene, lack of luggage, malnourishment, submissiveness, and inappropriate attire;

vii. The repeated acceptance of “hush money” by employees, paid to not disclose Plaintiff’s sex trafficking; and

viii. The repeated renting of specific rooms in the hotel and/or presence on the property.

e. Failure to adequately train, supervise, and retain employees, to ensure proper monitoring of their hotels and their properties for signs of suspicious behavior on the premises, which would have alerted the Defendant, Marriott International, Inc., to the sex trafficking of the Plaintiff, including, but not limited to loud noises and signs and sounds of distress coming from rooms and areas in the hotel and/or on the property, the odor of drugs emanating from rooms and areas in the hotel and/or on the property, discarded drug paraphernalia, non-guests entering and exiting rooms in the hotel and/or on the property, the repeated renting of specific rooms in the hotel and/or presence on the property, and the apparent purchasing of sex acts in the hotel and/or on the property;

f. Failure to adequately train, supervise, and retain its actual and/or apparent agents, servants and/or employees, including, but not limited to, training to ensure the investigation of suspicious behavior at their hotel and/or properties which would have alerted the Defendant, Marriott International, Inc., to the sex trafficking of the Plaintiff;

g. Failure to adequately train, supervise, and retain its actual and/or apparent agents, servants and/or employees, including, but not limited to, training to ensure proper reporting to law enforcement of signs of guest misconduct at their hotels and/or on their properties, including, but not limited to human trafficking and sexual exploitation;

h. Failure to adequately train, supervise, and retain its actual and/or apparent agents, servants and/or employees, including, but not limited to, training to ensure a timely response and investigation into guest complaints regarding suspicious behavior at their hotels and/or on their properties, which would have resulted in their discovery of the sex trafficking of the Plaintiff;

i. Failure to provide adequate security and take reasonable steps to protect the Plaintiff;

j. Accepting "hush money" and allowing the Plaintiff's traffickers to have isolated rooms to conceal the trafficking of the Plaintiff; and

k. Being otherwise careless and negligent.

503. As a direct and proximate result of the aforementioned negligent acts, omissions, and/or commissions by the Defendant, Marriott International, Inc., the Plaintiff was repeatedly and consistently assaulted both physically and sexually, verbally abused, held against her will, regularly exploited, and was otherwise irreparably injured, both physically and psychologically. Said acts were repeatedly perpetrated at the Defendant, Marriott International, Inc.'s hotels and properties and the Defendant failed to prevent against such horrible acts. The imminent harm described above, as well as the Plaintiff's injuries, were a foreseeable and preventable result of the Defendant, Marriott International, Inc.'s negligence and their failure to adequately train and

supervise their employees and to provide adequate security and take reasonable steps to protect the Plaintiff.

504. The Plaintiff has suffered, and/or will continue to suffer, from injuries, including, but not limited to, past and future conscious physical pain and mental anguish, past and future pain and suffering, and economic loss, past, present and future, as a direct and proximate result of the Defendant, Marriott International, Inc.'s failure to adequately train, supervise, and retain their employees to adequately recognize and investigate indicia of guest misconduct. The Defendant, Marriott International, Inc.'s failure to adequately train, supervise, and retain their employees facilitated such an environment of disorder and violence that the injuries sustained by the Plaintiff was foreseeable and imminent, especially given the multiple police incidents and reviews on-line.

505. Additionally, the Plaintiff has suffered, and continues to suffer, from damages, including but not limited to, a lifetime loss of earnings, a diminution in earning capacity and/or medical expenses past and future, including the expenses that in reasonable probability will be incurred in the future, as a direct and proximate cause of the Defendant, Marriott International, Inc.'s, and/or their actual and/or apparent agents, servants, and/or employees', negligent acts, omissions, and/or commissions.

506. Furthermore, the Plaintiff has suffered, and continues to suffer, from injuries, including but not limited to, a loss of expected enjoyment of life and a permanent alteration of reasonable pre-injury life expectations.

507. The Plaintiff avers that all damages, past, present, and future, were a direct and proximate result of the negligent acts, omissions, and/or commissions of the Defendant and/or its actual and/or apparent agents, servants, and/or employees', without any negligence or want of due care on the part of the Plaintiff contributing thereto.

**COUNT EIGHTEEN**
**NEGLIGENCE - PREMISES LIABILITY**
**(Against the Defendant, Marriott International, Inc.)**

508. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

509. The Defendant, Marriott International, Inc., and their actual and/or apparent agents, servants and/or employees, owed to the Plaintiff a duty to use reasonable and ordinary care to keep their hotels and properties safe, and to protect the Plaintiff from injury caused by an unreasonable risk of danger in their hotel and/or on their property.

510. Upon information and belief, prior to and during the incidents alleged herein, as outlined above, the Defendant, Marriott International, Inc., had actual and/or constructive notice of a dangerous condition in their hotels and on their properties, including but not limited to, human trafficking and sexual exploitation of the Plaintiff.

511. In addition to the Defendant, Marriott International, Inc.'s actual and /or constructive notice, especially given the multiple arrests at each Defendant's property and on-line reviews associated with Defendant, the Defendant's negligent acts, omissions, and/or commissions created a dangerous condition at their hotel and on their property, to wit, a hotel and property with inadequate security that fostered an environment which encouraged human trafficking and sexual exploitation.

512. The Defendant, Marriott International, Inc., breached this duty of care by acts, omissions, and commissions including, but not limited to:

a. Failure to properly monitor surveillance cameras in the hotel and/or on the property for signs of human trafficking and/or sexual exploitation in the hotel and/or on the property;

b. Failure to properly monitor the number of guests in the rooms of the hotel and/or on the property;

c. Failure to provide adequate security in the hotel and/or on the property with the knowledge that said premises had a history of sex trafficking;

d. Failure to properly monitor the hotel and/or property for signs of dangerous conditions, including, but not limited to, human trafficking, false imprisonment, rape, and sexual exploitation, by ignoring the following conditions:

i. The repeated refusal of maid service;

ii. The number and frequency of visitors entering and exiting the hotel and/or property;

iii. The number of guests present in any particular room as compared to the room's capacity;

iv. Signs of the repeated verbal abuse, physical abuse, restraint and/or confinement of an individual by another;

v. Signs of control over an individual and/or an individual's personal property by another, including, but not limited to, identification documents;

vi. Signs of deprivation including, but not limited to, diminished personal hygiene, lack of luggage, malnourishment, submissiveness, and inappropriate attire; and

vii. The repeated renting of specific rooms in their hotels in isolated areas to assist in concealing the trafficking of Plaintiff.

e. Failure to properly monitor and investigate the hotel and property for signs of suspicious behavior on the premises. Behavior, which would have alerted the Defendant, Marriott International, Inc., to the sex trafficking of the Plaintiff to which the Plaintiff was a victim. Behavior including, but not limited to, loud noises and sounds of distress coming from rooms and areas in the hotel and/or property, the odor of drugs emanating from rooms and areas in the hotel and/or property, discarded drug paraphernalia, non-guests entering and exiting rooms in the hotel and/or property, the repeated renting of specific rooms in the hotel and/ or on the property, and the apparent purchasing of sex acts in the hotel and/or on the property;

f. Failure to properly advise law enforcement of suspicious behavior on the premises which would have alerted the Defendant, Marriott International, Inc., to the sex trafficking of the Plaintiff to which she was a victim. Behavior, including, but not limited to, loud noises and sounds of distress coming from rooms and areas in the hotel and/or property, the odor of drugs emanating from rooms and areas in the hotel and/or property, discarded drug paraphernalia, non-guests entering and exiting rooms in the hotel and/or property, the repeated renting of specific rooms in the hotel and/or presence on the property, and the apparent purchasing of sex acts in the hotel and/or on the property;

g. Failure to adequately respond to, and investigate, guest complaints regarding suspicious behavior at the hotel and/or on the property, which would have resulted in the discovery of sex trafficking of the Plaintiff to which she was a victim;

h. Failure to adequately respond to and investigate each of the above articulated issues, which would have stopped the ongoing victimization of the Plaintiff;

i. Accepting "hush money" and allowing the Plaintiff's traffickers to have isolated rooms to conceal the trafficking of the Plaintiff; and

j. Being otherwise careless and negligent.

513. As a direct and proximate result of the aforementioned negligent acts, omissions, and/or commissions by the Defendant, Marriott International, Inc., the Plaintiff was kidnapped, repeatedly and consistently assaulted both physically and sexually, verbally abused, held against her will, regularly exploited, and were otherwise irreparably injured, both physically and psychologically. Said acts were repeatedly perpetrated at the Defendant, Marriott International, Inc.'s hotels and properties and the Defendant had actual or constructive knowledge that these acts, as well as other similar criminal acts, were taking place, and that a dangerous condition existed on the premises, and the Defendant had sufficient time to remove the dangerous condition, investigate the suspicious activity, and/or alert law enforcement of the suspicious activity. The imminent harm described above, as well as the Plaintiff's injuries, were a foreseeable and preventable result of the Defendant, Marriott International, Inc.'s negligence.

514. The Plaintiff has suffered, and/or will continue to suffer, from injuries, including but not limited to, past and future conscious physical pain and mental anguish, past and future pain and suffering, and economic loss, past, present and future, as a direct and proximate result of the Defendant, and/or its actual and/or apparent agents, servants, and/or employees', negligent acts, omissions, and/or commissions. By ignoring indicia of guest misconduct, the Defendant, Marriott International, Inc., facilitated such an environment of disorder and violence that the injuries sustained by the Plaintiff.

515. Additionally, the Plaintiff has suffered, and continues to suffer, from damages, including but not limited to, a lifetime loss of earnings, a diminution in earning capacity and/or medical expenses past and future, including the expenses that in reasonable probability will be incurred in the future, as a direct and proximate cause of the Defendant's, and/or its actual and/or apparent agents, servants, and/or employees', negligent acts, omissions, and/or commissions.

516. Furthermore, the Plaintiff has suffered, and continues to suffer, from injuries, including but not limited to, a loss of expected enjoyment of life and a permanent alteration of reasonable pre-injury life expectations.

517. The Plaintiff avers that all damages, past, present, and future, were a direct and proximate result of the negligent acts, omissions, and/or commissions of the Defendant, Marriott International, Inc., and/or its actual and/or apparent agents, servants, and/or employees, without any negligence or want of due care on the part of the Plaintiff contributing thereto.

**COUNT NINETEEN**
**VICARIOUS LIABILITY**
**(Against the Defendant, Marriott International, Inc.)**

518. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

519. At all relevant times, the Defendant, Marriott International, Inc., supervised and/or operated the Fairfield Inn where the Plaintiff was trafficked for sex.

520. At all relevant times, the Defendant, Marriott International, Inc., was aware that human trafficking was occurring at its local hotels, including but not limited to the Fairfield Inn where the Plaintiff was trafficked for sex.

521. The Defendant, Marriott International, Inc., failed to develop effective policies and/or failed to implement and enforce effective policies, policies which would have protected the Plaintiff from being trafficked for sex.

522. Despite having actual and/or constructive knowledge of the extensive prostitution and sex trafficking that occurs at its hotels, including the Fairfield Inn where the Plaintiff was trafficked for sex, Marriott International, Inc. has repeatedly failed to prevent or adequately address commercial sex trafficking at its hotels, and particularly the trafficking of the Plaintiff.

523. Upon information and belief, the Defendant, Marriott International, Inc., exercises actual control over its franchisees and subsidiaries, including the Fairfield Inn where the Plaintiff was trafficked for sex, through control over brand standards.

524. Upon information and belief, the Defendant, Marriott International, Inc., exerts dominion and control over its franchises and has control over the day-to-day operations in a number of areas, beyond that which is necessary to maintain brand standards.

525. Upon information and belief, the Defendant, Marriott International, Inc., has control over the existence of the franchisor-franchisee relationship and has the ability to terminate the franchisee.

526. At all relevant times, the Fairfield Inn where the Plaintiff was trafficked was the actual and apparent agent of Marriott International, Inc., and together they offer, or offered, public lodging services in the hotel. The agency relationship was created through the Defendant, Marriott International, Inc.'s exercise of an ongoing and systematic right of control over its branded hotels.

527. The Defendant, Marriott International, Inc., accepted profits from the Plaintiff's traffickers even though the signs of her trafficking were open and obvious.

528. The Defendant, Marriott International, Inc., knew or should have known that such profits were derived from sex traffickers' illegal and tortious activities.

**COUNT TWENTY**
**UNJUST ENRICHMENT**
**(Against the Defendant, Marriott International, Inc.)**

529. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

530. As a result of the trafficking and sexual exploitation of the Plaintiff, the Defendant, Marriott International, Inc., unjustly financially benefitted, and enriched themselves at the Plaintiff's expense by their acts, omissions, and commissions including, but not limited to:

a. Profit from renting rooms to those looking to sexually exploit the Plaintiff;

b. Increased profit margins due to lower operation costs by refusing to implement proper training of Defendant, Marriott International, Inc.'s employees and managers regarding the identification of human trafficking and sexual exploitation;

c. Increased profit margins due to lower operation costs by refusing to install proper security devices in the lobby, hallways, and parking lots of the Defendant, Marriott International, Inc.'s hotels and properties that would help (a) deter human trafficking and sexual exploitation and (b) be used to identify the occurrence of human trafficking and sexual exploitation and alert the proper authorities and/or intervene in an appropriate way;

d. Increased profit margins due to lower operating costs by failing and/or refusing to install adequate lighting and security cameras to monitor ingress and egress of

human traffickers and visitors looking to purchase sex at the Defendant, Marriott International, Inc.'s hotels and properties;

e. Increased profit margins due to lower operating costs by failing and/or refusing to hire qualified security officers who would actively combat human trafficking and sexual exploitation;

f. Increased profit margins due to lower operating costs by failing and/or refusing to implement proper security measures to prevent and identify human trafficking and sexual exploitation at the Defendant, Marriott International, Inc.'s hotels and property;

g. Increased profit margins as a result of the continued customer loyalty of traffickers and buyers of commercial sex. These traffickers and buyers sought to exploit individuals, like the Plaintiff, due to the Defendant, Marriott International, Inc.'s lack of measures against sexual exploitation and human trafficking. This customer loyalty led to continued alcohol, food, and room sales;

h. Benefit of avoiding interference by law enforcement officials and spending the time to address and properly solve any incidence or pattern of human trafficking or sexual exploitation at the Defendant, Marriott International, Inc.'s hotel or property. This prevented the Defendant from having to spend the time and money to fill out all proper and necessary law enforcement reports and information, respond to proper and necessary subpoena requests, and cooperate with any inquiry and needs of the prosecution; and

i. Increased profit margins by knowingly catering to the needs of a criminal subculture that is looking for locations that will not actively enforce laws against

human trafficking and sexual exploitation or take active security measures to prevent human trafficking or sexual exploitation on their property.

531. These benefits were conferred onto the Defendant, with their knowledge of the trafficking and/or sexual exploitation of the Plaintiff and others like her. The Defendant, Marriott International, Inc., accepted and retained these benefits under circumstances that make it inequitable for them to retain them without paying their value.

532. The Plaintiff avers that all damages, past, present, and future, were a direct and proximate result of the negligent acts, omissions, and/or commissions of the Defendant, Marriott International, Inc., and/or its actual and/or apparent agents, servants, and/or employees, without any negligence or want of due care on the part of the Plaintiff contributing thereto.

533. The Defendant, Marriott International, Inc., knowingly benefited financially from participating in illegal sex trafficking ventures in violation of the TVPRA, 18 U.S.C. § 1591(a)(2), by, *inter alia*, engaging in acts and omissions that are intended to support, facilitate, and further traffickers' transportation and sale of victims for commercial sexual exploitation. Defendant, Marriott International, Inc., knew that their repeated failures to address known risks of human trafficking on their hotel properties would increase the overall volume of illegal commercial sex at their hotel properties. Defendant, Marriott International, Inc., knowingly benefited from facilitating the trafficking of persons on their hotel properties.

534. Defendant, Marriott International, Inc., knowingly benefited financially from the presence of traffickers at their hotel properties by consistently renting rooms to traffickers who repeatedly sold the Plaintiff for sex at Defendant's hotel properties and accordingly, participated in the trafficking ventures that exploited her by the various means described herein.

535. The Plaintiff has suffered substantial sexual, physical, emotional, psychological and economic injuries, and other damages as a result of being trafficked at Defendant's hotel properties. She continues to live in fear of her traffickers.

**COUNT TWENTY-ONE**
**VIOLATION OF THE TVPRA, 18 U.S.C §1595**
**(Against the Defendant, IHG Franchising LLC)**

536. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

537. The Plaintiff is a survivor of sex trafficking within the meaning of 18 U.S.C. § 1591 and is entitled to bring a civil action under 18 U.S.C. § 1595 against any individual or entity whose violations of the TVPRA proximately caused the Plaintiff to sustain physical and psychological injuries.

538. The Defendant, IHG Franchising LLC, knowingly benefited financially from participating in illegal sex trafficking ventures in violation of the TVPRA, 18 U.S.C. § 1591(a)(2), by, *inter alia*, engaging in acts and omissions that are intended to support, facilitate, and further traffickers' transportation and sale of victims for commercial sexual exploitation. Defendant, IHG Franchising LLC, knew that their repeated failures to address known risks of human trafficking on their hotel properties would increase the overall volume of illegal commercial sex at their hotel properties. Defendant, IHG Franchising LLC, knowingly benefited from facilitating the trafficking of persons on their hotel properties.

539. Defendant, IHG Franchising LLC, knowingly benefited financially from the presence of traffickers at their hotel properties by consistently renting rooms to traffickers who repeatedly sold the Plaintiff for sex at Defendant's hotel properties and accordingly, participated in the trafficking ventures that exploited her by the various means described herein.

540. The Plaintiff has suffered substantial sexual, physical, emotional, psychological and economic injuries, and other damages as a result of being trafficked at Defendant's hotel properties. She continues to live in fear of her traffickers.

**COUNT TWENTY-TWO**
**NEGLIGENCE**
**(Against the Defendant, IHG Franchising LLC)**

541. The Plaintiff adopts and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

542. The Defendant, IHG Franchising LLC, had a duty to use reasonable care to select, train, supervise, and retain its employees working at the hotels on their properties, including but not limited to, proper training and or supervision relating to the observation, investigation, and reporting of signs of guest misconduct, including, but not limited to, human trafficking and sexual exploitation.

543. The Defendant, IHG Franchising LLC, had a duty to use reasonable care to ensure the safety and security of guests at their hotels, including the Plaintiff.

544. At the time of the incidents alleged herein, the Defendant, IHG Franchising LLC, employed staff to operate their hotels and properties, including, but not limited to, front desk clerks, night auditors, housekeeping staff, and/or maintenance workers. Throughout this time period, as outlined above, the Defendant, IHG Franchising LLC, and/or their actual and/or apparent agents, servants, and/or employees, repeatedly failed to observe and/or report signs of guest misconduct at their hotels and/or properties, including, but not limited to, signs of human trafficking and/or sexual exploitation taking place on the premises. Furthermore, upon information and belief, the Defendant, IHG Franchising LLC, and/or its actual and/or apparent agents, servants,

and/or employees', repeatedly failed to warn their customers, including the Plaintiff, of said trafficking.

545. Additionally, prior to the incidents alleged herein, the Defendant, IHG Franchising LLC, failed to properly train their employees regarding security and the detection of guest misconduct in their hotels and on their properties, including, but not limited to, signs of human trafficking and sexual exploitation.

546. The Defendant, IHG Franchising LLC, breached this duty of care by acts, omissions, and commissions including, but not limited to:

a. Failure to adequately train, supervise, and retain employees to ensure proper monitoring of surveillance cameras at their hotels and properties for signs of human trafficking and/or sexual exploitation;

b. Failure to adequately train, supervise, and retain employees to ensure proper monitoring of the number of guests in each room of their hotels, and non-guest visitors in their hotels or on their properties;

c. Failure to provide and/or train adequate security in their hotels and/or on their properties with the knowledge that said premises had a history of trafficking;

d. Failure to adequately train, supervise, and retain employees, to ensure proper monitoring of their hotels for signs of dangerous conditions including, but not limited to, human trafficking, sexual exploitation, and rape, by ignoring the following conditions:

    i. The repeated refusal of maid service;

    ii. The number and frequency of visitors entering and exiting the hotel and/or property;

iii. Guests present in any particular room in excess of the rooms capacity;

iv. Signs of the repeated verbal abuse, physical abuse, restraint and/or confinement of an individual by another;

v. Signs of control over an individual and/or an individual's personal property by another, including, but not limited to, identification documents;

vi. Signs of deprivation including, but not limited to, diminished personal hygiene, lack of luggage, malnourishment, submissiveness, and inappropriate attire;

vii. The repeated acceptance of "hush money" by employees, paid to not disclose Plaintiff's sex trafficking; and

viii. The repeated renting of specific rooms in the hotel and/or presence on the property.

e. Failure to adequately train, supervise, and retain employees, to ensure proper monitoring of their hotels and their properties for signs of suspicious behavior on the premises, which would have alerted the Defendant, IHG Franchising LLC, to the sex trafficking of the Plaintiff, including, but not limited to loud noises and signs and sounds of distress coming from rooms and areas in the hotel and/or on the property, the odor of drugs emanating from rooms and areas in the hotel and/or on the property, discarded drug paraphernalia, non-guests entering and exiting rooms in the hotel and/or on the property, the repeated renting of specific

rooms in the hotel and/or presence on the property, and the apparent purchasing of sex acts in the hotel and/or on the property;

f. Failure to adequately train, supervise, and retain its actual and/or apparent agents, servants and/or employees, including, but not limited to, training to ensure the investigation of suspicious behavior at their hotel and/or properties which would have alerted the Defendant, IHG Franchising LLC, to the sex trafficking of the Plaintiff;

g. Failure to adequately train, supervise, and retain its actual and/or apparent agents, servants and/or employees, including, but not limited to, training to ensure proper reporting to law enforcement of signs of guest misconduct at their hotels and/or on their properties, including, but not limited to human trafficking and sexual exploitation;

h. Failure to adequately train, supervise, and retain its actual and/or apparent agents, servants and/or employees, including, but not limited to, training to ensure a timely response and investigation into guest complaints regarding suspicious behavior at their hotels and/or on their properties, which would have resulted in their discovery of the sex trafficking of the Plaintiff;

i. Failure to provide adequate security and take reasonable steps to protect the Plaintiff;

j. Accepting "hush money" and allowing the Plaintiff's traffickers to have isolated rooms to conceal the trafficking of the Plaintiff; and

k. Being otherwise careless and negligent.

547. As a direct and proximate result of the aforementioned negligent acts, omissions, and/or commissions by the Defendant, IHG Franchising LLC, the Plaintiff was repeatedly and consistently assaulted both physically and sexually, verbally abused, held against her will, regularly exploited, and was otherwise irreparably injured, both physically and psychologically. Said acts were repeatedly perpetrated at the Defendant, IHG Franchising LLC's hotels and properties and the Defendant failed to prevent against such horrible acts. The imminent harm described above, as well as the Plaintiff's injuries, were a foreseeable and preventable result of the Defendant, IHG Franchising LLC's negligence and their failure to adequately train and supervise their employees and to provide adequate security and take reasonable steps to protect the Plaintiff.

548. The Plaintiff has suffered, and/or will continue to suffer, from injuries, including, but not limited to, past and future conscious physical pain and mental anguish, past and future pain and suffering, and economic loss, past, present and future, as a direct and proximate result of the Defendant, IHG Franchising's failure to adequately train, supervise, and retain their employees to adequately recognize and investigate indicia of guest misconduct. The Defendant, IHG Franchising LLC's failure to adequately train, supervise, and retain their employees facilitated such an environment of disorder and violence that the injuries sustained by the Plaintiff was foreseeable and imminent, especially given the multiple police incidents and reviews on-line.

549. Additionally, the Plaintiff has suffered, and continues to suffer, from damages, including but not limited to, a lifetime loss of earnings, a diminution in earning capacity and/or medical expenses past and future, including the expenses that in reasonable probability will be incurred in the future, as a direct and proximate cause of the Defendant, IHG Franchising LLC's, and/or their actual and/or apparent agents, servants, and/or employees', negligent acts, omissions, and/or commissions.

550. Furthermore, the Plaintiff has suffered, and continues to suffer, from injuries, including but not limited to, a loss of expected enjoyment of life and a permanent alteration of reasonable pre-injury life expectations.

551. The Plaintiff avers that all damages, past, present, and future, were a direct and proximate result of the negligent acts, omissions, and/or commissions of the Defendant and/or its actual and/or apparent agents, servants, and/or employees', without any negligence or want of due care on the part of the Plaintiff contributing thereto.

**COUNT TWENTY-THREE**
**NEGLIGENCE - PREMISES LIABILITY**
**(Against the Defendant, IHG Franchising LLC)**

552. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

553. The Defendant, IHG Franchising LLC, and their actual and/or apparent agents, servants and/or employees, owed to the Plaintiff a duty to use reasonable and ordinary care to keep their hotels and properties safe, and to protect the Plaintiff from injury caused by an unreasonable risk of danger in their hotel and/or on their property.

554. Upon information and belief, prior to and during the incidents alleged herein, as outlined above, the Defendant, IHG Franchising LLC, had actual and/or constructive notice of a dangerous condition in their hotels and on their properties, including but not limited to, human trafficking and sexual exploitation of the Plaintiff.

555. In addition to the Defendant, IHG Franchising LLC's actual and /or constructive notice, especially given the multiple arrests at each Defendant's property and on-line reviews associated with Defendant, the Defendant's negligent acts, omissions, and/or commissions created a dangerous condition at their hotel and on their property, to wit, a hotel and property with

inadequate security that fostered an environment which encouraged human trafficking and sexual exploitation.

556. The Defendant, IHG Franchising LLC, breached this duty of care by acts, omissions, and commissions including, but not limited to:

a. Failure to properly monitor surveillance cameras in the hotel and/or on the property for signs of human trafficking and/or sexual exploitation in the hotel and/or on the property;

b. Failure to properly monitor the number of guests in the rooms of the hotel and/or on the property;

c. Failure to provide adequate security in the hotel and/or on the property with the knowledge that said premises had a history of sex trafficking;

d. Failure to properly monitor the hotel and/or property for signs of dangerous conditions, including, but not limited to, human trafficking, false imprisonment, rape, and sexual exploitation, by ignoring the following conditions:

i. The repeated refusal of maid service;

ii. The number and frequency of visitors entering and exiting the hotel and/or property;

iii. The number of guests present in any particular room as compared to the room's capacity;

iv. Signs of the repeated verbal abuse, physical abuse, restraint and/or confinement of an individual by another;

v. Signs of control over an individual and/or an individual's personal property by another, including, but not limited to, identification documents;

vi. Signs of deprivation including, but not limited to, diminished personal hygiene, lack of luggage, malnourishment, submissiveness, and inappropriate attire; and

vii. The repeated renting of specific rooms in their hotels in isolated areas to assist in concealing the trafficking of Plaintiff.

e. Failure to properly monitor and investigate the hotel and property for signs of suspicious behavior on the premises. Behavior, which would have alerted the Defendant, IHG Franchising LLC, to the sex trafficking of the Plaintiff to which the Plaintiff was a victim. Behavior including, but not limited to, loud noises and sounds of distress coming from rooms and areas in the hotel and/or property, the odor of drugs emanating from rooms and areas in the hotel and/or property, discarded drug paraphernalia, non-guests entering and exiting rooms in the hotel and/or property, the repeated renting of specific rooms in the hotel and/ or on the property, and the apparent purchasing of sex acts in the hotel and/or on the property;

f. Failure to properly advise law enforcement of suspicious behavior on the premises which would have alerted the Defendant, IHG Franchising LLC, to the sex trafficking of the Plaintiff to which she was a victim. Behavior, including, but not limited to, loud noises and sounds of distress coming from rooms and areas in the hotel and/or property, the odor of drugs emanating from rooms and areas in the

hotel and/or property, discarded drug paraphernalia, non-guests entering and exiting rooms in the hotel and/or property, the repeated renting of specific rooms in the hotel and/or presence on the property, and the apparent purchasing of sex acts in the hotel and/or on the property;

g. Failure to adequately respond to, and investigate, guest complaints regarding suspicious behavior at the hotel and/or on the property, which would have resulted in the discovery of sex trafficking of the Plaintiff to which she was a victim;

h. Failure to adequately respond to and investigate each of the above articulated issues, which would have stopped the ongoing victimization of the Plaintiff;

i. Accepting "hush money" and allowing the Plaintiff's traffickers to have isolated rooms to conceal the trafficking of the Plaintiff; and

j. Being otherwise careless and negligent.

557. As a direct and proximate result of the aforementioned negligent acts, omissions, and/or commissions by the Defendant, IHG Franchising LLC, the Plaintiff was kidnapped, repeatedly and consistently assaulted both physically and sexually, verbally abused, held against her will, regularly exploited, and were otherwise irreparably injured, both physically and psychologically. Said acts were repeatedly perpetrated at the Defendant, IHG Franchising LLC's hotels and properties and the Defendant had actual or constructive knowledge that these acts, as well as other similar criminal acts, were taking place, and that a dangerous condition existed on the premises, and the Defendant had sufficient time to remove the dangerous condition, investigate the suspicious activity, and/or alert law enforcement of the suspicious activity. The imminent harm described above, as well as the Plaintiff's injuries, were a foreseeable and preventable result of the Defendant, IHG Franchising LLC's negligence.

558. The Plaintiff has suffered, and/or will continue to suffer, from injuries, including but not limited to, past and future conscious physical pain and mental anguish, past and future pain and suffering, and economic loss, past, present and future, as a direct and proximate result of the Defendant, and/or its actual and/or apparent agents, servants, and/or employees', negligent acts, omissions, and/or commissions. By ignoring indicia of guest misconduct, the Defendant, IHG Franchising LLC, facilitated such an environment of disorder and violence that the injuries sustained by the Plaintiff.

559. Additionally, the Plaintiff has suffered, and continues to suffer, from damages, including but not limited to, a lifetime loss of earnings, a diminution in earning capacity and/or medical expenses past and future, including the expenses that in reasonable probability will be incurred in the future, as a direct and proximate cause of the Defendant's, and/or its actual and/or apparent agents, servants, and/or employees', negligent acts, omissions, and/or commissions.

560. Furthermore, the Plaintiff has suffered, and continues to suffer, from injuries, including but not limited to, a loss of expected enjoyment of life and a permanent alteration of reasonable pre-injury life expectations.

561. The Plaintiff avers that all damages, past, present, and future, were a direct and proximate result of the negligent acts, omissions, and/or commissions of the Defendant, IHG Franchising LLC, and/or its actual and/or apparent agents, servants, and/or employees, without any negligence or want of due care on the part of the Plaintiff contributing thereto.

**COUNT TWENTY-FOUR**
**VICARIOUS LIABILITY**
**(Against the Defendant, IHG Franchising LLC)**

562. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

563. At all relevant times, the Defendant, IHG Franchising LLC, supervised and/or operated the Holiday Inn Express where the Plaintiff was trafficked for sex.

564. At all relevant times, the Defendant, IHG Franchising LLC, was aware that human trafficking was occurring at its local hotels, including but not limited to the Holiday Inn Express where the Plaintiff was trafficked for sex.

565. The Defendant, IHG Franchising LLC, failed to develop effective policies and/or failed to implement and enforce effective policies, policies which would have protected the Plaintiff from being trafficked for sex.

566. Despite having actual and/or constructive knowledge of the extensive prostitution and sex trafficking that occurs at its hotels, including the Holiday Inn Express where the Plaintiff was trafficked for sex, IHG Franchising LLC has repeatedly failed to prevent or adequately address commercial sex trafficking at its hotels, and particularly the trafficking of the Plaintiff.

567. Upon information and belief, the Defendant, IHG Franchising LLC, exercises actual control over its franchisees and subsidiaries, including the Holiday Inn Express where the Plaintiff was trafficked for sex, through control over brand standards.

568. Upon information and belief, the Defendant, IHG Franchising LLC, exerts dominion and control over its franchises and has control over the day-to-day operations in a number of areas, beyond that which is necessary to maintain brand standards.

569. Upon information and belief, the Defendant, IHG Franchising LLC, has control over the existence of the franchisor-franchisee relationship and has the ability to terminate the franchisee.

570. At all relevant times, the Holiday Inn Express where the Plaintiff was trafficked was the actual and apparent agent of IHG Franchising LLC, and together they offer, or offered,

public lodging services in the hotel. The agency relationship was created through the Defendant, IHG Franchising LLC's exercise of an ongoing and systematic right of control over its branded hotels.

571. The Defendant, IHG Franchising LLC, accepted profits from the Plaintiff's traffickers even though the signs of her trafficking were open and obvious.

572. The Defendant, IHG Franchising LLC, knew or should have known that such profits were derived from sex traffickers' illegal and tortious activities.

## COUNT TWENTY-FIVE
## UNJUST ENRICHMENT
## (Against the Defendant, IHG Franchising LLC)

573. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

574. As a result of the trafficking and sexual exploitation of the Plaintiff, the Defendant, IHG Franchising LLC, unjustly financially benefitted, and enriched themselves at the Plaintiff's expense by their acts, omissions, and commissions including, but not limited to:

a. Profit from renting rooms to those looking to sexually exploit the Plaintiff;

b. Increased profit margins due to lower operation costs by refusing to implement proper training of Defendant, IHG Franchising LLC's employees and managers regarding the identification of human trafficking and sexual exploitation;

c. Increased profit margins due to lower operation costs by refusing to install proper security devices in the lobby, hallways, and parking lots of the Defendant, IHG Franchising LLC's hotels and properties that would help (a) deter human trafficking and sexual exploitation and (b) be used to identify the occurrence of

human trafficking and sexual exploitation and alert the proper authorities and/or intervene in an appropriate way;

d. Increased profit margins due to lower operating costs by failing and/or refusing to install adequate lighting and security cameras to monitor ingress and egress of human traffickers and visitors looking to purchase sex at the Defendant, IHG Franchising LLC's hotels and properties;

e. Increased profit margins due to lower operating costs by failing and/or refusing to hire qualified security officers who would actively combat human trafficking and sexual exploitation;

f. Increased profit margins due to lower operating costs by failing and/or refusing to implement proper security measures to prevent and identify human trafficking and sexual exploitation at the Defendant, IHG Franchising LLC's hotels and property;

g. Increased profit margins as a result of the continued customer loyalty of traffickers and buyers of commercial sex. These traffickers and buyers sought to exploit individuals, like the Plaintiff, due to the Defendant, IHG Franchising LLC's lack of measures against sexual exploitation and human trafficking. This customer loyalty led to continued alcohol, food, and room sales;

h. Benefit of avoiding interference by law enforcement officials and spending the time to address and properly solve any incidence or pattern of human trafficking or sexual exploitation at the Defendant, IHG Franchising LLC's hotel or property. This prevented the Defendant from having to spend the time and money to fill out all proper and necessary law enforcement reports and information,

respond to proper and necessary subpoena requests, and cooperate with any inquiry and needs of the prosecution; and

i. Increased profit margins by knowingly catering to the needs of a criminal subculture that is looking for locations that will not actively enforce laws against human trafficking and sexual exploitation or take active security measures to prevent human trafficking or sexual exploitation on their property.

575. These benefits were conferred onto the Defendant, with their knowledge of the trafficking and/or sexual exploitation of the Plaintiff and others like her. The Defendant, IHG Franchising LLC, accepted and retained these benefits under circumstances that make it inequitable for them to retain them without paying their value.

576. The Plaintiff avers that all damages, past, present, and future, were a direct and proximate result of the negligent acts, omissions, and/or commissions of the Defendant, IHG Franchising LLC, and/or its actual and/or apparent agents, servants, and/or employees, without any negligence or want of due care on the part of the Plaintiff contributing thereto.

577. The Defendant, IHG Franchising LLC, knowingly benefited financially from participating in illegal sex trafficking ventures in violation of the TVPRA, 18 U.S.C. § 1591(a)(2), by, *inter alia*, engaging in acts and omissions that are intended to support, facilitate, and further traffickers' transportation and sale of victims for commercial sexual exploitation. Defendant, IHG Franchising LLC, knew that their repeated failures to address known risks of human trafficking on their hotel properties would increase the overall volume of illegal commercial sex at their hotel properties. Defendant, IHG Franchising LLC, knowingly benefited from facilitating the trafficking of persons on their hotel properties.

578. Defendant, IHG Franchising LLC, knowingly benefited financially from the presence of traffickers at their hotel properties by consistently renting rooms to traffickers who repeatedly sold the Plaintiff for sex at Defendant's hotel properties and accordingly, participated in the trafficking ventures that exploited her by the various means described herein.

579. The Plaintiff has suffered substantial sexual, physical, emotional, psychological and economic injuries, and other damages as a result of being trafficked at Defendant's hotel properties. She continues to live in fear of her traffickers.

**COUNT TWENTY-SIX**
**VIOLATION OF THE TVPRA, 18 U.S.C §1595**
**(Against the Defendant, Gaming and Leisure Properties, Inc.)**

580. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

581. The Plaintiff is a survivor of sex trafficking within the meaning of 18 U.S.C. § 1591 and is entitled to bring a civil action under 18 U.S.C. § 1595 against any individual or entity whose violations of the TVPRA proximately caused the Plaintiff to sustain physical and psychological injuries.

582. The Defendant, Gaming and Leisure Properties, Inc., knowingly benefited financially from participating in illegal sex trafficking ventures in violation of the TVPRA, 18 U.S.C. § 1591(a)(2), by, *inter alia*, engaging in acts and omissions that are intended to support, facilitate, and further traffickers' transportation and sale of victims for commercial sexual exploitation. Defendant, Gaming and Leisure Properties, Inc., knew that their repeated failures to address known risks of human trafficking on their hotel properties would increase the overall volume of illegal commercial sex at their hotel properties. Defendant, Gaming and Leisure

Properties, Inc., knowingly benefited from facilitating the trafficking of persons on their hotel properties.

583. Defendant, Gaming and Leisure Properties, Inc., knowingly benefited financially from the presence of traffickers at their hotel properties by consistently renting rooms to traffickers who repeatedly sold the Plaintiff for sex at Defendant's hotel properties and accordingly, participated in the trafficking ventures that exploited her by the various means described herein.

584. The Plaintiff has suffered substantial sexual, physical, emotional, psychological and economic injuries, and other damages as a result of being trafficked at Defendant's hotel properties. She continues to live in fear of her traffickers.

**COUNT TWENTY-SEVEN**
**NEGLIGENCE**
**(Against the Defendant, Gaming and Leisure Properties, Inc.)**

585. The Plaintiff adopts and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

586. The Defendant, Gaming and Leisure Properties, Inc., had a duty to use reasonable care to select, train, supervise, and retain its employees working at the hotels on their properties, including but not limited to, proper training and or supervision relating to the observation, investigation, and reporting of signs of guest misconduct, including, but not limited to, human trafficking and sexual exploitation.

587. The Defendant, Gaming and Leisure Properties, Inc., had a duty to use reasonable care to ensure the safety and security of guests at their hotels, including the Plaintiff.

588. At the time of the incidents alleged herein, the Defendant, Gaming and Leisure Properties, Inc., employed staff to operate their hotels and properties, including, but not limited to, front desk clerks, night auditors, housekeeping staff, and/or maintenance workers. Throughout this

time period, as outlined above, the Defendant, Gaming and Leisure Properties, Inc., and/or their actual and/or apparent agents, servants, and/or employees, repeatedly failed to observe and/or report signs of guest misconduct at their hotels and/or properties, including, but not limited to, signs of human trafficking and/or sexual exploitation taking place on the premises. Furthermore, upon information and belief, the Defendant, Gaming and Leisure Properties, Inc., and/or its actual and/or apparent agents, servants, and/or employees', repeatedly failed to warn their customers, including the Plaintiff, of said trafficking.

589. Additionally, prior to the incidents alleged herein, the Defendant, Gaming and Leisure Properties, Inc., failed to properly train their employees regarding security and the detection of guest misconduct in their hotels and on their properties, including, but not limited to, signs of human trafficking and sexual exploitation.

590. The Defendant, Gaming and Leisure Properties, Inc., breached this duty of care by acts, omissions, and commissions including, but not limited to:

a. Failure to adequately train, supervise, and retain employees to ensure proper monitoring of surveillance cameras at their hotels and properties for signs of human trafficking and/or sexual exploitation;

b. Failure to adequately train, supervise, and retain employees to ensure proper monitoring of the number of guests in each room of their hotels, and non-guest visitors in their hotels or on their properties;

c. Failure to provide and/or train adequate security in their hotels and/or on their properties with the knowledge that said premises had a history of trafficking;

d. Failure to adequately train, supervise, and retain employees, to ensure proper monitoring of their hotels for signs of dangerous conditions including, but not

limited to, human trafficking, sexual exploitation, and rape, by ignoring the following conditions:

i. The repeated refusal of maid service;

ii. The number and frequency of visitors entering and exiting the hotel and/or property;

iii. Guests present in any particular room in excess of the rooms capacity;

ix. Signs of the repeated verbal abuse, physical abuse, restraint and/or confinement of an individual by another;

x. Signs of control over an individual and/or an individual's personal property by another, including, but not limited to, identification documents;

xi. Signs of deprivation including, but not limited to, diminished personal hygiene, lack of luggage, malnourishment, submissiveness, and inappropriate attire;

xii. The repeated acceptance of "hush money" by employees, paid to not disclose Plaintiff's sex trafficking; and

xiii. The repeated renting of specific rooms in the hotel and/or presence on the property.

e. Failure to adequately train, supervise, and retain employees, to ensure proper monitoring of their hotels and their properties for signs of suspicious behavior on the premises, which would have alerted the Defendant, Gaming and Leisure Properties, Inc., to the sex trafficking of the Plaintiff, including, but not limited to loud noises and signs and sounds of distress coming from rooms and areas in the hotel and/or on

the property, the odor of drugs emanating from rooms and areas in the hotel and/or on the property, discarded drug paraphernalia, non-guests entering and exiting rooms in the hotel and/or on the property, the repeated renting of specific rooms in the hotel and/or presence on the property, and the apparent purchasing of sex acts in the hotel and/or on the property;

f. Failure to adequately train, supervise, and retain its actual and/or apparent agents, servants and/or employees, including, but not limited to, training to ensure the investigation of suspicious behavior at their hotel and/or properties which would have alerted the Defendant, Gaming and Leisure Properties, Inc., to the sex trafficking of the Plaintiff;

g. Failure to adequately train, supervise, and retain its actual and/or apparent agents, servants and/or employees, including, but not limited to, training to ensure proper reporting to law enforcement of signs of guest misconduct at their hotels and/or on their properties, including, but not limited to human trafficking and sexual exploitation;

h. Failure to adequately train, supervise, and retain its actual and/or apparent agents, servants and/or employees, including, but not limited to, training to ensure a timely response and investigation into guest complaints regarding suspicious behavior at their hotels and/or on their properties, which would have resulted in their discovery of the sex trafficking of the Plaintiff;

i. Failure to provide adequate security and take reasonable steps to protect the Plaintiff;

j. Accepting "hush money" and allowing the Plaintiff's traffickers to have isolated rooms to conceal the trafficking of the Plaintiff; and

k. Being otherwise careless and negligent.

591. As a direct and proximate result of the aforementioned negligent acts, omissions, and/or commissions by the Defendant, Gaming and Leisure Properties, Inc., the Plaintiff was repeatedly and consistently assaulted both physically and sexually, verbally abused, held against her will, regularly exploited, and was otherwise irreparably injured, both physically and psychologically. Said acts were repeatedly perpetrated at the Defendant, Gaming and Leisure Properties, Inc.'s hotels and properties and the Defendant failed to prevent against such horrible acts. The imminent harm described above, as well as the Plaintiff's injuries, were a foreseeable and preventable result of the Defendant, Gaming and Leisure Properties, Inc.'s negligence, and their failure to adequately train and supervise their employees and to provide adequate security and take reasonable steps to protect the Plaintiff.

592. The Plaintiff has suffered, and/or will continue to suffer, from injuries, including, but not limited to, past and future conscious physical pain and mental anguish, past and future pain and suffering, and economic loss, past, present and future, as a direct and proximate result of the Defendant, Gaming and Leisure Properties, Inc.'s failure to adequately train, supervise, and retain their employees to adequately recognize and investigate indicia of guest misconduct. The Defendant, Gaming and Leisure Properties, Inc.'s failure to adequately train, supervise, and retain their employees facilitated such an environment of disorder and violence that the injuries sustained by the Plaintiff was foreseeable and imminent, especially given the multiple police incidents and reviews on-line.

593. Additionally, the Plaintiff has suffered, and continues to suffer, from damages, including but not limited to, a lifetime loss of earnings, a diminution in earning capacity and/or medical expenses past and future, including the expenses that in reasonable probability will be

incurred in the future, as a direct and proximate cause of the Defendant, Gaming and Leisure Properties, Inc.'s, and/or their actual and/or apparent agents, servants, and/or employees', negligent acts, omissions, and/or commissions.

594. Furthermore, the Plaintiff has suffered, and continues to suffer, from injuries, including but not limited to, a loss of expected enjoyment of life and a permanent alteration of reasonable pre-injury life expectations.

595. The Plaintiff avers that all damages, past, present, and future, were a direct and proximate result of the negligent acts, omissions, and/or commissions of the Defendant and/or its actual and/or apparent agents, servants, and/or employees', without any negligence or want of due care on the part of the Plaintiff contributing thereto.

**<u>COUNT TWENTY-EIGHT</u>**
**NEGLIGENCE - PREMISES LIABILITY**
**(Against the Defendant, Gaming and Leisure Properties, Inc.)**

596. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

597. The Defendant, Gaming and Leisure Properties, Inc., and their actual and/or apparent agents, servants and/or employees, owed to the Plaintiff a duty to use reasonable and ordinary care to keep their hotels and properties safe, and to protect the Plaintiff from injury caused by an unreasonable risk of danger in their hotel and/or on their property.

598. Upon information and belief, prior to and during the incidents alleged herein, as outlined above, the Defendant, Gaming and Leisure Properties, Inc., had actual and/or constructive notice of a dangerous condition in their hotels and on their properties, including but not limited to, human trafficking and sexual exploitation of the Plaintiff.

599. In addition to the Defendant, Gaming and Leisure Properties, Inc.'s actual and /or constructive notice, especially given the multiple arrests at each Defendant's property and on-line reviews associated with Defendant, the Defendant's negligent acts, omissions, and/or commissions created a dangerous condition at their hotel and on their property, to wit, a hotel and property with inadequate security that fostered an environment which encouraged human trafficking and sexual exploitation.

600. The Defendant, Gaming and Leisure Properties, Inc., breached this duty of care by acts, omissions, and commissions including, but not limited to:

a. Failure to properly monitor surveillance cameras in the hotel and/or on the property for signs of human trafficking and/or sexual exploitation in the hotel and/or on the property;

b. Failure to properly monitor the number of guests in the rooms of the hotel and/or on the property;

c. Failure to provide adequate security in the hotel and/or on the property with the knowledge that said premises had a history of sex trafficking;

d. Failure to properly monitor the hotel and/or property for signs of dangerous conditions, including, but not limited to, human trafficking, false imprisonment, rape, and sexual exploitation, by ignoring the following conditions:

    i. The repeated refusal of maid service;

    ii. The number and frequency of visitors entering and exiting the hotel and/or property;

    iii. The number of guests present in any particular room as compared to the room's capacity;

iv. Signs of the repeated verbal abuse, physical abuse, restraint and/or confinement of an individual by another;

v. Signs of control over an individual and/or an individual's personal property by another, including, but not limited to, identification documents;

vi. Signs of deprivation including, but not limited to, diminished personal hygiene, lack of luggage, malnourishment, submissiveness, and inappropriate attire; and

vii. The repeated renting of specific rooms in their hotels in isolated areas to assist in concealing the trafficking of Plaintiff.

e. Failure to properly monitor and investigate the hotel and property for signs of suspicious behavior on the premises. Behavior, which would have alerted the Defendant, Gaming and Leisure Properties, Inc., to the sex trafficking of the Plaintiff to which the Plaintiff was a victim. Behavior including, but not limited to, loud noises and sounds of distress coming from rooms and areas in the hotel and/or property, the odor of drugs emanating from rooms and areas in the hotel and/or property, discarded drug paraphernalia, non-guests entering and exiting rooms in the hotel and/or property, the repeated renting of specific rooms in the hotel and/ or on the property, and the apparent purchasing of sex acts in the hotel and/or on the property;

f. Failure to properly advise law enforcement of suspicious behavior on the premises which would have alerted the Defendant, Gaming and Leisure Properties, Inc., to the sex trafficking of the Plaintiff to which she was a victim. Behavior, including,

but not limited to, loud noises and sounds of distress coming from rooms and areas in the hotel and/or property, the odor of drugs emanating from rooms and areas in the hotel and/or property, discarded drug paraphernalia, non-guests entering and exiting rooms in the hotel and/or property, the repeated renting of specific rooms in the hotel and/or presence on the property, and the apparent purchasing of sex acts in the hotel and/or on the property;

g. Failure to adequately respond to, and investigate, guest complaints regarding suspicious behavior at the hotel and/or on the property, which would have resulted in the discovery of sex trafficking of the Plaintiff to which she was a victim;

h. Failure to adequately respond to and investigate each of the above articulated issues, which would have stopped the ongoing victimization of the Plaintiff;

i. Accepting "hush money" and allowing the Plaintiff's traffickers to have isolated rooms to conceal the trafficking of the Plaintiff; and

j. Being otherwise careless and negligent.

601. As a direct and proximate result of the aforementioned negligent acts, omissions, and/or commissions by the Defendant, Gaming and Leisure Properties, Inc., the Plaintiff was kidnapped, repeatedly and consistently assaulted both physically and sexually, verbally abused, held against her will, regularly exploited, and were otherwise irreparably injured, both physically and psychologically. Said acts were repeatedly perpetrated at the Defendant, Gaming and Leisure Properties, Inc.'s hotels and properties and the Defendant had actual or constructive knowledge that these acts, as well as other similar criminal acts, were taking place, and that a dangerous condition existed on the premises, and the Defendant had sufficient time to remove the dangerous condition, investigate the suspicious activity, and/or alert law enforcement of the suspicious

activity. The imminent harm described above, as well as the Plaintiff's injuries, were a foreseeable and preventable result of the Defendant, Gaming and Leisure Properties, Inc.'s negligence.

602. The Plaintiff has suffered, and/or will continue to suffer, from injuries, including but not limited to, past and future conscious physical pain and mental anguish, past and future pain and suffering, and economic loss, past, present and future, as a direct and proximate result of the Defendant, and/or its actual and/or apparent agents, servants, and/or employees', negligent acts, omissions, and/or commissions. By ignoring indicia of guest misconduct, the Defendant, Gaming and Leisure Properties, Inc., facilitated such an environment of disorder and violence that the injuries sustained by the Plaintiff.

603. Additionally, the Plaintiff has suffered, and continues to suffer, from damages, including but not limited to, a lifetime loss of earnings, a diminution in earning capacity and/or medical expenses past and future, including the expenses that in reasonable probability will be incurred in the future, as a direct and proximate cause of the Defendant's, and/or its actual and/or apparent agents, servants, and/or employees', negligent acts, omissions, and/or commissions.

604. Furthermore, the Plaintiff has suffered, and continues to suffer, from injuries, including but not limited to, a loss of expected enjoyment of life and a permanent alteration of reasonable pre-injury life expectations.

605. The Plaintiff avers that all damages, past, present, and future, were a direct and proximate result of the negligent acts, omissions, and/or commissions of the Defendant, Gaming and Leisure Properties, Inc., and/or its actual and/or apparent agents, servants, and/or employees, without any negligence or want of due care on the part of the Plaintiff contributing thereto.

**COUNT TWENTY-NINE**
**VICARIOUS LIABILITY**
**(Against the Defendant, Gaming and Leisure Properties, Inc.)**

606. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

607. At all relevant times, the Defendant, Gaming and Leisure Properties, Inc., supervised and/or operated the Tropicana Hotel where the Plaintiff was trafficked for sex.

608. At all relevant times, the Defendant, Gaming and Leisure Properties, Inc., was aware that human trafficking was occurring at its local hotels, including but not limited to the Tropicana Hotel where the Plaintiff was trafficked for sex.

609. The Defendant, Gaming and Leisure Properties, Inc., failed to develop effective policies and/or failed to implement and enforce effective policies, policies which would have protected the Plaintiff from being trafficked for sex.

610. Despite having actual and/or constructive knowledge of the extensive prostitution and sex trafficking that occurs at its hotels, including the Tropicana Hotel where the Plaintiff was trafficked for sex, Gaming and Leisure Properties, Inc. has repeatedly failed to prevent or adequately address commercial sex trafficking at its hotels, and particularly the trafficking of the Plaintiff.

611. Upon information and belief, the Defendant, Gaming and Leisure Properties, Inc., exercises actual control over its franchisees and subsidiaries, including the Tropicana Hotel where the Plaintiff was trafficked for sex, through control over brand standards.

612. Upon information and belief, the Defendant, Gaming and Leisure Properties, Inc., exerts dominion and control over its franchises and has control over the day-to-day operations in a number of areas, beyond that which is necessary to maintain brand standards.

613. Upon information and belief, the Defendant, Gaming and Leisure Properties, Inc., has control over the existence of the franchisor-franchisee relationship and has the ability to terminate the franchisee.

614. At all relevant times, the Tropicana Hotel where the Plaintiff was trafficked was the actual and apparent agent of Gaming and Leisure Properties, Inc., and together they offer, or offered, public lodging services in the hotel. The agency relationship was created through the Defendant, Gaming and Leisure Properties, Inc.'s exercise of an ongoing and systematic right of control over its branded hotels.

615. The Defendant, Gaming and Leisure Properties, Inc., accepted profits from the Plaintiff's traffickers even though the signs of her trafficking were open and obvious.

616. The Defendant, Gaming and Leisure Properties, Inc., knew or should have known that such profits were derived from sex traffickers' illegal and tortious activities.

**COUNT THIRTY**
**UNJUST ENRICHMENT**
**(Against the Defendant, Gaming and Leisure Properties, Inc.)**

617. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

618. As a result of the trafficking and sexual exploitation of the Plaintiff, the Defendant, Gaming and Leisure Properties, Inc., unjustly financially benefitted, and enriched themselves at the Plaintiff's expense by their acts, omissions, and commissions including, but not limited to:

a. Profit from renting rooms to those looking to sexually exploit the Plaintiff;

b. Increased profit margins due to lower operation costs by refusing to implement proper training of Defendant, Gaming and Leisure Properties, Inc.'s employees

and managers regarding the identification of human trafficking and sexual exploitation;

c. Increased profit margins due to lower operation costs by refusing to install proper security devices in the lobby, hallways, and parking lots of the Defendant, Gaming and Leisure Properties, Inc.'s hotels and properties that would help (a) deter human trafficking and sexual exploitation and (b) be used to identify the occurrence of human trafficking and sexual exploitation and alert the proper authorities and/or intervene in an appropriate way;

d. Increased profit margins due to lower operating costs by failing and/or refusing to install adequate lighting and security cameras to monitor ingress and egress of human traffickers and visitors looking to purchase sex at the Defendant, Gaming and Leisure Properties, Inc.'s hotels and properties;

e. Increased profit margins due to lower operating costs by failing and/or refusing to hire qualified security officers who would actively combat human trafficking and sexual exploitation;

f. Increased profit margins due to lower operating costs by failing and/or refusing to implement proper security measures to prevent and identify human trafficking and sexual exploitation at the Defendant, Gaming and Leisure Properties, Inc.'s hotels and property;

g. Increased profit margins as a result of the continued customer loyalty of traffickers and buyers of commercial sex. These traffickers and buyers sought to exploit individuals, like the Plaintiff, due to the Defendant, Gaming and Leisure

Properties, Inc.'s lack of measures against sexual exploitation and human trafficking. This customer loyalty led to continued alcohol, food, and room sales;

h. Benefit of avoiding interference by law enforcement officials and spending the time to address and properly solve any incidence or pattern of human trafficking or sexual exploitation at the Defendant, Gaming and Leisure Properties, Inc.'s hotel or property. This prevented the Defendant from having to spend the time and money to fill out all proper and necessary law enforcement reports and information, respond to proper and necessary subpoena requests, and cooperate with any inquiry and needs of the prosecution; and

i. Increased profit margins by knowingly catering to the needs of a criminal subculture that is looking for locations that will not actively enforce laws against human trafficking and sexual exploitation or take active security measures to prevent human trafficking or sexual exploitation on their property.

619. These benefits were conferred onto the Defendant, with their knowledge of the trafficking and/or sexual exploitation of the Plaintiff and others like her. The Defendant, Gaming and Leisure Properties, Inc., accepted and retained these benefits under circumstances that make it inequitable for them to retain them without paying their value.

620. The Plaintiff avers that all damages, past, present, and future, were a direct and proximate result of the negligent acts, omissions, and/or commissions of the Defendant, Gaming and Leisure Properties, Inc., and/or its actual and/or apparent agents, servants, and/or employees, without any negligence or want of due care on the part of the Plaintiff contributing thereto.

621. The Defendant, Gaming and Leisure Properties, Inc., knowingly benefited financially from participating in illegal sex trafficking ventures in violation of the TVPRA, 18

U.S.C. § 1591(a)(2), by, *inter alia*, engaging in acts and omissions that are intended to support, facilitate, and further traffickers' transportation and sale of victims for commercial sexual exploitation. Defendant, Gaming and Leisure Properties, Inc., knew that their repeated failures to address known risks of human trafficking on their hotel properties would increase the overall volume of illegal commercial sex at their hotel properties. Defendant, Gaming and Leisure Properties, Inc., knowingly benefited from facilitating the trafficking of persons on their hotel properties.

622. Defendant, Gaming and Leisure Properties, Inc., knowingly benefited financially from the presence of traffickers at their hotel properties by consistently renting rooms to traffickers who repeatedly sold the Plaintiff for sex at Defendant's hotel properties and accordingly, participated in the trafficking ventures that exploited her by the various means described herein.

623. The Plaintiff has suffered substantial sexual, physical, emotional, psychological and economic injuries, and other damages as a result of being trafficked at Defendant's hotel properties. She continues to live in fear of her traffickers.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff requests that the jury selected to hear this case render a verdict in her favor on all counts alleged and against each and every Defendant, jointly and severally, and that it award damages to them in an amount which will adequately compensate her for the injuries and damages she suffered due to the Defendants' misconduct outlined herein. Plaintiff requests that this Honorable Court award Plaintiff all applicable damages, including but not limited to compensatory, special, exemplary and/or punitive damages, in whatever amount the Plaintiff is entitled, and all other relief arising out of law, equity, and fact, also including but not limited to:

a) All available compensatory damages for the described losses with respect to each

cause of action.

b) Past and future medical expenses, as well as the costs associated with past and future life care.

c) Past and future lost wages and loss of earning capacity.

d) Past and future emotional distress.

e) Consequential and/or special damages.

f) All available non-economic damages, including without limitation pain suffering, and loss of enjoyment of life.

g) Disgorgement of profits obtained through unjust enrichment.

h) Restitution.

i) Punitive damages with respect to each cause of action.

j) Reasonable and recoverable attorneys' fees.

k) Costs of this action.

l) Pre-judgment and all other interest recoverable.

On the basis of the foregoing, the Plaintiff also requests a jury be selected to hear this case and render a verdict for the Plaintiff, and against the Defendants, and that it awards damages to the Plaintiff in an amount which adequately reflects the enormity of Defendants' wrongs, and which will effectively prevent other similarly caused acts. Further, the Plaintiff requests that the Court enter judgement consistent with the jury's verdict and prays for any other damages and equitable relief the Court or jury deems appropriate under the circumstances.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury.

Date: March 1, 2024

**RESPECTFULLY SUBMITTED,**

**PLAINTIFF, ASIA GRAVES,**
**By her Attorneys,**

*/s/ Kimberly A. Dougherty*
Kimberly A. Dougherty, Esq. (BBO #658014)
Paula S. Bliss, Esq. (BBO #652361)
Kelly A. Guagenty, Esq. (658872)
JUSTICE LAW COLLABORATIVE, LLC
210 Washington Street
North Easton, MA 02356
Tel: (508) 230-2700
kim@justicelc.com
paula@justicelc.com
kelly@justicelc.com